**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDUARDO ALMARAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  07 C 6134 |
| | ) | |
| OFFICER HALEAS, TERRY HILLARD, | ) | Judge William Hart |
| LORI LIGHTFOOT, TISA MORRIS, | ) | |
| PHILLIP CLINE, UNKNOWN CHICAGO | ) | Magistrate Judge Susan Cox |
| POLICE OFFICERS, MAYOR RICHARD | ) | |
| DALEY, and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**DEFENDANTS HALEAS AND CITY OF CHICAGO'S MOTION FOR DISMISSAL OF
PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

Defendants, City of Chicago ("City") and John Haleas, by their attorney, Terrence M. Burns of Dykema Gossett, PLLC, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), hereby move to dismiss[1] plaintiff's first amended complaint in its entirety, or alternatively, ask this Court to require a more definite statement of the facts underlying plaintiff's claim.  In support thereof, these defendants state:

<u>**INTRODUCTION**</u>

1.    On October 30, 2007, plaintiff filed his initial complaint in this matter against several defendants, including Officer Haleas and the City.  (Dkt. #1).  Plaintiff filed a first amended complaint on December 19, 2007.  (*See* First Amended Complaint, Dkt. #30, attached as Exhibit A).  Plaintiff's first amended complaint includes the following counts:

Count I            §1983 False Arrest

Count II           State Law False Arrest

---

[1] Defendants Daley, Hillard, Cline, Lightfoot, and Morris have separately filed motions to dismiss count IV of the first amended complaint, which is the only count directed against them.  To the extent applicable to them (Section I, *infra*), these defendants join and adopt this motion for dismissal of the first amended complaint.

| Count III | State Law Malicious Prosecution |
| Count IV | §1983 Municipal Official Liability |
| Count V | §1983 Equal Protection |
| Count VI | §1983 *Monell* |
| Count VII | 745 ILCS 10/9-102 |
| Count VIII | State Law – *Respondeat Superior* |
| Count IX | Class Allegations |
| Count X | RICO |

2.      Although plaintiff's first amended complaint is 22 pages long and contains 127 paragraphs, it fails to state a claim for which relief can be granted.  In the alternative, because plaintiff's first amended complaint is vague and deficient as to even the most fundamental allegations, defendants cannot reasonably be required to frame a responsive pleading without a more definite statement on the part of plaintiff.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).  Separately, plaintiff's *Monell* claim (count VI) is inadequate and should be dismissed. Finally, the RICO claim attempted in count X fails to assert a claim for which relief can be granted and therefore should be dismissed.

## STANDARD OF REVIEW

3.      A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted.  *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989).  Such a motion tests the sufficiency of the complaint, not the merits of the suit.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  Although when considering a motion to dismiss a court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom (*see Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)), a court is not obligated to accept a complaint that merely raises the possibility of relief.  *EEOC v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007).  In addition, a court should not strain to find inferences not plainly apparent from the face of the complaint.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).  Rather, to survive a 12(b)(6) motion to dismiss, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" (*see* Fed.R.Civ.P.

8(a)(2)), such that the defendant is given "fair notice" of what the "claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  *See also Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998) (*citing Leatherman v. Tarrant County Narcotics*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993)).

4.     Further, the factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Concentra Health*, 496 F.3d at 776 (*quoting Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14)).  With regard to §1983 claims, a complaint must set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint.  *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

## ARGUMENT

### I.     PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO GIVE NOTICE OF THE CONDUCT THAT FORMS A BASIS FOR HIS CLAIMS

5.     Plaintiff's first amended complaint fails to give sufficient notice of the conduct that forms the basis for his claims.  The only "facts" pertaining to the alleged police misconduct are contained in paragraphs 10-16 of the first amended complaint.  In those paragraphs, plaintiff claims that "on or about" January 29, 2007, Officer Haleas violated his constitutional rights by engaging in an unreasonable seizure of him.  (*See* Exhibit A, ¶¶ 10-16).  Notably, plaintiff does not include the site of his arrest, identify the time of his encounter with the police, explain what happened, provide the number of other officers involved, or offer any details regarding any other allegedly unlawful "acts or omissions" of the "Unknown Chicago Police Officers."  Plaintiff also does not identify or provide any description of the "unknown officers" who allegedly engaged in these unspecified acts or omissions.  (*Id.*)  At most, plaintiff's first amended complaint indicates something happened on January 29, 2007, involving Officer Haleas and plaintiff.  No further information is provided.

6.     The remaining paragraphs of the section of the complaint entitled "Facts" fail to provide any additional insight into the alleged misconduct that forms the basis for plaintiff's claims.  Instead, plaintiff sets out generalized, conclusory language that Officer Haleas and unidentified unknown officers arrested him and charged him with criminal activity.

7.     Rule 8(a)(2) requires that a complaint contain a minimal level of factual detail so that the defendant has fair notice as to the claims against it and is given a "reasonable opportunity" to form an answer. *Pratt v. Tarr*, 464 F.3d 720, 732 (7th Cir. 2006). A defendant must receive sufficient detail to "begin to prepare [its] defense." *Id.* at 733. In addition, a complaint "should contain information that one *can* provide and that is clearly important." *Concentra Health*, 496 F.3d at 780 (emphasis in original).

8.     In this case, the site of plaintiff's encounter with the police, as well as the time, the number of officers he encountered, what happened, and which unknown officer did what should be known to plaintiff. Plaintiff, however, did not include any of this basic information in his pleadings. As plaintiff's first amended complaint currently stands, there is no meaningful way defendants can answer it. Defendants cannot even determine what unknown officers may have had contact with plaintiff because it has no information about the district where the alleged misconduct occurred or the time of that misconduct. Knowing the number of other police officers who allegedly participated and the nature of their misconduct towards plaintiff is also significant so that the City can evaluate the possible scope and extent of plaintiff's claims. Defendants are unable to mount any meaningful investigation into plaintiff's claims, much less begin to prepare their defense. Since plaintiff's first amended complaint fails to provide "some quantum of information" about his claims, it should be dismissed. *See Concentra Health*, 496 F.3d at 779 n.3; *see also Bell Atlantic*, 127 S. Ct. at 1965; *Pratt*, 464 F.3d at 733.

## II.     PLAINTIFF HAS NOT ADEQUATELY PLEADED A *MONELL* CLAIM

9.     As an independent and separate matter, plaintiff's *Monell* claims should be dismissed. In essence, plaintiff claims he was subjected to an illegal arrest, possibly on or around January 29, 2007, due to a practice of general "lawlessness" at the Chicago Police Department. The law is clear, however, a claim that "past generalized bad police behavior led to future generalized bad police behavior" fails the "rigorous standards of culpability and causation" required for municipal liability. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997). Indeed, the law requires litigants to "identify the offending municipal policy with precision" so courts can prevent trials from straying off into "collateral accusations of marginally related incidents." *Id*. Contrary to these strict pleading requirements, plaintiff's policy and practice claim is based upon a myriad of unrelated incidents such as

4

Special Operations Section ("SOS") misconduct, miscellaneous allegations against convicted and/or indicted former Chicago police officers (Flagg, Black, Jones, and Haynes), alleged 1980's Area 2 torture, the alleged non-independence of OPS, and BrainMaker.  There is no connection apparent from the pleadings between these miscellaneous allegations and the vague misconduct underlying plaintiff's claims.  There are no allegations in the first amended complaint suggesting this is a SOS case, a 1980's Area 2 case, an indicted officer case, or a BrainMaker case, so including *Monell* allegations based on these topics is without justification and is inappropriate. If these "unfocused" allegations remain a part of the complaint, this litigation likely will devolve into collateral accusations of marginally related incidents resulting in a squandering of scarce judicial and municipal time and resources.  *See Carter*, 164 F.3d at 218.  Accordingly, the City respectfully asks this Court to dismiss the *Monell* policy and practice allegations of plaintiff's first amended complaint.

10.     Plaintiff's first amended complaint appears to suggest the interaction between plaintiff and the police occurred on January 29, 2007.  As noted above, the first amended complaint is woefully deficient of allegations that describe the underlying incident alleged by plaintiff.  In contrast, the overwhelming majority of plaintiff's complaint involves allegations of misconduct against the City made in other civil and criminal matters over the past 25 years. These allegations of "other conduct" do not identify a specific policy for the purposes of stating a viable *Monell* claim.  Moreover, plaintiff has failed to allege a causal link between this "other" conduct (and corresponding policies/practices) and the purported violation of his rights so as to state a claim for municipal liability.

11.     To prevail on a §1983 claim against the City, a plaintiff must show:  1) a violation of his constitutional rights; 2) an injury; and 3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault.  *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382 (1997) ("*Bryan County*").  In addition, a plaintiff must show that the constitutional violation was directly caused by a "custom, policy or practice" of the defendant municipality.  *Monell, supra*. As the Supreme Court stated in *Bryan County*, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite

degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." 520 U.S. at 404, 117 S.Ct. at 1388.

12.    In this case, plaintiff's attempt to plead a *Monell* claim fails because he has not adequately alleged that his constitutional rights were violated as a result of a specific "custom, policy, or practice" of the City.  In fact, plaintiff fails to adequately define the "custom, policy, or practice" that allegedly led to the violation of his constitutional rights.  Plaintiff has instead filled his first amended complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct brought against the Chicago Police Department and, without sufficient explanation or specificity, has rested his *Monell* claim entirely on that history.  (*See* Exhibit A, ¶¶ 31-89.) Stating a valid *Monell* claim, however, requires more than merely listing previous instances of misconduct and from that alleging the existence of an "abstract [policy] of violating citizens' constitutional rights."  *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

13.    It is well established that when alleging a *Monell* claim, a plaintiff must identify with specificity the custom, policy, or practice of which he complains.  *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (the identified deficiency must be "closely related to the ultimate injury").  To forego this requirement would blur the line "between *respondeat superior* liability and truly unconstitutional municipal conduct."  *Piotrowski v. City of Houston*, 237 F.3d 567, 580 n.27 (5th Cir. 2001).  Accordingly, to ensure that a municipality is not held liable solely for the actions of its employees, "rigorous standards of culpability and causation must be applied."  *Bryan County*, 520 U.S. at 405.  As the Fourth Circuit explained in *Carter*:

> [B]y requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents.  Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover -- our role is to decide concrete cases.  Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decision maker caused the violation of the specific federal rights of the plaintiff before the court.  Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources.  As a practical matter, a case involving inquiries into loosely related incidents can be an unruly one to try.

*Carter*, 164 F.3d at 218-19.  *See also Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 2001) (*citing Copeland v. Northwestern Memorial Hospital*, 964 F. Supp. 1225, 1240 (N.D. Ill. 1997) ("[c]laims based wholly on conclusory allegations of *de facto* municipal policy constitute one of the most prevalent forms of abuse in §1983 actions").

14.     In this case, plaintiff's reliance on 25 years of unrelated misconduct allegations against the City as the basis for his *Monell* claims is exactly the type of "splatter-paint" approach rejected by *Carter*.  Plaintiff's *Monell* allegations begin at paragraph 28, which is divided into sub-paragraphs (a)-(o).  These sub-paragraphs do nothing more than refer to an "abstract" policy of violating constitutional rights.[2]  *See Carter*, 164 F.3d at 218.  Plaintiff's sub-paragraphs do not offer any specifics that would serve to put the City on notice of the policy, practice, or custom that he is challenging.  *See Bell Atlantic Corp.*, 127 S. Ct. 1955, 1969 (2007) (complaint must provide the "grounds upon which [his claim] rests").  Cursory allegations of general duties and the failure to perform those duties do not "stand in the place of an allegation of a municipal policy, custom or practice required to state a *Monell* claim under section §1983."  *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005); *see also Mumm v. Wetter*, 2006 WL 163151 at *4 (N.D. Ill. 2006) (boilerplate allegations of a municipal policy, entirely lacking in any factual support that a policy does exist, are insufficient); *Brown v. City of Chicago*, 2001 WL 1002484 at *3 (N.D. Ill. 2001) (dismissing section 1983 claims and explaining that boilerplate allegations constituted of mere legal conclusions that did not state *Monell* claim).

15.     Plaintiffs' counsel has included similar (and in most cases, identical) boilerplate *Monell* allegations in at least eight other recently filed cases in this courthouse.  *See Michael Farley v. City of Chicago, et al.*, No. 07 C 5254 (J. Gottschall); *Terry Martin v. City of Chicago, et al.*, No. 07 C 4991 (J. Guzman); *Terrance Jones v. City of Chicago, et al.*, No. 07 C 5279 (J. Norgle); *Safford v. City of Chicago, et al.*, No. 07 C 5276 (J. Coar); *James McComb v. City of Chicago, et al.*, No. 07 C 5564 (J. Marovich); *Sarkis Moumji v. City of Chicago, et al.*, 07 C 5256 (J. Lefkow); *Jerry Chaparro v. Powell, et al*, 07 C 5277 (J. Conlon); *Deward Johnson v. City of Chicago, et al.*, No. 07 C 7036 (J. Guzman).  Like this case, none of the alleged constitutional violations underlying these other actions relate to the *Monell* topics alleged.  This "one size fits all" approach to *Monell* taken by plaintiff's counsel convincingly establishes the absence of the required specificity (*City of Canton*, *supra*), and implicates the potential for abuse

---

[2] Defendant notes that these sub-paragraphs are also repetitive and overlap with each other.  For example, sub-paragraphs (c), (e), (f), (g), (h), (i), (k), (l), and (n) allege the same thing:  the City failed to take remedial action, sanction, or discipline officers who commit certain misconduct.  Similarly, sub-paragraphs (d), (j), and (m) all concern the City's alleged failure to investigate misconduct.  Plaintiff has essentially repeated the same boilerplate allegations 15 times, but not once has he offered precise details or the specificity required to identify a custom, practice, or policy that caused his constitutional deprivation.

forewarned by the *Carter* and *Copeland* courts.  Furthermore, such an approach conclusively defeats any suggestion that the alleged policies were the "moving force" behind plaintiff's specific constitutional deprivation in *this* case (*Bryan County, supra)* and suggests plaintiff's counsel is "shopping" for a court that will give its blessing to his "general lawlessness" theory.

16.    In one of these other cases, *Chaparro v. Powell*, No. 07 C 5277 (N.D. Ill. Jan. 2, 2008), District Court Judge Suzanne B. Conlon recently dismissed a nearly identical *Monell* claim as that attempted by plaintiff in this case.  (*See* Memorandum Opinion and Order, *Chaparro* Dkt. #51, attached as Exhibit B).  In pertinent part, Judge Conlon ruled:

> The factual allegations failed to plausibly suggest a policy cognizable under *Monell*.  The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. [Plaintiff] relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct.  But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom.  Under [plaintiff]'s logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment.  [Plaintiff]'s *Monell* theory collapses into *respondeat superior*, an outcome explicitly forbidden by the Supreme Court.

*Chaparro*, Slip Op. at pp. 5-6.

17.    Furthermore, Judge Conlon determined that the allegations failed to plausibly suggest a direct causal link between a municipal policy and the plaintiff's injury.  (*Id.* at p. 6). Judge Conlon reasoned that the policy alleged by the plaintiff was so indefinite that any connection to a particular constitutional violation was "highly attenuated."  *Id.*  Judge Conlon concluded:

> Indeed, the injury [plaintiff] allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct.  As the City notes, [plaintiff]'s attorney has demonstrated this fact by including identical *Monell* allegations in at least six other §1983 cases against the City alleging different instances of alleged police misconduct.

*Id.*  Judge Conlon's decision in *Chaparro* is persuasive, directly on point, and provides this Court with guidance on nearly identical allegations and issues raised in the pending motion.[3]  This

---

[3] In *Jones v. Unknown Officers*, No. 07 C 5279, another of the recently filed cases identified in paragraph 15, *supra*, Judge Norgle also granted the City's motion and dismissed plaintiff's *Monell* claim (which was identical to the claim attempted in this case).  (*See* Order of 1/23/08, *Jones* Dkt. # 36, a copy of which is attached as Exhibit C).

Court should follow Judge Conlon's reasoned decision and dismiss plaintiff's *Monell* allegations, including count VI.

18.    A review of the disparate and unfocused allegations asserted by plaintiff demonstrates the soundness of Judge Conlon's ruling.  The allegations of unrelated officer misconduct contained in paragraphs 31-89 of plaintiff's first amended complaint seemingly seek to establish the "roving commission" criticized in *Carter*.  Case law is clear that allegations of other misconduct not connected to a plaintiff's alleged deprivation do not state a claim for municipal liability.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (plaintiff required to demonstrate the existence of a direct causal link between municipal policy and constitutional injury).  As explained in *Carter*, the claim that "past generalized bad police behavior led to future generalized bad police behavior, of which [the plaintiff's] deprivations are an example" fails the "rigorous standards of culpability and causation" required for municipal liability. *Carter*, 164 F.3d at 219.  Instead, a plaintiff must allege an affirmative link between the deficiency and the particular violations of which he complains.  *Canton*, 489 U.S. at 388.  More specifically, a plaintiff must allege the requisite causation in that the policy or custom was the 'moving force' behind the constitutional deprivation.  *O'Sullivan v. City of Chicago*, 327 F. Supp. 2d 937, 940 (N.D. Ill. 2004).

19.    Here, plaintiff has not alleged a causal link between any "policies" alleged in paragraphs 31-89 of his complaint and the violation of his constitutional rights.  To the contrary, plaintiff takes a scattershot approach in these paragraphs with respect to his *Monell* claim.  In particular, plaintiff refers to alleged deficiencies or incidents of misconduct involving Special Operations Officers, the Office of Professional Standards ("OPS"), 1980's torture allegations, and non-defendant officers.  (*See* Exhibit A, ¶¶ 31-89.)  The unfocused evidence of unrelated misconduct described in these allegations strays far from any alleged conduct that forms the basis of plaintiff's first amended complaint.  As such, the alleged policies associated with this "other" misconduct do not aid plaintiff in his attempt to allege a *Monell* claim.  *See Carter*, 164 F.3d at 218 (requiring "close fit" between challenged policy and constitutional violation").  Simply stated, plaintiff has not alleged facts from which this Court could infer that any policies alleged to exist in paragraphs 31-89 were the "moving force" behind some constitutional injury, if any, that can be gleaned from the first amended complaint.  *Bryan County*.

A.    **This Is Not An SOS Case.**

20.    Paragraphs 31-40 contain allegations concerning SOS and incidents of alleged misconduct that occurred between 2001 and 2006 involving SOS officers.  In this case, plaintiff does not allege that SOS police officers were involved in the underlying incident in any way. Plaintiff also alleges that certain SOS members have been indicted for kidnapping and robbing individuals.  (Exhibit A, ¶ 38).  Plaintiff's first amended complaint, however, is devoid of any allegations that he was robbed or kidnapped.  Against this backdrop, plaintiff has failed to allege a direct causal link between the existence of any "policy" concerning the SOS and his constitutional deprivation.  To reiterate, plaintiff has not shown that the City's alleged policy of allowing its SOS officers to rob and kidnap individuals in 2001-2006 was the "moving force" behind his alleged constitutional violation.  *See O'Sullivan*, 327 F. Supp. 2d at 942.  Rather, plaintiff's invocation of the SOS cases seems designed to take advantage of the publicity surrounding that alleged misconduct so as to improperly (and prejudicially) bolster his unrelated claim.

B.    **Plaintiff's OPS Allegations Do Not Relate to this Case and Seek to Improperly Establish a Roving Commission to Monitor And/Or Change OPS Procedures.**

21.    Paragraphs 41-50 and 65-72 contain allegations concerning the Office of Professional Standards ("OPS") and its alleged failure to properly investigate certain officer conduct.  In this case, plaintiff has not even alleged OPS failed to conduct an adequate investigation into any complaint.  Nor has plaintiff alleged that any police officer involved in this case should have been previously disciplined by OPS for similar conduct or that any similar allegations have ever been lodged against a defendant officer.  Plaintiff simply has not provided any causal link between the department's alleged failure to discipline other officers in other cases for other misconduct and any constitutional deprivations in this case.  Plaintiff instead asserts general criticisms of OPS based on its purported lack of independence and the existence of an "abstract" policy of failing to investigate.  It is doubtful such general criticisms could ever support a *Monell* claim in any case; they certainly do not support a claim in this case.  As discussed above, a plaintiff must do more than offer general instances of previous misconduct to state a claim under *Monell*.

**C.    Officers Flagg, Haynes, Jones, and Black Were Not Involved in this Case.**

22.    Paragraphs 51-64 concern allegations of misconduct by non-defendant officers Flagg, Haynes, Jones, and Black.  Flagg, Haynes, Jones, and Black were not involved in this case.  Plaintiff nevertheless includes allegations that Flagg, Haynes, Jones, and Black distributed cocaine, committed robbery, and conducted home invasions involving other defendants.  These instances of previous misconduct are unrelated to the type of misconduct plaintiff alleges occurred in this case.  Plaintiff is not alleging here that his constitutional rights were violated when he was robbed or his home was invaded.  Consequently, plaintiff once again lacks the requisite causal link between the alleged policy and his constitutional injury for the purposes of *Monell*.

**D.    *Garcia* is Inapposite.**

23.    Paragraphs 76-78 refer to an opinion Judge Holderman authored in connection with another civil case, *Garcia v. City of Chicago*, 2003 WL 22175618 (N.D. Ill. 2003).  Plaintiff alleges that, in this opinion, Judge Holderman found the existence of a municipal policy of failing to conduct complete investigations into police misconduct.  Notably, plaintiff neglects to note that the specific issue in *Garcia* was whether a custom, practice, or policy existed in 2001 regarding the failure to adequately investigate complaints made against off-duty police officers.  Further, in the opinion referred to by plaintiff, Judge Holderman merely denied the City's motion for new trial—Judge Holderman did not make findings of fact that a policy of failing to investigate claims against off-duty police officers existed.  *Id.* at *2.  Considering that the policy in *Garcia* concerned adequately investigating complaints made against off-duty police officers, it cannot be said that plaintiff's constitutional rights here were violated as a result of that policy, as there are no allegations concerning off-duty conduct in this case.  Thus, paragraphs 76-78 do not aid plaintiff in his attempt to plead a *Monell* claim.

**E.    BrainMaker is Irrelevant.**

24.    Finally, paragraphs 81-89 concern the police department's prior use of the "BrainMaker" program and corresponding study of 200 officers in 1995 to determine "at risk" officers.  How the City's alleged failure to use an experimental software product rises to the level of a custom, policy, or practice for purposes of a *Monell* claim is unclear at best.  Moreover, plaintiff's first amended complaint simply does not allege any connection between his claims

and the BrainMaker program.  Once again, plaintiff has failed to plead a nexus or causal link between the City's alleged "policy" concerning BrainMaker and the alleged conduct by any Defendant Officer that allegedly violated his constitutional rights.

      **F.**    **Count VI Should Be Dismissed.**

      25.    The preceding discussion demonstrates paragraphs 28-89 of plaintiff's first amended complaint are replete with allegations that have nothing to do with his arrest or the allegations of misconduct against Officer Haleas and/or the "unknown" Police Officer Defendants in this case.  Although plaintiff's first amended complaint contains a myriad of allegations concerning previous unrelated instances of police misconduct, it is devoid of any facts linking his alleged constitutional deprivation to these other practices.  Count VI therefore should be dismissed.  *See Aleman v. Sheriff of Cook County*, 2005 WL 3116048 at *2 (N.D. Ill. 2005) (finding that complaint was devoid of any allegations that can be construed as pleading a causal nexus, or even a tenuous connection, between the defendants' misconduct and the alleged policy or practice).  Plaintiff has merely provided boilerplate allegations of previous instances of misconduct.  A *Monell* claim is not adequately pled by including references to every "municipal transgression" that has occurred and the language "custom, policy, or practice."  *See Carter*, 164 F.3d at 218-19; *Catchings v. City of Chicago*, 2005 WL 1027127 at *4 (N.D. Ill. 2005) (declining to infer the existence of a policy without factual allegations supporting that theory).  Therefore, plaintiff's failure to plead any facts linking his constitutional injury to these alleged policies is fatal, and his *Monell* claims (Count VI and paragraphs 28-89) should be dismissed.  *See, e.g., Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) (a plaintiff needs to demonstrate a causal link between the defendant's conduct and his injury).

    **III.**    **PLAINTIFF'S RICO CLAIM (COUNT X) FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

      26.    The RICO claim attempted in the first amended complaint (count X) does not state a claim for which relief can be granted.  Specifically, the allegations fail to assert plaintiff has been injured in his "business or property" by reason of the alleged RICO violation.  Plaintiff therefore lacks standing to bring a RICO claim.

      27.    The civil RICO statute allows recovery for "[a]ny person injured in his business or property by reason of a violation" of the Act.  18 U.S.C. §1964(c).  In the Seventh Circuit, the phrase "injured in business or property" is considered to be a standing requirement, rather than

an element of the cause of action, which must be satisfied in order to set forth a RICO claim. *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006). Use of the terms "business or property" are words of limitation that preclude recovery for personal injuries and pecuniary losses that result from those injuries. *Id.*, citing *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). Accordingly, personal injuries do not provide standing in civil RICO actions, and pecuniary losses deriving from those personal injuries are likewise insufficient to confer standing. *Evans*, 434 F.3d at 926.

28.     In *Doe v. Roe*, the Seventh Circuit held that the loss of income resulting from the personal injury of emotional distress was not sufficient to establish a business or property injury under §1964(c). 958 F.2d at 770. In doing so, the Court noted that "[m]ost personal injuries-loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few-will entail some pecuniary consequences." *Id.* However, the Court concluded that although "the economic aspects of such injuries could, as a theoretical matter, be viewed as injuries to 'business or property,' ... engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary." *Id.*

29.     A detailed analysis of *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), is particularly instructive here. In *Evans*, the plaintiff brought an action against the City and eight individual police officers alleging a RICO violation, violations of his first amendment right to free speech, malicious prosecution, and intentional infliction of emotional distress. The district court rejected the RICO claims as matter of law, finding that because plaintiff failed to establish an injury in his "business or property" by reason of a violation of the RICO Act, he lacked standing to bring a claim. *Evans*, 434 F.3d at 923-24. On appeal, the plaintiff argued he was damaged in his "business or property" because he lost potential income during the period of time he was falsely imprisoned. He further claimed that because of wrongful prosecution and imprisonment, he was forced to incur attorney fees to defend himself in the criminal proceedings, constituting another injury to his "business or property." *Id.* at 925.

30.     Affirming the district court, the Seventh Circuit in *Evans* initially rejected the plaintiff's claim that loss of his ability to pursue gainful employment was an injury to "business or property." The court concluded that loss of income as a result of being unable to pursue employment opportunities while allegedly falsely imprisoned was "quintessentially" a pecuniary

loss derivative of a personal injury claim arising under tort. *Id*. at 926-27. The Seventh Circuit in *Evans* explained:

> We also hold that foregone earnings stemming from the lost opportunity to seek or gain employment are, *as a matter of law*, insufficient to satisfy §1964(c)'s injury to "business or property" requirement where they constitute nothing more than pecuniary losses flowing from what is, at base, a personal injury. *See Doe* 958 F.2d at 770. Thus, because [plaintiff's] claims of loss of earnings due to the inability to seek out or obtain employment constitute pecuniary losses stemming from personal injury he lacks standing under RICO to advance his portion of his claim ... (Emphasis added).

*Id*. at 930-31.

31.     The Seventh Circuit in *Evans* similarly determined that attorney fees incurred by the plaintiff to defend himself did not constitute an injury to business or property within the meaning of the civil RICO act:

> Like pecuniary losses stemming from the inability to seek or gain employment due to a plaintiff's alleged false imprisonment, pecuniary losses which emanate from a personal injury such as the acquisition of attorney fees due to alleged malicious prosecution or false imprisonment do not provide a plaintiff with standing under the civil RICO statute.

*Id*. at 931; s*ee also Doe v. Roe*, 958 F.2d at 770 (Attorney fees were plainly derivative of emotional distress claim and therefore reflected personal injuries that are not compensable under the civil RICO statute).

32.     A review of the first amended complaint reveals plaintiff's lack of standing as a matter of law under the civil RICO statute. As a preliminary consideration, plaintiff's causes of action mirror those of the plaintiff in *Evans* (*e.g.*, claimed violation of civil rights; false arrest; malicious prosecution). In paragraph 125 of the first amended complaint, plaintiff attempts to set forth an alleged injury to a "business or property" interest (specifically, lost money from payment of fines, costs, attorney's fees and other fees, as well as lost wages). (*See* Exhibit A, ¶125). These alleged damages are precisely the types of losses rejected as "business or property" injuries by the Seventh Circuit in *Evans*. Like *Evans*, these alleged damages constitute pecuniary losses emanating from what is essentially a personal injury claim, and do not reflect an injury to business or property. Plaintiff's own pleadings support this conclusion: he candidly alleges all of his financial losses flow directly from the false arrest. (*See* Exhibit A, ¶17). As a matter of law,

plaintiff's damages are not injuries to his business or property.  Plaintiff therefore lacks standing to state a claim under the civil RICO statute, rendering appropriate the dismissal of count X.

## **CONCLUSION**

33.     Plaintiff's first amended complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim against defendants upon which relief can be granted.  Alternatively, the first amended complaint should be supplemented pursuant to Rule 12(e) because, as it stands, it is so vague and ambiguous that defendants cannot meaningfully investigate and prepare a responsive pleading.  Notwithstanding these deficiencies, separate grounds exist for the dismissal of other claims.  Plaintiff's *Monell* allegations (count VI and ¶¶ 28-89) are inadequate and improper and should be stricken and dismissed.  Finally, count X of the first amended complaint, plaintiff's RICO claim, should be dismissed for its failure to state a claim upon which relief can be granted.


Dated: February 6, 2008                              Respectfully submitted,


                                                    By: s/ Paul A. Michalik_____
                                                        One of the Attorneys for Defendant,
                                                        City of Chicago

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Gregory L. Lacey
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 6, 2008, I electronically filed the foregoing **Defendants**

**Haleas and City of Chicago's Motion for Dismissal of Plaintiff's First Amended Complaint**

with the Clerk of the Court using the ECF system, which sent electronic notification of the filing

on the same day to:

| | |
|---|---|
| Blake Wolfe Horwitz | Elliot S. Richardson |
| Amanda Sunshine Yarusso | Rachelle M. Sorg |
| Law Offices of Blake Horwitz | Sean M. Baker |
| 155 North Michigan Avenue | Elliot S. Richardson & Associates, LLC |
| Suite 723 | 20 S. Clark Street, Suite 500 |
| Chicago, Illinois  60601 | Chicago, Illinois 60603 |
| 312.6l6.4433 | (312) 676-2100 |
| lobh@att.net | |

s/ Paul A. Michalik
Paul A. Michalik

CHICAGO\2419876.1
ID\PAM