# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDUARDO ALMARAZ, on behalf of himself and others similarly situated, | ) ) ) |
|     Plaintiff, | ) No.   7 C 06134 |
|     v. | ) ) JUDGE HART |
| OFFICER HALEAS, TERRY HILLARD, LORI LIGHTFOOT, TISA MORRIS, PHILLIP CLINE, UNKNOWN CHICAGO POLICE OFFICERS, MAYOR RICHARD DALEY, and the CITY OF CHICAGO, | ) ) ) ) ) ) |
|     Defendants. | ) |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the PLAINTIFF, by and through his attorneys Blake Horwitz of Blake Horwitz, Ltd., Elliot Richardson, Sean M. Baker, and Rachelle Sorg of Elliot Richardson & Associates, and pursuant to this First Amended Complaint at Law, states the following against the above named Defendants, to wit OFFICER HALEAS, (hereinafter, the "DEFENDANT OFFICER"), UNKNOWN CHICAGO POLICE OFFICERS, TERRY HILLARD, LORI LIGHTFOOT, TISA MORRIS, MAYOR DALEY and PHILIP CLINE (hereinafter, the "SUPERVISORY DEFENDANTS"), and the CITY OF CHICAGO.

## JURISDICTION

1.    The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; 18 U.S.C. § 1961 et seq. (RICO); the Judicial Code, 28 U.S.C. §1331 and § 1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

## PARTIES

2.    PLAINTIFF is a resident of the State of Illinois and of the United States.

3.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS, were

at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

4.      The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICER as well as the other UNKNOWN CHICAGO POLICE OFFICERS and/or employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein). At all times material to this complaint, the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

5.      RICHARD DALEY was and is the acting mayor for the CITY OF CHICAGO.

6.      PHILIP CLINE was the acting superintendent of police for the Chicago Police Department.

7.      TERRY HILLARD was the acting superintendent of police for the Chicago Police Department.

8.      LORI LIGHTFOOT was the Chief Administrator of the Chicago Police Department's Office of Professional Standards (OPS) from August 2002 to July 2004.

9.      TISA MORRIS was the Chief Administrator of the Chicago Police Department's OPS from July 2004 to October 2006.

## FACTS

10.     On or about January 29, 2007, the DEFENDANT OFFICER was engaged in an unreasonable seizure of the PLAINTIFF. This conduct violated the Fourth Amendment to the United States Constitution.

11.     On or about January 29, 2007, PLAINTIFF did not obstruct justice, resist arrest and/or batter and/or assault the DEFENDANT OFFICER.

12.     The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICER caused an unreasonable seizure to the PLAINTIFF.

13.     The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS charged and/or participated in the charging of PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort. The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFF.

14.     On January 29, 2007, PLAINTIFF had not committed an act contrary to the laws of the State of Illinois.

15.     As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICER, and UNKOWN CHICAGO POLICE OFFICERS, PLAINTIFF was caused to suffer damages.

16.     On or about January 29, 2007, the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS.

### RICO

17.     The PLAINTIFF was also caused to suffer financial loss and out of pocket expenses, directly correlated to being arrested for DUI under false pretenses.

18.     PLAINTIFF is a person under the meaning of the RICO statute.

3

19.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS in their individual capacity are persons under the meaning of the RICO statute. Said persons are part of the subset of individuals which make up a cell and/or group of individuals who are engaged in illegal activity within an enterprise known as the City of Chicago Police Department.

20.    The City of Chicago Police Department engaged in interstate commerce for the purchase and procurement of, *inter alia*, equipment, weapons, tools, vehicles, uniforms, communications devices, logistics and data management systems, and devices for estimating blood alcohol content to be used by its police force.

21.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS, within the past ten years engaged in multiple, repeated, and continuous acts, *inter alia*, the complained of police misconduct and false charges of PLAINTIFF which constituted extortion and mail fraud under Illinois state law and federal law, and which further constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 et seq.

22.    The DEFENDANT OFFICER'S and UNKOWN CHICAGO POLICE OFFICERS' complained of police misconduct was inextricably intertwined with his authority and activities as an employee of the Chicago Police Department.

23.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS ability to intimidate lawful citizens such as PLAINTIFF with the power and threat of arrest and prosecution was made possible by and through his employment as a police officer with the Chicago Police Department.

24.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS illegal activities were clearly helped along by their authority as Chicago Police Officers and by the fear and intimidation which a police officer such as DEFENDANT OFFICERS uniquely have the ability to engender in others by virtue of their position.

25.    All of DEFENDANT OFFICERS and UNKOWN CHICAGO POLICE OFFICERS complained of police misconduct and false charges were intended and did earn the Chicago Police Department and CITY OF CHICAGO money and revenue.

## EQUAL PROTECTION

26.    With regard to an Equal Protection Claim, PLAINTIFF was a "Class of One." In that regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS. The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF. Further,

27.    PLAINTIFF was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

## *MONELL* ALLEGATIONS

28.    It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

    a.    generate false documentation to cover-up for the misconduct of fellow police officers;

    b.    engage in acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

    c.    fail to properly discipline officers from said police department who have committed act(s) of false arrest, malicious prosecution, misrepresentation of

facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

d. fail to properly investigate a complaint of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

e. fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

f. allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

g. fail to provide adequate sanctions/discipline to officers who commit false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h. fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i. fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j. fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k. fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they

can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l.  fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m.  fail to properly investigate officers who commit acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.  fail to take proper remedial action with officers who commit acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.  fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

29.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

30.     A code of silence exists between officers of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the

department, regarding police officer misconduct.

## SPECIAL OPERATIONS OFFICERS

31.    Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least ten civilian complaints lodged against them.

32.    The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least ten civilian complaints lodged against them, between the years 2001 and 2006.

33.    Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least ten civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

34.    The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

35.    In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago.  The order provided, *inter alia,* that the parties were permitted to make public the names of 662 Special Operations Officers that had ten or more civilian complaints lodged against them.

36.    The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

37.    There are at least four police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

38.    Within the last four years, six police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

39.    There are ten police officers who worked in the Special Operations Section who

received a combined total of 408 complaints of misconduct (with the Office of Professional Standards).

With regard to those 408 complaints, only three were sustained.

40.    Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

## OFFICE OF PROFESSIONAL STANDARDS (OPS)

41.    Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last ten years, have resulted in a "sustained finding" against said officer.

42.    The OPS is fully funded by the City of Chicago.

43.    The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

44.    The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

45.    Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

46.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

47.    Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is

properly investigating the complaints of misconduct of Chicago Police Officers.

48.     Due to the intimate connection between the OPS and the Mayor of the City of Chicago as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

49.     For example, Officer Raymond Piwnicki obtained 56 complaints against him within seven years and failed to receive meaningful discipline for any act of misconduct.

50.     Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as ten lawsuits, amounting to over 2.5 million dollars that had to be paid out of City tax dollars as a result of the litigation.

## PARTICULARIZED MISCONDUCT OF
## CERTAIN OFFICERS'

51.     Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession of cocaine with the intent to distribute, robbery and extortion.

52.     In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and possession of cocaine with the intent to distribute, while he was working for the Chicago Police Department and while he was acting in the capacity of a Chicago Police Officer. He also admitted to undertaking these efforts from 1999 through March 2005.

53.     Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in Federal Court, to having conspired, along with Chicago Police Officers, Eural Black, Darek Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and marijuana.

54.     Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

55.     Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

56.     Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

57.     Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

58.     Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

   a.  attempting to conspire and distribute controlled substances;

   b.  multiple acts of robbery and, racketeering;

   c.  the procurement of weapons from individuals through robbery and extortion;

   d.  recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

   e.  delivering controlled substances in exchange for cash;

   f.  not enforcing the law with individuals that he was involved so that he could promote criminal activity;

   g.  along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

   h.  distributing cocaine in exchange for cash;

These allegations serve as an example of misconduct by Chicago Police Officers, as well as the failure of the Chicago Police Department and OPS, to monitor itself.

i.  conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;.

j.  using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

k.  using the facilities of the Chicago Police Department, namely his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

## OPS INVESTIGATION RELATIVE TO
## BLACK, FLAGG, JONES AND HAYNES

59.  Corey Flagg, prior to being charged with criminal activity, possessed over 10 complaint of misconduct, none of which were sustained by the Chicago Police Department.

60.  Corey Flagg has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

61.  Eural Black, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

62.  Broderick Jones, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

63.  Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

64.  Darek Haynes, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

## LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS
## CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

65.  Due to the lack of legitimate review of misconduct by Chicago Police Officers, many

police officers for the City of Chicago believe that they can engage in lawless activities.

66.     The financial relationship between the City of Chicago and the OPS is such that the OPS can not be independent.

67.     This is due to the fact that, *inter alia,* if a determination is made, by OPS, that a police officer has committed an act of misconduct, said determination and the facts which flow from said determination, may be used by the victim, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

68.     In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

69.     Sustained complaints by OPS dramatically increases the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

70.     Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

71.     Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness

72.     It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

## MISCELLANEOUS FACTS REGARDING MONELL LIABILITY

73.     In the year of 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

13

74.    William M. Beavers was an Alderman for the City of Chicago. In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

75.    Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

76.    Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

77.    Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago,* 2003 U.S. Dist., LEXIS, *16565* (N.D. Ill. Sep., 19, 2003).

78.    In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed, and slanted in favor of the officers.

79.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

80.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, and the fact that the Mayor acknowledges that he failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same. This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

## BRAINMAKER

81.     In 1995, the City of Chicago became aware of the BrainMaker program.

82.     "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

83.     The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

84.     The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

85.     BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

86.     BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

87.     The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers. Of those 91 people, nearly half were found to be already enrolled in a counseling program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

88.     Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to UPS and/or the Office of Internal Affairs.

89.     Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

## COUNT I
### §1983 False Arrest

90.      PLAINTIFF re-alleges paragraphs 1 — 89 as though fully set forth herein.

91.      The actions of the DEFENDANT OFFICER caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity. Therefore, the conduct of the DEFENDANT OFFICER was in violation of the Fourth Amendment to the United States Constitution.

92.      The aforementioned actions of the DEFENDANT OFFICER were the direct and proximate cause of the Constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICER. PLAINTIFF also demands punitive damages, costs and attorney's fees against the DEFENDANT OFFICER. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT II
### False Arrest —State Claim

93.      PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

94.      The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS arrested PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity. The conduct of the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS were in violation of the Constitution to the State of Illinois as well as Illinois law.

95.      The aforementioned actions of the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICER and UNKOWN CHICAGO POLICE OFFICERS. PLAINTIFF also demands punitive

damages and costs against the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE

OFFICERS.  PLAINTIFF also demands whatever additional relief this Court deems equitable

and just.

## COUNT III
### Malicious Prosecution - State Claim

96.     PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

97.     The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS alleged

that PLAINTIFF violated the laws of the State of Illinois. These allegations commenced or

continued a criminal proceeding against PLAINTIFF.

98.     The DEFENDANT OFFICER engaged in this effort without probable cause.

99.     The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

100.    The underlying criminal charges were resolved in a manner indicative of innocence.

101.    The aforementioned actions were the direct and proximate cause of the violations of

Illinois State Law, as set forth above.

        WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT

OFFICER and UNKOWN CHICAGO POLICE OFFICERS. PLAINTIFF also demands punitive

damages and costs against the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE

OFFICERS, PLAINTIFF also demands whatever additional relief this Court deems equitable and

just.

## COUNT IV
### § 1983 LIABILITY OF DEFENDANTS, DALEY
### CLINE, HILLARD, MORRIS AND LIGHTFOOT

102.    PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

103.    Defendants Phillip Cline, Terry Hillard, Richard Daley, Tisa Morris and Lori Lightfoot

caused and participated in the deprivation of the constitutional rights of the PLAINTIFF.

104.    Defendants CLINE, HILLARD, MORRIS, DALEY and LIGHTFOOT at all times material to this complaint, were aware that the City maintained a widespread and settled policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers. These Defendants were also aware that the maintenance of these practices would result in preventable police abuse.

105.    These Defendants oversaw, endorsed, condoned and acquiesced in the above-mentioned policies, practices and customs and refused to take steps to correct them.

106.    These Defendants, at all times material to this complaint, caused and facilitated the systematic denial of PLAINTIFF'S constitutional rights, by, among other things:

> (a) failing to monitor police officers and groups who violate the constitutional rights of citizens;
>
> (b) failing to discipline police officers who engaged in constitutional rights violations;
>
> (c) turning a blind eye to repeated and systemic abuses of the constitutional rights of citizens, including the PLAINTIFF; and
>
> (d) failing to develop and implement an effective early warning system to identify police officers and groups who systematically violate the constitutional rights of citizens.

107.    These Defendants were, at all times material to this complaint, deliberately indifferent to the rights and safety of PLAINTIFF, as evidenced by their acquiescence to and support of these policies and their obvious consequences.

WHEREFORE, PLAINTIFF demands compensatory damages from DEFENDANTS PHILLIP CLINE, LORI LIGHTFOOT, RICHARD DALEY, TISA MORRIS and TERRY HILLARD. PLAINTIFF also demands costs and attorney's fees against these Defendants. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT V
### §1983 Equal Protection — Class of One

108.    PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

109.    The actions of THE DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS violated the Equal Protection clause to the United States Constitution.

110.    The aforementioned actions of said DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, PLAINTIFF demands compensatory damages from the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS.    PLAINTIFF also demands punitive damages, costs and attorney's fees against the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS.    PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT VI- *Monell*

111.    PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

WHEREFORE, PLAINTIFF demands compensatory damages against the CITY OF CHICAGO, costs and attorney's fees. PLAINTIFF also demands whatever additional relief this Court deems equitable and just.

## COUNT VII
### 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

112.    PLAINTIFF re-alleges paragraphs I — 90 as though fully set forth herein.

113.    Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS alleged above.

114.    The DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

WHEREFORE, should the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS be found liable for any of the alleged counts in this cause, PLAINTIFF demands that, pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO pay PLAINTIFF any judgment obtained against the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS as a result of this complaint.

### COUNT VIII
### Supplementary Claim for *Respondeat Superior*

115.    PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

116.    The aforesaid acts of the DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior.*

WHEREFORE should the DEFENDANT OFFICERS and UNKOWN CHICAGO POLICE OFFICERS be found liable for any state claims alleged herein, Plaintiff demands judgment against the CITY OF CHICAGO and such other additional relief, as this Court deems equitable and just.

### COUNT IX
### Class Allegations

117.    PLAINTIFF re-alleges paragraphs 1 — 90 as though fully set forth herein.

118.    The above described seizures and false arrests were undertaken in accordance with a policy of DEFENDANT CITY OF CHICAGO.

119.    DEFENDANT OFFICER and UNKOWN CHICAGO POLICE OFFICERS uniformly

falsify police reports, fabricates DUI tests results, and/or testifies falsely in court to secure arrests

and convictions for the CITY OF CHICAGO.

120.    Plaintiff contends that as a result of DEFENDANT OFFICERS and UNKOWN

CHICAGO POLICE OFFICERS falsifications, he, and others, have been deprived of rights

secured by the Fourth and Fourteenth Amendments and have been maliciously prosecuted.

121.    Plaintiff brings this action individually and for the following sub-classes:

> i. All persons who, at any time on and after two years preceding the filing of this lawsuit
> until the date of entry of judgment, were detained and/or arrested by DEFENDANT
> OFFICER and UNKOWN CHICAGO POLICE OFFICERS as a result of a DUI stop
> without probable cause.

> ii. All persons who, at any time on and after one year preceding the filing of this lawsuit
> until the date of entry of judgment, were prosecuted by the DEFENDANT OFFICER
> and UNKOWN CHICAGO POLICE OFFICERS based on false testimony, police
> reports and/or evidence, i.e. maliciously prosecuted, without probable cause.

122.    Each proposed sub-class satisfies each of the prerequisites of Rule 23(a) of the Federal

Rules of Civil Procedure and class certification for each sub-class is appropriate under Rule

23(b)(3).

## COUNT X
## RICO Claim

123.    The PLAINTIFF and all members of the above referenced class, whose date of final

resolution and/or in whose case the DEFENDANT OFFICER'S and UNKNOWN CHICAGO

POLICE OFFICERS last act or omission of misconduct falls within the a time period of four

years prior to the filing of PLAINTIFF'S Motion to File the First Amended Complaint, bring this

RICO claim against the DEFENDANT OFFICER and the UNKNOWN CHICAGO POLICE

OFFICERS.

124.    PLAINTIFF and Class Members re-allege Paragraphs 1 — 90 as though fully set forth

herein.

125.    The actions of the DEFENDANT OFFICER and the UNKNOWN CHICAGO POLICE OFFICERS collectively and through a common scheme of extortion and mail fraud, caused the PLAINTIFF and Class Members to suffer a loss to business and property, in one or more of the following forms: loss of U.S. currency from payment for a supposed violation, the towing of their vehicle, court costs, attorney fees, impoundment fees and/or lost wages.

126.    The predicate acts for this cause of action are demonstrated by the fact that the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS have engaged in the same scheme, as alleged above, on over ten occasions, each occasion in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. § 1961.

127.    The aforementioned actions of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the violations set forth above.

WHEREFORE, said PLAINTIFF and Class Members demand treble damages from the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS, punitive damages, costs and attorney's fees. The PLAINTIFF and Class Members also demand whatever additional relief this Court deems equitable and just.

### JURY DEMAND

128.    Plaintiff demands trial by jury.

Respectfully submitted,

s/Blake Horwitz

By:    _____
One of the attorneys for the Plaintiff
Blake Horwitz

**THE LAW OFFICES OF BLAKE HORWITZ, LTD.**
155 N. Michigan Ave., Suite 723
Chicago, IL 60601
(312) 616-4433