# EXHIBIT A

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2617 | **DATE** | 6/6/2005 |
| **CASE TITLE** | Bond vs. Utreras, et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's Motion for Leave to File an Amended Complaint is granted [#51].

■ [ For further details see text below.]    Notices mailed by judge's staff.

### STATEMENT

Plaintiff, Diane Bond ("Bond"), seeks leave to file an Amended Complaint dismissing certain unnecessary parties from the case, providing greater specificity about the respective roles that the individual police defendants played in the alleged abuse of Bond, and adding a policy claim against defendant City of Chicago ("City") pursuant to *Monell* v. *Dept. of Social Services*, 436 U.S. 658 (1978). The proposed Amended Complaint asserts claims against three new defendants in their individual capacities: Philip Cline and Terry Hilliard, the current and former Superintendents of the Chicago Police Department, and Lori Lightfoot, the former Chief Administrator of the City's Office of Professional Standards, on the grounds that each, while acting as a supervisor, caused the constitutional deprivations allegedly suffered by Bond.

The City opposes Bond's motion, arguing that Bond should have brought her *Monell* claims in her original Complaint and that the claims are "essentially moot" because Illinois requires the City to indemnify the individual police defendants if the individuals are found liable for the alleged constitutional deprivations. The City also disputes the sufficiency of Bond's supervisory claims.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). In interpreting Rule 15, the Supreme Court has explained, "If the underlying facts or circumstances relied on by a [party] may be the proper subject of relief, he ought to be afforded an opportunity to test the claim on the merits." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).

The City has failed to persuade the court that Bond should be deprived of the opportunity to test her claims on the merits. First, the City's argument that Bond unreasonably delayed bringing her *Monell* claim is unpersuasive. The City admits that it did not provide Bond with the disciplinary complaint histories of the individual police defendants until March, 2005. Before that time, while Bond may have suspected that the individual police defendants had engaged in a pattern of abuse and that the city had deficient practices of supervising, monitoring and disciplining its officers, Bond did not possess sufficient information to assess the City's awareness of these particular officers' patterns of abuse nor the City's role in causing the alleged

**STATEMENT**

abuse. When Bond received the disciplinary reports, she promptly moved to amend her Complaint. This delay was certainly not unreasonable. *See Keys* v. *City of Harvey*, 1994 WL 687479, at *5 (N.D. Ill. Dec. 8, 1994) (granting plaintiff leave to amend complaint adding a *Monell* claim after an "unjustified" two-and-a-half year delay caused by the plaintiff because "the delay in requesting leave to amend and the prejudice faced by Defendants are not so undue as to overcome the strong preference to adjudicate cases on the merits.").

Second, the City's argument that Bond's *Monell* claims are "essentially moot" is without merit. In *Jones* v. *City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988), the Seventh Circuit recognized that the City's duty to indemnify it employees for damage awards made against them for torts committed in the course of their employment means that *Monell* claims have "little, probably no, practical significance" because the plaintiff "will collect his judgment in full whether or not the City is liable." Nevertheless, the court affirmed a *Monell* judgment against the city. Thus, Bond's *Monell* claim is a "proper subject of relief," and she will be allowed to test the claim on its merits.

Finally, the City argues that Bond's proposed supervisory liability claims are "deficient and redundant." They are "deficient" because Bond does not allege that the supervisors were "personally aware" of Bond's abuse, and "redundant" because the supervisory claims are the legal equivalent of the *Monell* claims. To sue the supervisory defendants in their individual capacities, Bond must allege that they were "personally involved" in the deprivations of Bond's constitutional rights. *Whitford* v. *Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995). The "personal involvement" requirement is met when the accused official "acts or fails to act with a deliberate of reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Rascon* v. *Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). This does not mean, however, that the supervisor must be personally aware of each specific instance of abuse. In *Rascon*, for example, a widow brought a § 1983 action on behalf of her deceased husband for injuries he sustained during a beating by correctional officers at a county correctional facility. The plaintiff alleged that the director of the facility, without participating or otherwise being aware of the abuse allegedly taking place at the facility, suspended all formal procedures for processing disciplinary actions against inmates. As a result, the guards concluded that "covert, physical, summary punishment" were the only means to assure discipline. *Id.* at 275. The Seventh Circuit held that this theory, if proven, justified § 1983 liability against the director in his individual capacity. *Id.*

Similarly, Bond contends that the supervisory defendants' consciously and deliberately failed to act–failed to adequately supervise or monitor their officers and failed maintain an effective disciplinary system for officers–and that these failures were direct causes of the deprivations of Bond's constitutional rights. This theory, if proven, could justify a finding of individual liability against the supervisory defendants.

Furthermore, the supervisory claims are not "redundant" of the *Monell* claims. To state a claim against a municipal entity, a complaint must allege that the conduct leading to the injury resulted from enforcement of an express policy, an instance of a widespread practice that is so permanent and pervasive that it takes on the force of law, or an action of a person with final policymaking authority for the municipality. *See City of St. Louis* v. *Praprotnik,* 485 U.S. 112, 127 (1988). Such allegations are not required to state a claim against the individual supervisory defendants. Thus, a jury could find the supervisory defendants individually liable for Bond's constitutional deprivations but find the city not liable because, for instance, no person with final policymaking authority had constructive knowledge of systematic abuses. In addition, the supervisory claims allow Bond to seek punitive damages, which are unavailable in her claim against the City. *City of Newport* v. *Fact Concerts*, 435 U.S. 247 (1981).