IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO ALMARAZ, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICER HALEAS, TERRY HILLARD, LORI LIGHTFOOT, TISA MORRIS, PHILLIP CLINE, MAYOR RICHARD DALEY, and the CITY OF CHICAGO,<br><br>    Defendants. | No. 7 C 6134<br><br>JUDGE HART<br>MAGISTRATE JUDGE COX |

### RESPONSE TO DEFENDANTS OFFICER HALEAS AND CITY OF CHICAGO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, by and through the LAW OFFICES OF BLAKE HORWITZ, LTD., and hereby submits his Response to Defendants Officer Haleas and City of Chicago's Motion to Dismiss Plaintiff's First Amended Complaint:

### INTRODUCTION

This is a case in which Plaintiff was falsely arrested and consequently suffered financial loss as a result of an illegal racketeering enterprise constructed by the Defendant Officers which served to increase their personal wealth and generate revenue for the City of Chicago. Plaintiff filed suit under 42 U.S.C. § 1983 and 18 U.S.C. § 1961 against the City of Chicago, supervisory officials, and Defendant Officers claiming, *inter alia*, false arrest, malicious prosecution, equal protection violations as well as claims for *Monell* liability and RICO violations.

On February 6, 2008, the Defendants brought a Motion to Dismiss Plaintiff's Amended Complaint. This Court squarely denied the motion. The Defendants then filed a Motion to Reconsider this Court's judgment on February 19, 2008. To ensure compliance with the Court,

Plaintiff has prepared responses to both the Motion to Reconsider and the Motion to Dismiss. Plaintiff states that, for the reasons set forth below, the Defendants' Motions to Dismiss should be denied.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must accept all well-pleaded allegations in the Plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002). "Plaintiffs in a § 1983 case against a municipality are required to comply only with the conventional standards of notice pleading; they are not required to meet any heightened pleading standard." *Sledd v. Lindsay*, 102 F.3d 282, 288 (7th Cir. 1996). Under this notice pleading standard, plaintiff need not plead facts or legal theories. *Hefferman v. Bass,* 467 F.3d 596, 599 (7th Cir. 2006) (citing cases).

## ARGUMENT

I.  **PLAINTIFF'S FIRST AMENDED COMPLAINT INCLUDES FACTS SUFFICIENT TO MEET THEIR BURDEN UNDER RULE 12(b)(6).**

Defendants argue that Plaintiff's First Amended Complaint has not included facts sufficient to put Defendant on notice as to the conduct that forms the basis of his claims. However, the Defendants have chosen to completely disregard the above-referenced standard. Defendants are arguing to hold Plaintiffs' Complaint to a heightened standard, one of specific

fact pleading, and their interpretation and characterization of Plaintiff's Complaint is erroneous and subjective.

Plaintiff's Complaint provides seven paragraphs outlining the actions of the Defendant Officers that form the basis of Plaintiff's claims. (See Exhibit A, ¶¶ 10-16). In those paragraphs Plaintiff details that on January 29, 2007, Defendant Officer Haleas wrongfully seized and arrested Plaintiff. Plaintiff goes on to explain that, notwithstanding the fact that Plaintiff had not committed any criminal activity, Defendant Officer Haleas and other unknown officers arrested Plaintiff and charged him with criminal activity. Plaintiff alleges that the actions of the Defendant Officers caused him injury and violated his rights as guaranteed under the Fourth Amendment of the United States Constitution. These facts provide ample notice to Defendants of Plaintiff's claim and meet the requirements of notice pleading required by F.R.C.P. 12(b)(6).

Defendants' claim that the First Amended Complaint does not provide the precise location or timing of the arrest, list the exact number of officers present, or detail what happened between Plaintiff and the Defendant Officers is simply not a valid basis for seeking dismissal under Rule 12(b)(6). Rule 12 merely requires that a complaint provide "the bare minimum facts" to the Defendants so they may prepare an answer. *Higgs,* 286 F.3d at 439.

Defendants claim that although Plaintiff has provided the identity of the arresting Officer (Defendant Officer Haleas) and the date of the incident, Defendants are unable to even begin investigating Plaintiff's claims. Plaintiff patently disagrees. Defendants have access to Plaintiff's arrest records and the accompanying reports of Defendant Officer Haleas. If Defendant is claiming that no documents exist relative to this arrest, then the failure of the City of Chicago to sufficiently document and record the interactions their police officers have with

citizens only goes to provide additional support for Plaintiff's *Monell* claims (addressed further below).

Plaintiff has provided facts sufficient to put Defendants on notice as to the incident that forms the basis for his claims. Defendants have enough information to begin an investigation and prepare an answer, thus Plaintiff has met his pleading requirement. For this reason, Defendants Motion to Dismiss of Plaintiff's First Amended Complaint should be denied.

## II.   PLAINTIFF HAS ADEQUATELY PLEADED HIS MONELL CLAIM

Defendant City argues that Plaintiff has not sufficiently pled his *Monell* claim. However, it is clear that Defendants have disregarded the above-referenced standard and ignored the three-factor test that the Seventh Circuit applies in analyzing § 1983 municipal liability claims. Plaintiff must allege one of the following:

> (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000); *see also, Johnson v. City of Joliet,* 2006 WL 1793574, *4 (N.D. Ill. June 27, 2006). Furthermore, Plaintiff is not required to plead in great detail; he only "must plead some fact or facts tending to support [his] allegation that a municipal policy exists that could have caused [his] injury." *Strauss v. City of Chicago,* 760 F.2d 765, 769 (7th Cir. 1985).

The facts referenced *infra*, excerpted from Plaintiff's complaint, show that he has alleged facts far beyond what is required by the Federal Rules of Civil Procedure. Plaintiff alleges that well-settled City practices, namely a "code of silence" and a failure to investigate, monitor and/or discipline incidents of police misconduct, caused them to be falsely arrested and

maliciously prosecuted. Plaintiff's burden at this stage is simply to allege facts that would give the City notice of their municipal liability claim. *McCormick,* 230 F.3d at 326. He has done that and more with over 50 numbered paragraphs describing the "code of silence" and the custom and practice of failing to investigate, monitor and/or discipline incidents of police misconduct that exist. For example, paragraph 28 of Plaintiff's First Amended Complaint lists fifteen areas, including failure to discipline, investigate and train, in which the Defendant City of Chicago fosters a practice of covering-up and implicitly condoning acts of police misconduct within its police department. Plaintiff next describes several operations and departments, such as the Special Operations Section (SOS) and the Office of Professional Standards (OPS), in which there were no independent investigations of complaints and/or substantial discipline was rare when misconduct was found.

Defendants argue Plaintiff "fails to adequately define the 'custom, policy, or practice' that allegedly led to the violation of their constitutional rights [and] has instead filled their complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct brought against the Chicago Police Department." Mot., ¶ 12. The contrary is true: the allegations referred to by Defendant actually *bolster* and *allege in detail* Plaintiff's *Monell* claim. Furthermore, as the Supreme Court has held, "plaintiff is master of the complaint." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002). How the Plaintiff chooses to allege their claims is not subject to Defendants' critique as long as it meets the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Further, pleadings similar to Plaintiff's allegations against Defendant City of Chicago have been found sufficient under Rule 12(b)(6). In *Sledd*, the Seventh Circuit reversed the district court's dismissal under 12(b)(6) stating that the district court had "jumped the gun given

the detailed allegations Sledd included." *Sledd*, 102 F.3d at 288.  In that case, the plaintiff's complaint alleged, "the City and the [Chicago Police Department] maintained a code of silence; that disciplinary complaints almost never resulted in official censure; and that this practice hurt [the plaintiff] in particular, by making the officers believe their actions would never be scrutinized." *Id*. at 289.

Here, Plaintiff's claim against the City is alleged in a similar fashion.  In his complaint, Plaintiff cites to a code of silence between the City and the Defendant Officers, a lack of independent review of disciplinary complaints, statistics showing that less than one percent of complaints have resulted in officer discipline, and the injury that this code of silence and lack of discipline caused Plaintiff.  Complaint at ¶¶ 28-30, 41-50, 65-72.  The allegations in Plaintiff's Complaint are highly similar to the allegations in the *Sledd* complaint, which was upheld by the Seventh Circuit.  Accordingly, Plaintiff's complaint is sufficiently pled and the instant Motion to Dismiss should be denied.

Defendants argue that this is not an SOS case.  Mot., ¶ 20.  Defendants, however, misinterpret Plaintiff's allegations.  Plaintiff is not arguing that the officers involved in Plaintiff's arrest and prosecution were members of SOS; rather, Plaintiff alleges that allowing the SOS officers to remain on the street despite a pattern of misconduct complaints and criminal conduct has served to perpetuate the "code of silence" practice within the Chicago Police Department thus causing the Defendant Officers to believe that, like the SOS officers, there would be little or no consequences for their misconduct toward Plaintiff.  Complaint at ¶ 29-30.

The Defendants argue that Plaintiff's OPS allegations do not relate to this case.  Mot., at ¶ 21.  Defendants are again mischaracterizing Plaintiff's Complaint; Plaintiff is not claiming that OPS's involvement or lack thereof in Plaintiff's particular case caused the constitutional

violation, rather that the OPS structure itself shows that there is there is a lack of independent review and accountability of Chicago Police Officer misconduct which in turn fosters the aforementioned "code of silence" and condones future misconduct. See Complaint at ¶¶ 41-50. Indeed, the connection between OPS and Plaintiff's *Monell* claim is obvious because, as the court opined in dicta in *Mosby v. O'Connor,* "[h]ow better to safeguard the constitutional right to be free from unreasonable seizures than to provide an efficient and effective system for monitoring police misconduct?" *Mosby v. O'Connor,* No. 07 C 3148, p. 6 (N.D. Ill. October 15, 2007) (Guzman, J.) (Order attached hereto as Exhibit B).

     In similar fashion, the Defendants argue the supposed irrelevance of Plaintiff's references to the BrainMaker program. Plaintiff disagrees. BrainMaker is a software product which can be used as an assistive device to forecast which officers on the police force are potential perpetrators of misconduct and abuse. See Complaint at ¶¶ 81-89. The City abandoned all efforts to utilize this software, further demonstrating the unwillingness of the City of Chicago to legitimately police itself. See Complaint at ¶ 89. In addition, the Defendants argue that Plaintiff's reference to *Garcia v. City of Chicago*, 2003 WL 22175618 (N.D. Ill. 2003), is also inapposite because the case involved off-duty officers. It is clear that, again, the Defendants mischaracterize Plaintiff's complaint; Plaintiff's references *Garcia* to emphasize that the City of Chicago's police abuse investigations were and are incomplete, inconsistent, delayed and slanted in favor of officers, and a District Court Judge has upheld a jury verdict finding as such. See Complaint at ¶ 77-78.

     Throughout their motion, the Defendants rely heavily on a Fourth Circuit case, *Carter v. Morris,* in arguing that Plaintiff failed to show an actual affirmative causal link between the City's policy or custom and Plaintiff's injuries. See Motion at ¶¶ 9, 12-14, 18-19, 25. *Carter v.*

*Morris*, 164 F.3d 215, 221 (4th Cir.1999) (upholding district court's *summary judgment dismissal* of Section 1983 claim where plaintiff failed to offer evidence to support "affirmative causal link" between alleged custom or policy and injury).  *Carter*, however, is inapposite not only because it is case law from a different circuit but also because it does not speak to what a plaintiff must plead. Rather, it pertains to what a plaintiff must offer in the way of proof in order to survive summary judgment or to prevail at trial. See *Brown v. Mitchell*, 308 F.Supp.2d 682, n.12 (E.D.Va. 2004).  As illustrated above, a Rule 12(b)(6) motion should only be granted where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the allegations. Furthermore, the Supreme Court has ruled that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

As for the City's suggestion that Plaintiff wishes to establish a "roving commission" to root out municipal transgressions, Plaintiff does not hide that he is indeed hopeful that a judgment against the City will be a catalyst for change and will serve as a deterrent to future official misconduct; such goals have been held to be permissible when pursuing a *Monell* claim. As Magistrate Judge Schenkier has opined,

> a jury verdict that police misconduct stemmed from unconstitutional municipal policies, practices or customs could provide a greater incentive for change than the payment of a damages award that the City then could chalk up to aberrational conduct by a rogue officer . . .[A] plaintiff who succeeds in proving unconstitutional policies, practices or customs has achieved a significant victory 'not for himself alone but also as a private attorney general[.]

*Cadiz v. Kruger,* No. 06 C 5463, p. 18-19 (N.D. Ill. Nov. 29, 2007) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 577 (1986) (Memorandum Opinion and Order attached hereto as Exhibit C).

While the potential positive outcome of a *Monell* claim affecting change of a system-wide nature in a corrupt police department is compelling motivation for Plaintiff to allege the claim, at the end of the day, Plaintiff's Complaint merely needs to pass the muster of Rule 12(b)(6). Defendants are arguing to hold Plaintiff's complaint to a summary judgment standard and consistently misinterpret and mischaracterize Plaintiff's Complaint. Plaintiff's *Monell* claim has been pled with ample sufficiency and should not be dismissed.

### III.    PLAINTIFF HAS STANDING TO BRING HIS RICO CLAIM

Defendants argue that Plaintiff's RICO claim does not state a claim upon which relief can be granted. In particular, Defendants claim that Plaintiff lacks standing to bring a RICO claim, because Plaintiff has not asserted that he was "injured in his business or property." Motion ¶ 26. Plaintiff's Complaint alleges injury to his property that resulted from Defendants engagement in an ongoing illegal enterprise designed to increase Defendants' wealth at the expense of innocent citizens. Plaintiff has standing to bring a RICO claim and Defendants' Motion to Dismiss must be denied.

Defendants rely upon *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992) to support their contention that Plaintiff's property losses relative to the Defendants misconduct are not the sort of damages that are recoverable under a RICO claim. *Doe*'s facts are wildly different than the instant case and do not control.

In *Doe*, the plaintiff was suing her former attorney for pecuniary losses stemming from emotional distress. The defendant attorney had coerced the *Doe* into performing sexual acts in

lieu of paying him for legal services. *Doe*, 958 F.2d at 765. The court found that the plaintiff's claimed losses were unrecoverable because "Congress never contemplated that sexual services would be construed as property" within the RICO context, and that further, the defendant's misconduct was not the type of conduct RICO was designed to prevent. *Doe*, 958 F.2d at 770.

*Gamboa v. City of Chicago*, 2003 WL 21877643 (N.D.Ill. 2003) is more directly analogous to the instant case and specifically rejects the argument Defendants have raised here. The plaintiff in *Gamboa*, like the instant case, sued various Chicago police under a RICO claim. *Gamboa*, 2003 WL 21877643, *1. The *Gamboa* court limited the holding of *Doe*, finding that "[t]he *Doe* case does not stand for the proposition that attorney's fees are not recoverable in a RICO case, as defendant officers assert; rather, in that case the court found that certain of plaintiff's costs (which included attorney's fees) were merely derivatives of her emotional distress and not compensable." *Id*. at *3. The *Gamboa* court found that the plaintiff had adequate standing to raise a RICO violation because, as a direct result of the defendant officers' misconduct, plaintiff was caused to incur financial loss in the form of attorney's fees. *Id*. at 3-4.

Like the plaintiff in *Gamboa*, Plaintiff's losses were the direct result of the misconduct of the Defendant Officers. Further, the losses in both cases take the form of attorney's fees required to defendant against the officers' misconduct. Plaintiff has demonstrated that he has standing to bring a RICO claim and, consequently, Defendants' claim to the contrary must fail.

Defendants further rely on *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006) to sustain their 12(b)(6) Motion to Dismiss Plaintiff's RICO claim. Again, Defendants are holding Plaintiff to a heightened summary judgment standard while bringing a motion to dismiss. *Evans* was decided pursuant to an appeal from the grant of summary judgment. The standard for summary judgment is not relevant in a 12(b)(6) motion to dismiss, and as such, *Evans* is

inapplicable to the case at hand. Moreover, *Evans* involved a single plaintiff seeking damages solely related to attorney's fees. Here, Plaintiff, on behalf of an entire class, is claiming further damages. The stigma, fines, and possible license suspension or jail sentence that accompany a fine for driving while under the influence have caused Plaintiff and the other class members damages above and beyond attorney's fees. *Gamboa* provides ample support to establish that Plaintiff's RICO claim is proper, while *Evans* differs factually and applies a standard inapplicable to the matter before this Court. Since Plaintiff has standing to bring his RICO claim the instant Motion should be denied.

### IV.  ALTERNATIVELY, PLAINTIFF SHOULD BE ALLOWED TO AMEND HIS COMPLAINT

For all the reasons argued above, Plaintiff has sufficiently pled his claims to defeat Defendants' Motion to Dismiss. However, in the alternative, if this Court disagrees, Plaintiff request leave to amend his Complaint, pursuant to FRCP Rule 15(a), to do the following: (1) to further articulate, if necessary, the causal nexus between the customs and practices of the City and the constitutional violations of Plaintiff for the *Monell* claim, (2) to amend any other aspect of Plaintiffs' complaint deemed deficient by this Court. *See* Fed.R.Civ.P. 15(a) (leave to amend a pleading shall be "freely given when justice so requires."); *see also, U.S. v. Hougam*, 364 U.S. 310, 316-17 (1960).

**WHEREFORE**, for the forgoing reasons, Plaintiff prays that this Court deny Defendants' Motion to Dismiss.

        Respectfully Submitted.

        s/ Blake Horwitz_____
        Blake Horwitz

The Law Offices of Blake Horwitz, Esq.
Blake Horwitz, Esq.
Amanda Yarusso, Esq.
Tali Albukerk, Esq.
155 N. Michigan Ave, Suite 714
Chicago, IL  60601
(312) 616-4433
(312) 565-7173 (Fax)

Elliot Richardson & Associates, LLC
Elliot S. Richardson, Esq.
Sean M. Baker, Esq.
Rachelle M. Sorg, Esq.
Elliot Richardson & Associates, LLC
20 South Clark Street
Suite 500
Chicago, IL 60603
(312) 676-2100