# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHASE MOSBY, WOODIE DRUMMER, ANDRE MOSBY,<br><br>Plaintiffs,<br><br>v.<br><br>SGT. D. O'CONNOR #1930, SGT. M. NUNEZ #2056, OFFICER K. ARDITO #7020, OFFICER J. BROWN #14562, OFFICER J. MORIARTY #16633, OFFICER H. ADAMS #11084, OFFICER V. ANDERSON #11743, OFFICER F. RANDLE #6714, OFFICER V. ALONZO #7461, OFFICER M. HEGARTY #9924, OFFICER RAWA #10924, and the CITY OF CHICAGO,<br><br>Defendants. | No. 07 C 3148<br><br>Judge Guzman<br><br>Magistrate Judge Ashman |

## ORDER

Defendant seeks the entry of a protective order regarding certain material disclosed to opposing counsel during discovery. The order does not purport to control the status of any material which is deemed admissible at trial or otherwise filed with the court so as to be of record. (*Qualified HIPAA and Confidential Matter Protective Order* (Proposed Order) ¶ A6, *Motion for Entry of a Protective Order*, Ex. 1) The order does purport to restrict the use of disciplinary information, personnel files, disciplinary actions, histories, files generated by investigations of complaints of misconduct by Chicago police officers (generally referred to as

Page 1 of 9

"Complaint Register" (CR) files) and related information protected by the *Illinois Personnel Records Review Act,* 820 ILCS 40/0.01, and Section 7 of the *Illinois Freedom of Information Act,* 5 ILCS 140/1. 1 The proposed order forbids the use or disclosure of any such materials produced in this proceeding for any other purpose or in any other proceeding. Plaintiffs object to the proposed restriction on the use of information concerning disciplinary actions, CR files and related information.

Federal Rules of Civil Procedure 26(c) governs protective orders and permits parties, "for good cause shown" to seek protection against the disclosure of privileged information. To determine whether there is good cause as required by Rule 26(c), the Court must balance "the harm to the party seeking the protective order and the importance of disclosure to the public." *Doe v. Marsalis,* 202 F.R.D. 233, 237 (N.D. Ill. 2001). In that regard, it has been held that Rule 26(c), unlike the common law and first amendment, *see Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984), embodies a presumption of public access to pretrial discovery materials, including those that are not part of the judicial record. "It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public." *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775 (1st Cir. 1988). "As a general proposition, pretrial discovery must take place in the public unless compelling

---

1 "When a complaint is made against a police officer, the City prepares a file into which it places the various papers pertaining to the investigation and disposition of the complaint. Such a file is referred to as a complaint register file, or 'CR file.' In § 1983 cases filed against Chicago police officers, …. The relevance of the CRs would be that the prior incidents might be admissible against the individual defendants under Evidence Rule 404(b) and against the City on a *Monell* theory." *Acuna v. Rudzinski,* No. 00 C 5635, at 1 (N.D. Ill. Nov. 16, 2001), 2001 WL 1467529.

reasons exist for denying the public access to the proceedings." *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979); see *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (stating in dicta that "[m]ost cases endorse a presumption of public access to discovery materials").

The courts have, however, drawn a distinction between limitations on the dissemination of materials which never find their way to the courtroom, and restrictions placed on documents admitted in evidence or otherwise filed of record. *See In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1311 (7th Cir. 1984).

> [J]udicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.

*Seattle Times Co. v. Rhinehart*, 467 U.S. at 34. Accordingly, "*dispositive* documents in any litigation enter the public record notwithstanding any earlier agreement [governing discovery]." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002). More specifically, where "portions of discovery . . . are filed and form the basis of judicial action," such discovery "must eventually be released," but even in these situations "litigants and judges may protect properly confidential matters by using sealed appendices to briefs and opinions." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

Whether or not the presumption of public access attaches, or, in other words, regardless of whether the court analyzes the issue under the rubric of Rule 26(c)'s "good cause" or the common-law and First Amendment right to access, the ultimate test is similar. A court must balance the public interest in disclosure against the litigant's interest in confidentiality. *Compare Citizens First Nat'l Bank*, 178 F.3d at 945 (stating that the public's interest in open judicial proceedings "does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case"), *with Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986) (stating that "even when a right of access attaches, it is not absolute"), *and Grove Fresh Distribs. Inc v. Everfresh Juice Co.*, 24 F.3d 893 at 897 (7th Cir. 1994) (stating that the "presumption is rebuttable upon demonstration that suppression is essential to preserve higher values and is narrowly tailored to serve that interest" (citation omitted)), *and In re Cont'l Secs. Litig*, 732 F.2d 1302, 1313 (7th Cir.) (holding that once the presumption attaches, the court "must balance the public interest underlying that presumption against [the litigant's] interest in confidentiality").

As pointed out above, defendants assert privacy rights embodied in certain state statutes. Specifically, defendants assert the confidentiality provisions of the *Illinois Personnel Records Review Act*, 820 Ill. Comp. Stat. 40/0.01 *et seq.*, and Section 7 of the *Illinois Freedom of Information Act*, 5 Ill. Comp. Stat. 140/1, *et seq.* They contend that both of these acts prohibit public disclosure of CR files and related materials. Plaintiffs object to the proposed restriction on

the use of information concerning disciplinary actions, CR files and related information.

Although relevant, the provisions of these state statutes are not controlling in the case at bar. Under Rule 26(b)(1) parties may discover any matter *not privileged* which is relevant to the subject matter in the pending action. Rule 501 of the Federal Rules of Evidence provides that the federal common law of privilege shall apply in cases based upon a federal cause of action. Therefore, federal common law determines what is privileged in federal question cases. *See William T. Thompson, Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3rd Cir. 1982). It is therefore the federal common law of privilege that controls the court's determination in the case at bar.

This does not mean, however, that the law of the state may not be considered as one of the factors in making the fact intensive determination of whether or not the asserted privilege applies. *Mem. Hosp. for McHenry County v. Shadur*, 660 F.2d 1058 at 1061 (7th Cir. 1981). Where a state provides for a privilege, a strong policy of comity between state and federal sovereignties requires the federal courts to recognize the privilege if this can be done without significant violence to federal substantive and procedural policy. *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976). To do otherwise would be to subject the citizens of the jurisdiction to a double standard of confidentiality and privacy depending on which court hears a particular case. This result should be avoided if possible. *Lora v. Bd. of Ed.*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977). Within this framework the Court considers the statutory privacy interests

defendants assert in its balancing test.

On the other side of the scale, the public, of course, has a legitimate interest, if not a right, to monitor the conduct of its police officers and to know how misconduct is being investigated and corrected. *See Doe v. Marsalis,* 202 F.R.D. 233, 238 (N.D. Ill. 2001). Just as public access to the functioning of our courts ensures "quality, honesty and respect for our legal system," public access to the functioning of the Chicago Police Department's complaint investigation and review process will help ensure quality, honesty and respect for the police department. *Acuna v. Rudzinski,* 2001 WL 1467529, at 4 (quoting *In re Ill. Secs. Litg.* at 1308). How better to safeguard the constitutional right to be free from unreasonable seizures than to provide an efficient and effective system for monitoring police misconduct? To be effective and efficient such a system must be transparent. Investigation of alleged police misconduct cannot be done in secrecy. One of the major benefits of having an effective system of assuring proper conduct by law enforcement is to give the public a sense of confidence in its police force. Public confidence is, of course, an essential element in promoting public cooperation with law enforcement; and the public's cooperation is a powerful force in the fight against crime. The public interest is also served when police misconduct is effectively controlled because police misconduct often leads to the suppression of evidence. When probative evidence is rendered useless due to the misconduct of the law enforcement officers who gathered the evidence, public safety and security suffer. Furthermore, unchecked police misconduct inevitably leads to general public mistrust. Such mistrust may manifest itself in many ways, not only, as pointed out above, in a lack of public

cooperation or loss of evidence, but also in the actual prosecution of criminal cases. Police officers often are the key witnesses in the prosecution of a criminal case. The credibility of such police officer testimony, from the responding officer, to the investigating detective, to the evidence technician who processes the crime scene, is crucial to a successful prosecution. That credibility sustains damage whenever the public at large is given reason to doubt the integrity of its police force. A juror who is predisposed to mistrust the conduct of police officers on the street, will also be predisposed to mistrust those same police officers when they take the stand to testify. To the extent that transparency leads to a more effective self-policing process, the public has a great interest in such. If the system is a good one, the more the public knows about it the better. If the system is a bad one, then public knowledge of that fact is the first step towards correction.

Defendants argue that because CR files and related materials will often contain uncorroborated, mistaken and even intentionally false descriptions of alleged police misconduct, the effect of disclosing the contents of these files to the public will not be to further public confidence in its police department, but rather to unfairly undermine such public confidence and to unfairly malign individual officers. But such a result can be avoided if the nature of CR files and the information contained in them is made clear to the public. In addition, the public's ability to see the thorough and professional manner in which such allegations are investigated will tend to rebut erroneous conclusions from the baseless allegations that are inevitably going to find their way into any accusatory process. If, as is often argued, the large majority of actual incidents of

misconduct are caused by a relatively small number of police officers, then disclosure of this fact will also inure to the benefit of the Police Department and the great majority of law enforcement officers not involved in such conduct. Finally, to the extent that misconduct exists, public awareness will result in pressure to make what are often difficult and painful corrections. Finally, police officers are, after all is said and done, public servants. Their salaries and benefits, equipment and offices are paid for by the public and they are charged with doing public work. As such, they must expect their work to be subject to public, not private review.

To the extent that CR files or disciplinary histories contain identifying information of nonparty private citizens who may be complainants or witnesses, the court finds that the exemption from public disclosure of this information as is provided in subsection (v) of the Illinois FOIA, is appropriate. These persons are not public servants. They have not voluntarily committed to being engaged in the conduct which results in the creation of a CR file. The need to nurture cooperation from the public in such investigations, and the potential chilling effect that public exposure might have on the filing of complaints by persons aggrieved by police misconduct constitutes good cause to limit disclosure even when weighed against the public's interest in being informed. Initially at least, that information need not be disclosed. Should such identifying information become of great importance to the particular case, plaintiffs may petition the court for disclosure. *See Doe v. White*, No. 00 C 928, 2001 WL 649536, at 2 (N.D. Ill. June 8, 2001).

Defendant's motion for a protective order is, therefore, granted in part and denied in part

as follows: 1) defendant's motion to limit generally the use of CR files and/or other disciplinary history or information is denied; 2) personal identifying information such as, but not limited to, home address, Social Security numbers, family members, family histories, interfamily conflicts unrelated to the case at bar, and medical information may be redacted from CR files and personnel files prior to disclosure; 3) personal identifying information of all of nonparty civilian witnesses and/or complainants may be redacted subject to plaintiff's right to petition the Court for disclosure of the same upon a showing of particular need.

Dated: October 15, 2007

**SO ORDERED**         ENTER:

*[signature]*

RONALD A. GUZMÁN
**District Judge**