# EXHIBIT C



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

YVONNE CADIZ, as Mother and          )
Guardian of MICHAEL CADIZ, a minor,  )
                                     )
                 Plaintiff,          )        No. 06 C 5463
                                     )
vs.                                  )        Magistrate Judge Sidney I. Schenkier
                                     )
MICHAEL KRUGER, *et al.*,            )
                                     )
                 Defendants.         )

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of an encounter on May 20, 2006 between Michael Cadiz, who was

then was 12 years old, and officers of the Chicago Police Department who allegedly caught Michael

and a friend defacing a garage with markers. Plaintiff (suing as Michael's mother and guardian)

alleges that one or more of the defendant officers knocked Michael off his bike, severely beat and

verbally abused him and then attempted to conceal the evidence of that misconduct, and wrongfully

arrested him. Based on these allegations, plaintiff has asserted claims against three individual police

officers under 42 U.S.C. § 1983 for excessive force (Count I) and unlawful search and seizure

(Count II); a state law claim against the defendant City of Chicago seeking statutory indemnity for

any compensatory damages assessed against the police officers on the Section 1983 claims (Count

IV); and state law claims for battery, false arrest, and intentional infliction of emotional distress

against both the defendant police officers and the City (Counts V-VII).

The motion currently pending before the Court, however, does not directly involve any of

those claims, but instead centers on plaintiff's attempt to establish direct Section 1983 liability

against the City under the doctrine announced in *Monell v. Dep't of Social Services of the City of*

*New York*, 436 U.S. 658 (1978). In that case, the Supreme Court held that while a local governmental body cannot be subject to vicarious liability under Section 1983, direct liability may be established against a unit of local government under Section 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . ." *Monell*, 436 U.S. at 694. *See also Estate of Sims v. County of Bureau*, ___ F.3d ___, No. 01-2884, 2007 WL 3036752, * 3 (7th Cir. Oct. 19, 2007) (citations omitted) ("Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers'").

In this case, plaintiff asserts a direct Section 1983 claim against the City under *Monell*, alleging that the defendant officers' unlawful search and seizure and use of excessive force were caused, in part, by various customs, policies and practices of the City (Count III). The City has filed a motion to bifurcate the *Monell* claim from the rest of the case, and to stay discovery and trial of the *Monell* claim (doc. # 78). By this motion, the City seeks to put completely on hold the discovery and adjudication of the *Monell* claim until resolution of the Section 1983 claims against the individual officers (Mot., ¶ 2).

In fact, the City's motion seeks far more than this. The City's goal in filing this motion is to prevent any merits adjudication of the *Monell* claim, whatever the outcome of the Section 1983 claims against the individual defendants. The City argues that if plaintiff does not establish Section 1983 liability against the officers, then there can be no *Monell* claim (Mot., ¶ 5), a proposition that is well settled. *See Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions

2

of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). The City further suggests that even if plaintiff does establish Section 1983 liability against the officers, trial of the *Monell* claim will be unnecessary (and thus should not proceed) because it can provide plaintiff with no additional compensatory damages (*Id.*, ¶ 10).[1]

Plaintiff opposes the motion, and has filed a brief setting forth her position (doc. # 80). After considering the arguments and authorities offered by the parties, the Court denies the City's motion. We advised the parties of this ruling in open court on November 28, 2007. In this opinion, we explain more fully the reasons for our decision.[2]

**I.**

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will

---

[1] The City somewhat clouds its intentions by elsewhere in the motion stating that bifurcation will not "foreclos[e] unnecessarily the opportunity [for plaintiff] to establish the City's liability on the *Monell* claims" (Mot., ¶ 8), thus implying that the *Monell* claim would proceed if plaintiff first established liability against one or more officers on a Section 1983 claim. However, during a proceeding in open court on November 13, 2007, the City was quite direct about its intentions. At that time, the City made clear that the purpose of its motion was to avoid any litigation of the *Monell* claim even if plaintiff established Section 1983 liability against the officers:

THE COURT: . . . . Now, what you're saying is that even if [plaintiff] demonstrated the underlying individual claim that you should never try the Monell claim.

MS. EKL: Correct.

THE COURT: Isn't that the sense of your motion?

MS. EKL: Right.

THE COURT: So that's really not a bifurcation, is it? To bifurcate is a matter of sequencing.

\* \* \* \*

MS. EKL: . . . . Essentially, we are asking to dismiss it and that's really what we're asking, you're correct.

(11/13/07 Tr. at 8, 9).

[2] On March 26, 2007, the case was assigned to this Court for all proceedings, including the entry of final judgment, pursuant to the consent of the parties as authorized by 28 U.S.C. § 636(c) (doc. ## 45, 49).

3

be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or of any number of claims . . . ." Fed. R. Civ. P. 42(b).  Whether to bifurcate the discovery or trial of various claims is a decision committed to the trial court's discretion. *McLaughlin v. State Farm Mut. Auto Inc. Co.*, 30 F.3d 861, 870 (7th Cir. 1994).

The City's motion here is not novel, but rather is one that the City has made (under various labels) in a number of cases within this district during the past several years.  As each side has pointed out (Mot., ¶ 5; Pl.'s Resp. at 10 and Ex. 2), there is no shortage of authority within this district both granting and denying motions by the City to bifurcate *Monell* claims.  *See also Elrod v. City of Chicago*, 06 C 2505 & 07 C 203, 2007 WL 3241352, * 1 and nn.2-3 (N.D. Ill. Nov. 1, 2007) (collecting cases).  While (as we discuss below) some of these decisions reflect certain philosophical views about the value of *Monell* claims, these decisions in the main reflect a case-specific assessment of the benefits and detriments of bifurcation.  That much is evident from the fact that the same judges have both granted and denied requests by the City of Chicago to bifurcate the discovery and/or trial of *Monell* claims from other claims.  *Compare Booker v. City of Chicago*, No. 04 C 6371, 2006 WL 4071596  (N.D. Ill. Dec, 15, 2006) (Keys, M.J., recommending grant of bifurcation) *and Bond v. Chicago Police Officers, et al.*, No. 04 C 2617, 2006 WL 695447 (N.D. Ill. Mar. 10, 2006) (Keys, M.J. denying bifurcation); *compare Wawryniuk v. City of Chicago*, No. 03 C 4291 (N.D. Ill. Apr. 30, 2004) (minute order, doc. # 34) (St. Eve, D.J., granting bifurcation) *and Kasper v. City of Chicago*, No. 04 C 1041 (N.D. Ill. Sept. 2, 2004) (minute order, doc. # 23) (St. Eve, D.J., denying bifurcation).

In this case, the City argues that placing the discovery and trial of the *Monell* claim on hold will advance the interests of all the parties and of the judicial system because: (1) the City will be

4

protected from "potentially unnecessary litigation expenses"; (2) the individual defendants will be protected from "undue prejudice"; (3) the plaintiff's interest in "expediting trial of his constitutional claims" against the individual defendants will be protected, "without foreclosing unnecessarily the opportunity to establish the City's liability on the *Monell* claims"; and (4) the Court's interest will be served by promoting judicial economy (Mot., ¶¶ 8-9). We examine each of these arguments in turn.

### A.

The City argues that bifurcation is necessary to protect it from the substantial cost of conducting *Monell* discovery, which under *Heller* will prove unnecessary if plaintiff cannot establish a Section 1983 claim against one or more of the defendant officers. In aid of this argument, the City points to the broad scope of plaintiff's *Monell* claim (Mot., ¶ 6), and predicts that discovery of that claim "will be voluminous and will cause discovery to stretch well into next year" (*Id.*, ¶ 7). For her part, plaintiff states that the City exaggerates the scope of the *Monell* discovery, that there is substantial overlap between discovery of the individual and *Monell* claims, and that pursuing *Monell* discovery in tandem with individual discovery will not greatly delay the progress of the case (Pl.'s Resp. at 6-10). On balance, we conclude that plaintiff has the better of this argument.

To be sure, the City is correct that *Monell* discovery in this case will not perfectly overlap with discovery of the individual claims. That is inevitable with any *Monell* claim: while an individual Section 1983 claim focuses on the conduct of the individual officers, a *Monell* claim looks more broadly to the customs, policies or practices that are alleged to contribute to the individual misconduct. *See Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000). As a result, the presence of a *Monell* claim typically will expand the scope – and thus the cost – of discovery

5

beyond that which would be relevant in a case involving only individual Section 1983 claims. Thus, bifurcation does carry the possible benefit of avoiding those costs in the event that plaintiff ultimately is unable to establish liability on a Section 1983 claim against one or more of the officer defendants.

But, if that fact alone were sufficient to require bifurcation, then bifurcation would be automatic and not a matter of discretion (which it is not), and courts always would bifurcate *Monell* claims (but they do not do so). In this case, we are not persuaded that the benefits of deferring, and potentially avoiding, the added scope and cost of *Monell* discovery are sufficient to outweigh the costs that would be incurred through bifurcation.

The City's assertion of the amount of document discovery that would be added by the *Monell* claims is general at best. The City says it would have to produce "thousands of documents" (Mot., ¶ 7), but that sort of non-specific assertion of burden is routinely rejected as a basis to deny or limit discovery under Fed. R. Civ. P. 26(b)(2)(C)(iii). *See, e.g., In re Aircrash Disaster Near Roselawn, Ind., Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997). Such a vague assertion fares no better when a party resorts to it in support of bifurcating a *Monell* claim. To the extent that plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the Court can and will tailor them as necessary, as other courts have done. *See, e.g., Bond*, 2006 WL 695447.

The City also states that *Monell* discovery will require it to defend against expert witnesses, to conduct discovery into other claims of misconduct not involving the individual defendants, and to produce policy witnesses for deposition (Mot., ¶ 7). We have no doubt that pursuing the *Monell* claim will increase the scope of discovery, a point that plaintiff does not dispute (Pl.'s Resp. at 5). But, we are not persuaded that the burden imposed by *Monell* discovery in this case would be as

6

overwhelming as the City claims.

At least one of the two expert witnesses identified by plaintiff on the *Monell* claim is well-known to the City, as he apparently has rendered opinions in two other cases involving *Monell* claims against the City (*Id.*, ¶ 7 n.3). We would be surprised if the City has not already, in one or both of the other cases, conducted discovery (formal or informal) into the basis for the expert opinion. Moreover, the City does not disclose whether it has deposed this expert before; if so, that would lessen the burden of the City's efforts to do so here.

As for the need to produce policy witnesses for deposition here, the parties have identified 12-13 witnesses whom plaintiff has disclosed as having information to the *Monell* claim (Mot., Ex. D (Third Am. Rule 26 Discl.); *see also* 11/13/07 Tr. at 6). But, in our judgment, this additional *Monell* discovery would not transform an otherwise small case into a large one. Plaintiff here asserts five individual causes of action (two under Section 1983 and three under Illinois law) against three officers. Discovery in this case is proceeding simultaneously with discovery in a parallel suit against the same officers who are defendants here, which has been brought by a teenager who was with Michael Cadiz when the alleged events occurred, and who also allegedly was beaten. *Cardenas v. Ferraro*, 07 C 475 (N. D. Ill.). There likely will be substantial discovery into other acts by one or more of the defendant officers (*see* Pl.'s Resp., Ex. 1), to attempt to develop evidence that may be admissible under Fed. R. Evid. 404(b). Indeed, plaintiff's Rule 26(a)(1) disclosure identifies nearly 100 potential witnesses, including 18 doctors from seven different medical facilities.

Viewed against this backdrop, we are not persuaded that the 12-13 witnesses who would speak to the *Monell* claim dramatically expands the scope of the case from what it otherwise would be. That is particularly so because only a few of those witnesses have been identified as relevant

solely to the *Monell* claim. The vast majority of these 12-13 witnesses have been identified as relevant to both the *Monell* and the individual claims. For those witnesses who would speak to both claims, bifurcation would lead to the possibility of requiring them to sit for multiple depositions, which likely would increase the cost of the depositions to the parties and which surely would be less convenient for the witnesses.

That leads us to the observation that a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date. In a case where *Monell* discovery would overwhelm an otherwise small case, it might be prudent to indulge that assumption because, if the assumption proved correct, the benefits of deferring that discovery would be substantial. But, this is not such a case. Discovery in this case will be substantial with or without discovery into the *Monell* claim. And, if the *Monell* claim is ultimately addressed on the merits, the City's proposal to defer discovery and trial of the *Monell* claim until after the individual claims are decided would create additional costs and inefficiencies (which we discuss below) without achieving any offsetting benefit.

Thus, we read the City's argument to be that the benefits of deferring *Monell* discovery would not be speculative, because the *Monell* claim never will be addressed on the merits.[3] Accepting that proposition would require that we make one of two other assumptions. We could assume that plaintiff will fail to establish a Section 1983 claim against one or more officer defendants. The City's motion does not speak at all to the merits of the individual Section 1983 claim or explain why we should predict the failure of plaintiff's individual claims, and thus we have no reason to conclude

---

3 The City has acknowledged that its request for bifurcation was not "on the basis that discovery has shown that there is no Monell claim to be had" (11/13/07 Tr. at 9).

that plaintiff's individual Section 1983 claims will fail.[4] Failing that assumption, we would have to

assume that even if plaintiff succeeds on the his individual Section 1983 claims, the *Monell* claim

will never be allowed to proceed because it can add no compensatory relief to that victory. As we

explain below, that is not an assumption we are willing to make.

To summarize, we are not persuaded that, given the overall scope of the case, the burden and

cost of *Monell* discovery is as great as the City urges; or that the benefits to be achieved by deferring

*Monell* discovery are as certain as the City suggests; or that, on the facts of this case, those benefits

would significantly outweigh the inefficiencies that would result from pursuing phased discovery.

We therefore do not find that the City's understandable desire to defer, and potentially avoid, the cost

of *Monell* discovery weighs heavily in favor of the bifurcation that the City seeks here.[5]

**B.**

The City argues that bifurcation would protect the individual defendants from undue

prejudice that would result from "broader and extraneous evidence regarding the City's customs,

policies, and practices for, among other things, addressing police officer misconduct" (Mot., ¶ 8).

This argument focuses on potential trial prejudice, and not on any prejudice to the officer defendants

from pursuing *Monell* discovery. And with good reason: we see no prejudice to the defendant

---

4 During proceedings on November 28, 2007, the parties indicated that while the City may seek summary judgment on plaintiff's search and seizure claim, it does not plan to do so on the excessive force claim against the individual officers. Thus, we do not have a situation where discovery has shown that the individual Section 1983 claims appear to be doomed, thus rendering it unlikely that plaintiff could establish a necessary element for the *Monell* claim.

5 That conclusion is not an endorsement of the scope of *Monell* discovery that plaintiff seeks. The City attached to its motion several discovery requests issued by plaintiff that include requests for certain *Monell* discovery (Mot., Exs. A-C), but did not identify any particular requests that it claims are irrelevant to the *Monell* claims or that it claims would impose undue burden and cost under a Rule 26(b)(2)(C)(iii) analysis. Our review of the discovery requests suggests that there is room to narrow certain of them. But, before passing on that question, we will require the parties to resort to the meet and confer process under Local Rule 37.2 to see if they are able to reach agreements on the scope of the requests.

officers were *Monell* discovery to proceed simultaneously with discovery on the individual claims.

As for the specter of unfair trial prejudice, we note that "our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others – even in criminal cases, where a person's liberty is at stake." *Medina v. City of Chicago,* 100 F. Supp.2d 893, 897 (N.D. Ill. 2000). The fact that a unitary trial would expose jurors to evidence relevant to the *Monell* claim and not to the claims against the individual officers does not automatically mean that bifurcation is in order. *See Elrod,* 2007 WL 3241352, * 7 ("Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings in limine, and limiting instructions").

There are circumstances in which bifurcation of the trial of individual and *Monell* claims is appropriate. But, at this stage, we cannot tell if this is such a case. *Monell* discovery has not yet been fully produced. Thus, "neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the *Monell* claim or just how prejudicial that evidence might actually be to the officers." *Medina,* 100 F. Supp.2d at 897. Without that information, the Court cannot evaluate the extent of prejudice that might be created by a unitary trial, or the effectiveness of measures short of bifurcation, or whether the threat of unfair prejudice outweighs the inefficiencies of proceeding in two trials (which, as we discuss below, would be substantial under the City's bifurcation proposal).

For these reasons, we conclude that the claim of unfair prejudice to the individual defendants does not weigh in favor of the City's motion for bifurcation.

## C.

We next consider the City's argument that bifurcation will promote plaintiff's interest in

10

"expediting trial of his constitutional claims" against the individual defendants "without foreclosing unnecessarily the opportunity to establish the City's liability on the *Monell* claims" (Motion, ¶ 8). Plaintiff's opposition to the bifurcation motion makes plain that she disagrees with the City's assessment of what is in her best interest. And, we confess to some skepticism whenever one party to a lawsuit opines about what judicial ruling would be in the opposing party's best interest.

That said, we are not persuaded that bifurcation will expedite the trial of the case. As of now, no trial date has been set. Fact discovery on the individual claims has not yet been completed, and expert discovery will follow after that. Moreover, during proceedings in Court on November 28, 2007, the parties indicated that the City may seek summary judgment on some (but not all) of plaintiff's claims. In these circumstances, we consider it unlikely that proceeding with *Monell* discovery along with other discovery will materially delay the trial of the matter.

In any event, a plaintiff has the right to select the claims she wishes to pursue, so long as those claims state legally viable causes of action and raise live fact issues for trial. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002) ("plaintiff is master of the complaint"). Plaintiff had the choice of pleading only individual claims, or to additionally plead a *Monell* claim. Plaintiff opted for the latter course, thus making a choice that many plaintiffs eschew. Many (indeed, in our observation, most) plaintiffs plead excessive force or other claims of alleged police misconduct without adding *Monell* claims. That is no doubt because litigating a *Monell* claim imposes burdens on a plaintiff as well as on the City. By being prepared to litigate the *Monell* claim vigorously (including by expending the resources to retain experts on the *Monell* claim), plaintiff has signaled that she believes the *Monell* claim is important to her case. If some delay in the commencement of trial were to result from the presence of a *Monell* claim, that is a

11

detriment that plaintiff apparently is prepared to endure in order to have the chance to prove her *Monell* claim. Thus, while in some cases there may be good and compelling reasons for bifurcating *Monell* and *non-Monell* claims, protecting the interests of a plaintiff who wishes to simultaneously pursue both is not one of them.

**D.**

The City also argues that bifurcation will advance the Court's interest by promoting judicial economy (Mot., ¶ 9). In particular, the City contends that bifurcation will spare the Court the need to intervene in disputes about *Monell* discovery; will eliminate the need for "the City's inevitable summary judgment motion" on the *Monell* claims; and will eliminate the need to preside over a trial made "lengthy and factually complex" by the presence of *Monell* and non-*Monell* claims (*Id.*). We find these arguments unpersuasive.

Deferring discovery of the *Monell* claim is unlikely to eliminate discovery disputes. Rather, in the short term, bifurcation more likely will shift the locus of discovery disputes from the appropriate scope of *Monell* discovery to whether discovery sought by plaintiff is permissible discovery into the individual claims or impermissible *Monell* discovery. Moreover, we are bemused that even before *Monell* discovery has occurred, the City can say that a summary judgment motion directed to the *Monell* claim would be "inevitable." The City has made clear that its current motion to bifurcate is not based on discovery showing that plaintiff has no triable *Monell* claim (11/13/07 Tr. at 9).

A stay of *Monell* discovery will only defer – and not eliminate – disputes about *Monell* discovery and a summary judgment motion if we later authorize plaintiff to move forward on the *Monell* claim. The bifurcation the City seeks can be sure to eliminate *Monell* discovery disputes and

12

a summary judgment motion on the *Monell* claim only if bifurcating results in the *Monell* claim being sidestepped without the Court or a jury ever addressing it on the merits. As we discussed earlier and will address further below, we are not willing to assume that will occur.

Finally, for the reasons we have set forth above, we are not in a position at this time to decide whether bifurcation at trial of the *Monell* and non-*Monell* claims would be efficient. For example, we do not know how much trial time the *Monell* claim would add to the trial of the case; or how that compares to the amount of time it would take to try the individual claims alone; or whether a unitary trial would take materially longer to complete than would a bifurcated trial. However, we can say that the particular brand of bifurcation proposed by the City would lead to substantial inefficiency if the *Monell* claim ultimately were tried.

The City urges that all proceedings on the *Monell* claim be stayed until after resolution of the Section 1983 claims against the individual defendants. Under the City's proposal, the *Monell* claim would not be ready for trial (if it survived the summary judgment motion that the City views as inevitable) at the time the individual claims go to trial. As a result, if plaintiff were to prevail on one or more of those claims at trial, then the trial of the *Monell* claim could not commence before the same jury. Rather, we would have to restart the discovery process; subject certain witnesses who already were deposed on the individual claims to an additional deposition on the *Monell* claim; go through summary judgment on the *Monell* claim; and then, if the *Monell* claim goes to trial, empanel an entirely new jury to hear it. The second jury will not have heard the underlying evidence concerning the individual claims. We envision many disputes about how much evidence from the first trial may be rehashed before the new jury, with the result that there likely will be at least some repetition of evidence that would have been unnecessary – even with a bifurcated trial – if both

13

phases had occurred before the same jury.

None of this would advance the goals of efficiency and judicial economy. Thus, on the record before the Court at this time, we conclude that these considerations do not weigh in favor of the City's bifurcation proposal.

## II.

Finally, we turn to the proposition that lies at the heart of the City's motion, which we have identified but not yet fully addressed: the proposition that plaintiff's *Monell* claim should never be addressed on the merits, even if plaintiff establishes her Section 1983 claims against the individual officers. We have no doubt that this is the true goal of the City's motion, as the City admitted before even filing the motion (11/13/07 Tr. at 8-9).

The City states that it has a statutory and contractual obligation to indemnify the defendant officers for any judgment against them, because there is no dispute that they were acting within the scope of their employment during their encounter with Michael Cadiz (Mot., ¶ 10). The statutory obligation arises from 745 ILCS 10/9-102, which authorizes a municipality to pay tort judgments of compensatory damages, attorneys' fees and costs against its public officials for acts within the scope of their employment. *E.g., Kolar v. Sangamon County of State of Ill.*, 756 F.2d 564, 566 (7th Cir. 1985) (a Section 1983 judgment against a governmental employee acting within the scope of employment is a "tort" judgment to which Section 10/9-102 applies).[6] The City does not identify the source of its contractual obligation to indemnify, but we presume it is based on the collective

---

6 The statutory obligation to indemnify does not extend to any punitive damages awards that might issue against the defendant officers if plaintiff succeeds on her Section 1983 claims against them. However, the *Monell* claim does not afford plaintiff the possibility of obtaining punitive damages on a direct claim against the City, since municipalities cannot be liable for punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271-72 (1981).

14

bargaining agreement. The City argues that in light of its obligation to pay a judgment against the officer defendants under Section 1983, proceeding thereafter on a *Monell* claim would be pointless because plaintiff cannot recover any additional compensatory damages even if she prevailed against the City on that claim. *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985).[7]

That is where the City's analysis ends. The City does not say that its obligation to pay a judgment against the officer defendants renders the *Monell* claim moot, thereby eliminating any case or controversy. Nor does the City argue that having achieved a monetary award on the individual Section 1983 claims, plaintiff has no further legal interest in the *Monell* claim and thus lacks standing to pursue it. And, indeed, we do not believe such an argument would have merit.

While success in establishing a constitutional claim against the officers is essential to establishing a *Monell* claim, the Supreme Court has made clear that this alone is not enough to prove a *Monell* claim. A municipality's liability under *Monell* is not merely derivative of the liability of its employees, but rather stems from the municipality's maintenance of policies, practices or customs that contribute to the unconstitutional conduct of its employees. *Monell*, 436 U.S. at 695. A *Monell* claim thus seeks not merely to vindicate the right of a plaintiff to be free from unconstitutional conduct by municipal employees, but rather to vindicate the independent right of a plaintiff to be free

---

7 In its motion, the City does not expressly offer a stipulation to pay damages, as the City has done in other cases. *See, e.g., Elrod*, 2007 WL 3241352, * 1; *Parker v. Banner*, 479 F. Supp.2d 827, 829 (N.D. 2007). Some courts have noted that in the absence of a formal stipulation, there is no guarantee that a municipality will agree that it is obligated to indemnify. *Parker*, 479 F. Supp.2d at 829 n.3; *Medina*, 100 F. Supp.2d at 896. In this case, the City has admitted that the defendant officers acted within the scope of employment, both in its motion (Mot., ¶ 10) and in its answer to the complaint (doc. # 55: Ans. ¶ 4). The City's defense to the claim for indemnification in Count IV is based solely on a denial that the individual officers committed misconduct, and not on a claim that they acted outside the scope of employment or under color of law (doc. # 55: Ans. Count IV ¶ 19). Thus, our denial of the City's motion is not based on its failure to offer a formal stipulation here.

of municipal policies, practices or customs that foster such conduct.   When (as here) a plaintiff claims the violation of a constitutional right as a result of a municipality's policies, practices or customs, that claim creates a separate case or controversy from the claims against the individual officers that the plaintiff has standing to pursue.

That separate constitutional claim is not legally extinguished merely because the plaintiff obtains full economic recovery through the claim against the individual officers. "Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; . . ." *Id.* That principle applies here.  A plaintiff who succeeds on a *Monell* claim may not recover compensatory damages in excess of those awarded on the individual Section 1983 claims, *Spanish Action Committee*, 766 F.2d at 321, but we see no bar to the plaintiff recovering nominal damages ($1.00) since no additional compensatory damages cannot be proven. "The mandate of 'case or controversy' only requires that something concrete be at stake – a dollar will do." *Parker v. Banner*, 479 F. Supp.2d 827, 834 (N.D. Ill. 2007) (in granting bifurcation, held that if a plaintiff prevailed on individual Section 1983 claims, he then could decide whether it was worth pursuing the *Monell* claim against the City of Chicago, explaining that "[i]f he is entitled to try for additional nominal damages, then he clearly has a right to pursue them").

Unable to argue that plaintiff's *Monell* claim would be legally mooted out by the City's payment of a judgment against the officer defendants, the City's argument boils down to one of expedience: that neither the City nor the judicial system should have to spend the time or resources

16

litigating *Monell* claims that have so little economic value. Implicit in that argument is the proposition that there are no non-economic benefits to *Monell* claims that should weigh into the equation. The case law reflects disagreement about the validity of that proposition.

Some courts have pointed out that successful *Monell* actions may have the benefit of deterring future official misconduct, which is "a proper object of our system of tort liability." *Medina*, 100 F. Supp.2d at 896. "A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and the citizenry to the issue." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2d Cir. 1999). As a result, a finding of liability on the part of individual officers "does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality." *Id.*

A recent decision out of this district has rejected this deterrence rationale. In *Parker*, the court expressed doubt that the *Amato* court "would have contended that an award of $1.00 would alert any city or its citizenry to the issue of police misconduct." *Parker*, 479 F. Supp.2d at 830. Bringing the matter closer to home, the *Parker* court stated that the policy claims against the City of Chicago in that case, which involved alleged police misconduct, "are legitimate matters of public concern, over which there is already public debate. I do not think Plaintiff argues that *Monell* discovery is necessary in bringing claims of police abuse to the public consciousness." *Id.* at 833-34. The *Parker* court reasoned that payment by the City of Chicago of a damages award against the officer defendants in that case "is a good reason for [the City] to change policies that are unconstitutional," thus suggesting that a judicial finding that the City maintained unconstitutional

17

policies, practices or customs would not create any further incentive for change. *Id.* at 834.[8]

We decline to speculate as to what effect, if any, a finding that the City maintained unconstitutional policies, practices or customs would have on City policymakers. We understand the point of view, expressed in *Parker*, that payment of large awards on Section 1983 judgments against individual officers should provide ample motivation to identify and change any policies, practices or customs that may contribute to unconstitutional conduct and damage awards (or settlements) that create a strain on City coffers. On the other hand, we also understand how one might reasonably conclude, as did the *Amato* court, that a jury verdict that police misconduct stemmed from unconstitutional municipal policies, practices or customs could provide a greater incentive for change than the payment of a damages award that the City then could chalk up to aberrational conduct by a rogue officer.

We have no evidence one way or the other about the "incentive" value of payment of money damages as opposed to findings of *Monell* liability in leading to changes in any unconstitutional municipal policies. It is difficult to envision the real-life laboratory setting in which that question could be studied and answered in any reliable way. To the extent that *Monell* claims might have a salutary effect in changing municipal policies that are unconstitutional, the City's request for bifurcation and ultimate extinguishment of *Monell* claims would render that possible benefit a dead letter. Accepting the City's request for bifurcation would ignore the fact that a plaintiff who succeeds in proving unconstitutional policies, practices or customs has achieved a significant victory

---

8 The *Parker* court further stated that "[i]n the absence of claims for equitable relief, and in addition to damages, Plaintiff wants a piece of paper saying that the City acts unconstitutionally. I do not know exactly why he wants that paper, but securing a verdict or opinion for the sole purpose of having those words does not create a case or controversy within the meaning of Article III of the Constitution." 479 F. Supp.2d at 834. For the reasons set forth above, we disagree with this comment. Indeed, we note that the *Parker* court further observed that the possibility of a nominal damage award of $1.00 would satisfy the case or controversy requirement. *Id.*

"not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance . . ." *City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986). On the other hand, there also may be benefits that accrue to the City from defeating a *Monell* claim, and thus vindicating the constitutionality of its polices, practices and customs.

If accepted, the City's bifurcation strategy would allow it to avoid the merits of virtually any *Monell* claim alleging police misconduct.[9] One may argue that this is not significantly different than the City avoiding a *Monell* claim by settling the case. However, we see a major difference. A settlement is a mutual agreement through which a plaintiff accepts a sum of money to forego litigating the *Monell* claim, but also to avoid the risk of losing that claim after expending substantial resources in the effort to prove it. In some cases. there may be a serious question about scope of employment (unlike here) and thus about the City's obligation to indemnify. That, in turn, could create a serious question about the collectability of any judgment and fee award that a plaintiff may obtain. In that circumstance, a plaintiff may be willing to agree to drop a *Monell* claim in exchange for a stipulation by the City to pay a judgment against the officer defendants, trading the possibility of succeeding on a *Monell* claim (and the risk of losing that claim after spending substantial time and

---

9 We are mindful that the *Parker* court commented that some plaintiffs may seek not only monetary damages on a *Monell* claim, but also may seek injunctive relief against specific police practices. *Parker*, 479 F. Supp.2d at 833 n.9. In that event, the City could not avoid adjudication of a *Monell* claim on the merits, because the plaintiffs would have the possibility of equitable relief against the City that could not be obtained through a judgment against officer defendants. However, in the typical excessive force case that would give rise to an accompanying *Monell* claim, a plaintiff would lack standing to seek prospective injunctive relief for a past event that (as to that plaintiff) has no foreseeable likelihood of recurring. *See City of Los Angeles v. Lyon*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction [against the use of choke holds] than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional").

19

money on it) for the certainty of collectability if the plaintiff succeeds on the individual claims.[10]

By contrast, the City proposal would foist upon an unwilling plaintiff the elimination of her *Monell* claim. We do not believe that the City should be allowed to deprive a plaintiff of a merits determination of a *Monell* claim by the expedient of agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway.[11]

## CONCLUSION

For the foregoing reasons, we deny defendant's motion to bifurcate Section 1983 claims and stay discovery and trial on those claims (doc. # 78). In so doing, we express no view as to the merits of plaintiff's *Monell* claim, and do not rule on the scope of the *Monell* discovery that plaintiff may obtain. We simply hold that: (1) plaintiff has a right to pursue his *Monell* claim notwithstanding the City's willingness to pay any judgment against the officers on the individual Section 1983

---

10 Some courts have expressed the concern that *Monell* claims "unduly inflate the settlement value of suits" in simple excessive force cases that have minimal evidence of actual damages. *Choate v. County of Orange*, 103 Cal.Rptr.2d 339, 351-53 (Cal. App. 2000) (quoted in *Parker*, 479 F. Supp.2d at 831 n.5). We do not find that concern persuasive in this case, which presents individual claims which could lead to a substantial damage award if plaintiff were to prevail. Moreover, Rule 42(b) provides for bifurcation as a tool to be used to promote convenience, expedition and economy and to avoid prejudice, not as a tool to be used by courts to affect the settlement value of a case.

11 In some cases, bifurcation has been denied on the reasoning that an agreement by the City to pay a damages award would provide a plaintiff no comfort if the officer defendants were to avoid liability on the basis of qualified immunity. In that scenario, the plaintiff would be able to recover damages against the City on the *Monell* claim that were unavailable against the officers on the individual claim. *See Medina*, 100 F. Supp.2d at 896. Here, the officer defendants have asserted qualified immunity as an affirmative defense. However, generally speaking, "the likelihood of a defendant prevailing on that defense in the context of an excessive force claim has not been a persuasive argument against bifurcation." *Elrod*, 2007 WL 3241352, * 5. This case is no exception. If plaintiff succeeds in proving the alleged conduct that gives rise to the excessive force claim, it is difficult to envision how that conduct would not be deemed to have violated a clearly established right. *See Wilkie v. Robbins*, ___ U.S. ___, 127 S. Ct. 2588, 2617 (2007). Thus, in denying the City's bifurcation motion, we have not relied on the officers' assertion of qualified immunity.

claims, and (2) the City has not demonstrated that the bifurcation it seeks is warranted on the facts

of this case.  Upon a more complete record, we later can revisit the question of whether bifurcation

of the trial of the individual and *Monell* claims (in a proceeding before the same jury) is appropriate.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: November 29, 2007**

21