**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDUARDO ALMARAZ,              ) | |
|                        ) | |
|          Plaintiff,     ) | |
|                        ) | |
|         v.              ) | No. 07 C 6134 |
|                        ) | |
| OFFICER HALEAS, TERRY HILLARD,   ) | Judge William Hart |
| LORI LIGHTFOOT, TISA MORRIS,     ) | |
| PHILLIP CLINE, UNKNOWN CHICAGO   ) | Magistrate Judge Susan Cox |
| POLICE OFFICERS, MAYOR RICHARD   ) | |
| DALEY, and the CITY OF CHICAGO,    ) | |
|                        ) | |
|        Defendants.     ) | |

## REPLY OF DEFENDANTS HALEAS AND CITY OF CHICAGO IN SUPPORT OF MOTION TO RECONSIDER

Defendants, Officer John Haleas ("Haleas") and City of Chicago ("City"), by their attorney, Terrence M. Burns of Dykema Gossett, for their reply in support of their motion to reconsider this Court's February 7, 2008 Order, and in further support of their Motion to Dismiss, state as follows:

## INTRODUCTION

Plaintiff filed an action alleging police misconduct arising from an incident that occurred on or around January 29, 2007. The first amended complaint is sparse on detail as to the circumstances of the underlying incident. Lacking the basic information that would provide defendants with sufficient notice of the incident underlying plaintiff's claim, the complaint should be dismissed. And even if the first amended complaint is allowed to stand, or if plaintiff is given leave to re-plead, or if this Court requires a more definite statement from plaintiff concerning the underlying facts, the unfocused and irrelevant *Monell* allegations should be stricken and dismissed. Plaintiff fills his complaint with generalized allegations of unrelated misconduct against various members and units of the Chicago Police Department dating back over 25 years, purportedly in support of some vague and ill-defined *Monell* claim. Despite their number, these purported *Monell* allegations do not identify or support a specific municipal policy or practice that directly caused, or is closely related to, the underlying constitutional deprivation

alleged by plaintiff.  As such, plaintiff's *Monell* claim amounts to nothing more than an impermissible *respondeat superior* claim against the City.

Defendants Haleas and the City filed a joint motion to dismiss the first amended complaint.  (Dkt. #35).  The day after it was filed, this Court summarily entered an order denying the motion to dismiss without requiring a briefing schedule, conducting a hearing, or providing any discussion of its ruling.  (Dkt. #41).  These defendants then filed a motion to reconsider on the basis that this Court patently misunderstood the basis of the motion to dismiss.  (Dkt. #44).  This Reply is filed in compliance with the briefing schedule set by the Court on the motion to reconsider.  (Dkt. #46).

## DISCUSSION

## I.    THE MOTION TO RECONSIDER WAS BROUGHT FOR A PROPER PURPOSE

As set forth in the motion, one of the appropriate bases for a motion to reconsider is where the court has patently misunderstood a party.  *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996), *citing Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  These defendants respectfully submit the Court patently misunderstood the nature of their motion to dismiss.  Plaintiff's response suggests defendants can only prevail by bringing "evidence" demonstrating the Court made a manifest error of law or fact.  As recognized in *Caisse Nationale*, plaintiff's view of when motions to reconsider are appropriate is too narrow.  The motion to reconsider was brought for an appropriate reason.

The Court's entry of the February 7, 2008 Order without addressing Judge Conlon's recent decision in *Chaparro v. Powell*, No. 07 C 5277, 2008 WL 68683 (N.D. Ill. Jan. 2, 2008), further suggests the Court may have initially misunderstood the City's position in the motion to dismiss.  *Chaparro* involved almost identical allegations to those included in the first amended complaint in this case.  In light of Judge Conlon's dismissal of the same unfocused *Monell* claim in *Chaparro* as that attempted here, this Court's reconsideration of the February 7, 2008 Order and the motion to dismiss filed by Haleas and the City is entirely proper and warranted.

## II.    PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO GIVE ADEQUATE NOTICE OF THE CONDUCT THAT FORMS THE BASIS OF HIS CLAIMS

These defendants' motion to dismiss initially seeks dismissal of the first amended complaint in its entirety because it lacks basic information providing adequate notice of the

incident underlying plaintiff's claim.  As set forth in the motion, plaintiff does not include such basic facts as the location of his arrest, the time of his encounter with the police, a description of what happened, the number of officers involved, or any hint regarding any other allegedly unlawful "acts or omissions" of the "Unknown Chicago Police Officers."  As plaintiff's first amended complaint currently stands, there is no meaningful way defendant City can evaluate the scope and extent of plaintiff's claims or mount any meaningful investigation into those claims. For that reason, defendants seek the dismissal of the complaint.

Contrary to the arguments in plaintiff's Response, defendants are not attempting to impose a heightened pleading standard on plaintiff.  Rather, defendants submit the first amended complaint lacks the minimal level of factual detail so as to provide fair notice to defendants of the claims against them.  *Pratt v. Tarr*, 464 F.3d 720, 732 (7th Cir. 2006).  A complaint "should contain information that one can provide and that is clearly important."  *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 780 (7th Cir. 2007).  Plaintiff has failed to meet even this minimal standard.  Plaintiff's first amended complaint should be dismissed for its failure to provide an adequate "quantum of information" about his claims.  *See Concentra Health,* 496 F.3d at 779 n.3; *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) ("The lack of intimation of *any facts* underlying the [plaintiff's] claim (emphasis in original) . . . justifies dismissal").  Alternatively, defendants request that this Court order plaintiff to provide a more definite statement pursuant to Fed. Rule 12(e).  (*See* Motion to Dismiss, Dkt. #35, at p. 15).

## III.    PLAINTIFF HAS NOT ADEQUATELY PLEADED A *MONELL* CLAIM[1]

Plaintiff essentially claims his rights were violated on January 29, 2007, due to a practice of general "lawlessness" at the Chicago Police Department ("CPD").  (*See* Motion to Dismiss, Dkt. #35, at p. 4).  Plaintiff's theory seems to be that because other police officers committed misconduct in the past, that misconduct directly caused the defendant police officers in this case to use excessive force and falsely arrest him.  In other words, plaintiff attempts to base his *Monell* claim on a theory of liability that has been soundly rejected by the courts: "[C]laims that

---

[1] Whether this Court grants or denies any of the relief requested in Section II, above, the City asks this Court to separately consider the aspect of the motion which challenges plaintiff's unnecessary and irrelevant *Monell* allegations.  As explained below, the generalized and unfocused *Monell* allegations arguably pose an incredibly wide-ranging and excessive scope of discovery, which if allowed to proceed at this time, would unnecessarily strain scarce judicial and municipal time and resources.  For that reason, the City requests that plaintiff not be allowed to proceed with *Monell* discovery during the pendency of this motion and until the scope of his *Monell* claim is specified with the requisite precision.

past generalized bad police behavior led to future generalized bad police behavior" are nothing more than a "nebulous chain [that] fails the 'rigorous standards culpability and causation' required for municipal liability under section 1983." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *citing Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382 (1997) (hereinafter, "*Bryan County*"). Recently, District Court Judge Suzanne B. Conlon dismissed a *Monell* claim nearly identical to that attempted here by plaintiff, concluding the allegations failed to identify a discrete policy or custom. *Chaparro v. Powell*, 2008 WL 68683 at * 3.

When alleging a *Monell* claim, a plaintiff must identify with specificity the custom, policy, or practice of which he complains. *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (the allegedly deficient policy must be "closely related to the ultimate injury"). To forego the requirement of specificity would blur the line "between *respondeat superior* liability and truly unconstitutional municipal conduct." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 fn.27 (5th Cir. 2001). As explained by the *Carter*[2] court, "unfocused evidence of unrelated constitutional violations is simply not relevant to the question whether a municipal decision made or caused the violation of the specific federal rights of the plaintiff before the court." 164 F.3d at 218-19. Although plaintiff has filled his first amended complaint with a 25-year history of miscellaneous and unrelated allegations of misconduct pertaining to the CPD, his attempted *Monell* claim fails to identify with precision a "custom, policy or practice" that allegedly led to the violation of *his* constitutional rights. As such, the so-called "*Monell* Allegations" of the complaint (¶¶ 28-89), as well as count VI, should be dismissed. *See Chaparro*, *supra* ("The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability").

---

[2] In his response, plaintiff tries to distinguish *Carter* because it arose from the Fourth Circuit and involved a motion for summary judgment rather than a motion to dismiss. (*See* Response, pp. 7-8). Neither argument has merit. *Carter's* discussion of the required close connection of a *Monell* claim to the underlying constitutional deprivation is based on language taken directly from United States Supreme Court decisions, particularly *Bryan County* ("direct causal link") and *City of Canton* ("closely related"). Moreover, the Supreme Court's requirement of this close connection is equally applicable in assessing whether a proper *Monell* claim is stated or whether a genuine fact issue exists. Defendant City does not rely on *Carter* to the extent the decision assesses the specific facts in that case. Rather, the City's reliance on *Carter* rests on its discussion of the general principles of *Monell* claims and the dangers of allowing a plaintiff to "splatter paint a picture of scattered violations" instead of identifying an "offending municipal policy" with precision. *Carter*, 164 F.3d at 218-19.

Plaintiff's response asks this Court to disregard the requirement of specificity. He argues that how he chooses to allege his claim is his business as the master of his complaint, and his choices should not be subjected to defendant's "critique." (Response, p. 5). The requirement of specificity is imposed by the United States Supreme Court (*City of Canton*, *supra*), and not the City. This Court should not allow plaintiff free reign to include in his pleadings whatever impertinent, immaterial, or improperly prejudicial subject matter he sees fit. (*See*, *e.g.*, FRCP 12(f)). In addition, plaintiff's scattershot allegations of wide-ranging and unrelated incidents of misconduct invite the likelihood of extensive and burdensome *Monell* discovery,[3] and implicate the potential for abuse forewarned by the *Carter* court:

> [B]y requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents. Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover -- our role is to decide concrete cases. Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decision maker caused the violation of the specific federal rights of the plaintiff before the court. Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources. As a practical matter, a case involving inquiries into loosely related incidents can be an unruly one to try.

164 F.3d at 218-19.

In its present posture, discovery in this case almost certainly will "stray off into collateral accusations of marginally related incidents" (*e.g.*, SOS; Flagg, Haynes, *et al.*; BrainMaker), allow plaintiff a "roving commission" to investigate what he believes to be an illegitimate political relationship between OPS and the City, and require the significant expenditure of "scarce judicial and municipal time and resources." Little, if any, of these discovery efforts will assist the Court in deciding this specific case. In light of the potentially unlimited scope of discovery posed by the generalized, unfocused *Monell* allegations, this Court should not condone plaintiff's failure to specify in his pleadings a "custom, policy or practice" that directly led to the alleged violation of *his* constitutional rights.

---

[3] The danger of extensive and burdensome discovery is not speculative. Plaintiff's counsel has asserted the exact same boilerplate *Monell* allegations in at least eight other recently filed cases, one of which was *Chaparro*. (See Motion to Dismiss, Dkt. #35, at p. 7).

Plaintiff's response urges the numerous allegations suggesting the "general lawlessness" of the Chicago Police Department "bolster" and "allege in detail" his *Monell* claim. (Response, at p. 5). Plaintiff's argument misses the point. The "general lawlessness" allegations (¶¶ 31-89) lack any causal nexus to plaintiff's alleged constitutional deprivation. *See Chaparro*, at *3. At a minimum, these unrelated allegations are unnecessary and irrelevant surplusage that should be stricken and dismissed from the complaint. As recognized by the *Carter* court, claims that "past generalized bad police behavior led to future generalized bad police behavior" are a "nebulous chain" that "fails the 'rigorous standards of culpability and causation' required for municipal liability." 164 F.3d at 218. Plaintiff has not alleged a direct causal link between any policies generally suggested in his complaint and the specific violation of constitutional rights of which he complains. A plaintiff must allege the requisite causation such that the policy or custom complained of was the "moving force" behind the constitutional deprivation. *O'Sullivan v. City of Chicago*, 327 F.Supp.2d 937, 940 (N.D. Ill. 2004). Here, plaintiff has not alleged a causal link between any "practices" alleged in paragraphs 31 through 89 of his complaint and the claimed violation of his constitutional rights.

With respect to the allegations concerning the Special Operations Section ("SOS"), plaintiff lacks a direct link between the existence of any municipal policy concerning the SOS and the particular constitutional violation of which he complains. (*See* Motion to Dismiss, Dkt. #35, at p. 10). For example, the allegations of the first amended complaint concerning SOS refer to incidents involving the "robbing and kidnapping" of individuals by SOS officers. Plaintiff, however, does not complain he was robbed or kidnapped by police officers in this case. Without such a direct causal link, the SOS allegations amount to nothing more than an improper assertion that other police officers were bad in the past, which caused the defendant police officers in this case to be bad.

Plaintiff's response unsuccessfully strains to fill the gap between the generalized *Monell* allegations and the specific claimed violation of plaintiff's constitutional rights. Plaintiff's only argument in an effort to salvage the unrelated SOS allegations is to suggest they somehow support his claim based on an alleged "code of silence." Such a tenuous connection creates nothing more than an indirect nebulous chain that fails the "rigorous standards of culpability and causation" required for municipal liability under *Monell*. *Bryan County*, 520 U.S. at 405; *see*

*also City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197 (the alleged deficient municipal policy "must be closely related to the ultimate injury").

Plaintiff resorts to the same strained argument concerning the allegations that reference former police officers Flagg, Haynes, Jones, and Black. The alleged misconduct of these former officers is unrelated to the type of misconduct alleged against defendant officers in this case. Plaintiff nevertheless attempts to justify these unrelated allegations by suggesting they support an alleged "code of silence." Again, such an indirect, "nebulous" connection fails to satisfy the requirement recognized in *City of Canton* that the alleged municipal policy or practice be "closely related" to plaintiff's ultimate injury.

Plaintiff's response likewise fails to explain how the allegations concerning the Office of Professional Standards ("OPS") are directly related to his specific injury. As set forth in the motion to dismiss, plaintiff has not alleged that he filed a complaint with OPS or that OPS failed to conduct an adequate investigation of his complaint. Plaintiff further does not allege that the defendant officers in this case should have been previously disciplined by OPS for similar misconduct. Rather than dispute the absence of a direct causal link to his alleged constitutional deprivation, plaintiff again suggests the policy allegations concerning OPS support his "code of silence" theory. And once again, this argument at most reflects a vague, nebulous link between the alleged policy and the underlying constitutional violation. To establish that the municipality was the "moving force" behind his specific injury, a plaintiff must allege the municipal action was taken with the "requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County*, 520 U.S. at 404, 117 S.Ct. at 1388. A direct causal link is missing between plaintiff's SOS/Flagg/OPS allegations and the alleged constitutional violation underlying plaintiff's claim.

Plaintiff's allegations concerning the "BrainMaker" program similarly lack a causal nexus to the alleged misconduct in this case. The first amended complaint simply does not allege any close connection between plaintiff's claimed injury and the BrainMaker program. Plaintiff's suggestion in his response that these allegations demonstrate "the unwillingness of the City of Chicago to legitimately police itself" fails to provide the necessary direct causal link between that alleged policy and plaintiff's specific constitutional deprivation. Plaintiff's response additionally does not describe how the City's alleged failure to use an experimental software program rises to the level of deliberate indifference for purposes of a *Monell* claim.

With respect to the *Garcia* allegations of his complaint (¶¶ 76-78), plaintiff similarly is unable to explain their direct causal link to the alleged violation of his constitutional rights on January 29, 2007.  (*See* Motion to Dismiss, at p. 11).  The general "practice" suggested in the Response (p. 7) provides only another example of an assertion that other police officers were bad in the past, and it caused the officers to be bad in this case.  As set forth above, such a generalized allegation lacks precision and is inadequate to support a *Monell* claim.

Finally, plaintiff's response admits he is using this action in an effort to effect political change in the City.  As indicated above, the role of a court in presiding over a *Monell* claim is not to allow a "roving commission to root out and correct whatever municipal transgressions" might be discovered; rather, the court's role "is to decide concrete cases."  *Carter*, 164 F.3d at 218.  Article III of the Constitution limits the exercise of judicial power to resolution of actual cases and controversies.  *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752 (1982).  The magistrate judge's comments quoted in plaintiff's response (at pp. 8-9) do not suggest otherwise.  While the magistrate suggested a change in municipal policy might be a beneficial result of a *Monell* claim, he does not (and cannot) say that is the *purpose* of a *Monell* lawsuit.  The United States Supreme Court has made clear that the primary purpose of §1983 damages is to compensate persons for injuries caused by the deprivation of constitutional rights.  *Carey v. Piphus*, 435 U.S. 247, 254-55, 98 S.Ct. 1042 (1978).  *Carey* further noted, "To the extent that Congress intended that awards under §1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in an award of compensatory damages."  *Id.* at 256-257.

As noted in the motion to dismiss, plaintiff's attorney has asserted the same boilerplate *Monell* allegations in a number of other recently filed cases in this district.  (*See* Motion to Dismiss, p. 7).  In one of these other cases, *Chaparro v. Powell*, *supra*, Judge Conlon dismissed an almost identical *Monell* claim to that attempted by plaintiff in this case.  The extensive discussion of *Chaparro* need not be repeated here.  (*See* Motion to Dismiss, Dkt. #35, at pp. 7-9).  Judge Conlon's decision in *Chaparro* is persuasive, directly on point, and provides this Court with guidance on the identical allegations and issues raised in the pending motion.  This Court should follow Judge Conlon's well-reasoned decision and dismiss plaintiff's *Monell* allegations,

including count VI.    Tellingly, plaintiff's response does not even attempt to distinguish *Chaparro*.

Finally, plaintiffs point to *Sledd v. Lindsay*, 102 F.3d 282 (7th Cir. 1996), for the proposition that his first amended complaint indeed satisfies the *Monell* pleading requirements. *Sledd*, however, does not support plaintiffs' position and, furthermore, is not inconsistent with the *Carter* or *Bryan County* decisions relied on by the City.    In *Sledd*, the Seventh Circuit was able to identify a discrete, causally connected *Monell* claim.    *Sledd*, 102 F.3d at 288.    The specificity present in *Sledd* is the same precision that the City submits is required under *Carter* and *Bryan County*.    *Sledd*, *Carter* and *Bryan County* are all aligned with *Chaparro*, which stated:

> the custom or policy under underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability.    [Plaintiff] relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct.    But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom.    Under [plaintiff]'s logic, any instance of police misconduct would be "caused" by the "code of silence," because any misconduct could be linked to an officer's imputed belief he could escape punishment.

*Chaparro*, *supra*, at *3.    In the first amended complaint, unlike in *Sledd*, *Carter* or *Bryan County*, plaintiff's purported *Monell* claim fails to set forth specific allegations that suggest a discrete, defined custom or policy causally connected to the underlying constitutional violation alleged by plaintiff.

Plaintiff's first amended complaint is replete with allegations that have nothing to do with his arrest or the specific allegations of misconduct against defendant Haleas or the "unknown officers" in this case.    Although the first amended complaint contains a myriad of purported *Monell* allegations concerning previous instances of misconduct, it is devoid of allegations causally linking plaintiff's specific alleged constitutional deprivation to these other events. Plaintiff's *Monell* allegations (count VI and ¶¶ 28-89) should be dismissed.

## IV.    PLAINTIFF'S RICO CLAIM (COUNT X) FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Defendants' motion to dismiss also sought the dismissal of plaintiff's RICO claim in count X for its failure to state a claim upon which relief can be granted.    Specifically, the allegations fail to sufficiently assert plaintiff was injured in his "business or property."    Plaintiff

therefore lacks standing to bring a RICO claim. *Evans v. City of Chicago*, 434 F.3d 916, 927 (7th Cir. 2006).

Plaintiff's response relies on *Gamboa v. City of Chicago*, 2003 WL 21877643 (N.D. Ill. 2003), for the proposition that plaintiff's financial loss in the form of attorney's fees is sufficient to provide standing to assert a RICO violation. In *Gamboa*, the district court appears to have found that certain claimed injuries, such as legal fees and bond loan fees incurred because of an alleged unlawful arrest, were compensable "business or property" injuries sufficient to confer standing in a RICO claim. To that extent, the 2003 decision in *Gamboa* appears to be inconsistent with the subsequent 2006 Seventh Circuit decision in *Evans*. Specifically, *Evans* stated:

> Like pecuniary losses stemming from the inability to seek or gain employment due to a plaintiff's alleged false imprisonment, pecuniary losses which emanate from a personal injury such as the acquisition of attorney's fees due to alleged malicious prosecution or false imprisonment do not provide a plaintiff with standing under the civil RICO statute.

*Evans*, 434 F.3d at 931.

*Evans* is directly on point. Plaintiff's causes of action in the first amended complaint mirror those of the plaintiff in *Evans* (claimed violation of civil rights; false arrests; malicious prosecution). The alleged damages included in paragraph 125 of the first amended complaint are precisely the types of losses the *Evans* court found insufficient as a matter of law to constitute "business or property" injuries that would provide standing under RICO. As noted in the motion to dismiss, plaintiff's own pleadings support the conclusion as he candidly alleges all of his financial losses were directly from a false arrest, *i.e.*, pecuniary losses that emanate from personal injury such as a false imprisonment. (First Amended Complaint, at ¶ 17). As a matter of law, plaintiff's alleged damages do not provide him with standing to state a claim under the civil RICO statute. *Evans*. Count X should be dismissed.

## CONCLUSION

Plaintiff's first amended complaint should be dismissed on the basis that it fails to provide the City and defendant Haleas with sufficient notice of the essential facts underlying his claim. Alternatively, the Court should order plaintiff to provide a more definite statement concerning the underlying facts. As a separate consideration, plaintiff's purported *Monell* claim is inadequate and improper. Plaintiff's first amended complaint is replete with so-called *Monell*

allegations that apparently have nothing to do with his arrest or the allegations of misconduct against defendant Haleas or the unknown police officer defendants in this case. Although the first amended complaint contains a myriad of purported *Monell* allegations concerning previous instances of misconduct, the pleading is devoid of allegations causally linking plaintiff's specific alleged constitutional deprivation to these other events. Plaintiff's *Monell* allegations (count VI and ¶¶ 28-89) should be dismissed. Finally, count X of the first amended complaint should be dismissed for its failure to state a claim upon which relief can be granted.

WHEREFORE, for the foregoing reasons, Defendants Haleas and the City respectfully request that this Court reconsider its Order of February 6, 2008, and further, enter an order dismissing plaintiff's first amended complaint in its entirety. Alternatively, the City asks this Court to order plaintiff to provide a more definite statement concerning the factual circumstances underlying his claim. The City separately asks this Court to dismiss plaintiff's *Monell* allegations, including count VI and paragraphs 28 through 89 of the first amended complaint. Finally, count X if the first amended complaint, plaintiff's RICO claim, should be dismissed.

Dated: March 28, 2008                              Respectfully submitted,


                                                   By: s/ Paul A. Michalik
                                                        One of the Attorneys for Defendants,
                                                        John Haleas and City of Chicago

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Gregory L. Lacey
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 28, 2008, I electronically filed the foregoing **Reply of**

**Defendants Haleas and City of Chicago in Support of Their Motion to Reconsider** with the

Clerk of the Court using the ECF system, which sent electronic notification of the filing on the

same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Tali K. Albukerk
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.6l6.4433
lobh@att.net

s/ Paul A. Michalik
Paul A. Michalik

CHICAGO\2435040.1
ID\PAM