**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDUARDO ALMARAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6134 |
| | ) | |
| OFFICER HALEAS, TERRY HILLARD, | ) | Judge William Hart |
| LORI LIGHTFOOT, TISA MORRIS, | ) | |
| PHILLIP CLINE, UNKNOWN CHICAGO | ) | Magistrate Judge Susan Cox |
| POLICE OFFICERS, MAYOR RICHARD | ) | |
| DALEY, and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT PHILIP CLINE'S ANSWER TO PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT AT LAW

Defendant, Philip Cline, by his attorney, Terrence M. Burns of Dykema Gossett PLLC, for his answer to plaintiff's corrected first amended complaint, states:

## JURISDICTION

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; 18 U.S.C. §1961 et seq. (RICO); the Judicial Code, 28 U.S.C. §1331 and §1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

**ANSWER:**    Defendant Cline admits plaintiff's corrected first amended complaint includes claims that invoke the jurisdiction of this Court.  Defendant Cline denies plaintiff can invoke the jurisdiction of this Court pursuant to 18 U.S.C. §1961 *et seq*. ("RICO"), as that claim has been dismissed.  (Dkt. #73).  Defendant Cline denies any liability to plaintiff for any of the claims asserted in the corrected first amended complaint.

## PARTIES

2.      PLAINTIFF is a resident of the State of Illinois and of the United States.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2.

3.     The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS, were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline admits only that Defendant Officer Haleas was employed by the Chicago Police Department on January 29, 2007, and he would have been acting as an employee of the Chicago Police Department when performing the duties of his office.  Defendant Cline lacks knowledge or information sufficient to form a belief as to the truth or falsity of the vague allegations contained in paragraph 3 concerning unidentified officers at unspecified times.

4.     The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICER as well as the other UNKNOWN CHICAGO POLICE OFFICERS and/or employees referred to in this Complaint (as indicated in the *Monell* claim alleged herein).  At all times material to this complaint, the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline admits the City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois.  Defendant Cline further admits that, on January 29, 2007, he was the Superintendent of Police for the Chicago Police Department, and that Defendant Officer Haleas was employed by the Chicago Police Department.  Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the vague allegations contained in paragraph 4 concerning unnamed or "unknown" "police officers and/or employees."  Defendant Cline denies any remaining allegations in paragraph 4 inconsistent with the foregoing.

5.     RICHARD DALEY was and is the acting mayor for the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline admits Richard M. Daley was and still is the mayor of the City of Chicago.

6.      PHILIP CLINE was the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    Defendant Cline admits he served as the Superintendent of Police for the Chicago

Police Department from October 2003 through August 2007.

7.      TERRY HILLARD was the acting superintendent of police for the Chicago Police Department.

**ANSWER:**    Defendant Cline admits Terry Hillard served as the Superintendent of Police for

the Chicago Police Department from 1998 to 2003.

8.      LORI LIGHTFOOT was the Chief Administrator of the Chicago Police Department's Office of Professional Standards (OPS) from August 2002 to July 2004.

**ANSWER:**    Defendant Cline admits the allegations contained in paragraph 8.

9.      TISA MORRIS was the Chief Administrator of the Chicago Police Department's OPS from July 2004 to October 2006.

**ANSWER:**    Defendant Cline admits the allegations contained in paragraph 9.

## FACTS

10.      On or about January 29, 2007, the DEFENDANT OFFICER was engaged in an unreasonable seizure of the PLAINTIFF.  This conduct violated the Fourth Amendment to the United States Constitution.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 10.

11.      On or about January 29, 2007, PLAINTIFF did not obstruct justice, resist arrest and/or batter and/or assault the DEFENDANT OFFICER.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 11.

12.      The show of force initiated by and/or the failure to intervene in the use of said force by the DEFENDANT OFFICER caused an unreasonable seizure to the PLAINTIFF.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 12.

13.     The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS charged and/or participated in the charging of PLAINTIFF with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the PLAINTIFF notwithstanding the fact that the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS failed to observe and/or learn that PLAINTIFF had committed criminal activity of any sort. The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS did not have probable cause to believe that criminal activity took place relative to the PLAINTIFF.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 13.

14.     On January 29, 2007, PLAINTIFF had not committed an act contrary to the laws of the State of Illinois.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 14.

15.     As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICER, and UNKNOWN CHICAGO POLICE OFFICERS, PLAINTIFF was caused to suffer damages.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 15.

16.     On or about January 29, 2007, the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were on duty at all times relevant to this complaint and were duly appointed police officers for the CITY OF CHICAGO. The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS.

**ANSWER:**     Defendant Cline lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the vague allegations contained in paragraph 16 concerning unnamed or

"unknown" police officers. Defendant Cline admits Defendant Haleas has been sued in his

individual capacity. Defendant Cline admits Defendant Haleas was employed as a police officer

by the Chicago Police Department on and before January 29, 2007. Defendant Cline is without

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 16.

## RICO

17.    The PLAINTIFF was also caused to suffer financial loss and out of pocket expenses, directly correlated to being arrested for DUI under false pretenses.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court for lack of standing in an Order dated April 25, 2008. (Dkt. #73). Therefore, no answer is required to paragraph 17. To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

18.    PLAINTIFF is a person under the meaning of the RICO statute.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008. (Dkt. #73). Therefore, no answer is required to paragraph 18. To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

19.    The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS in their individual capacity are persons under the meaning of the RICO statute. Said persons are part of the subset of individuals which make up a cell and/or group of individuals who are engaged in illegal activity within an enterprise known as the City of Chicago Police Department.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008. (Dkt. #73). Therefore, no answer is required to paragraph 19. To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

20.    The City of Chicago Police Department engaged in interstate commerce for the purchase and procurement of, *inter alia,* equipment, weapons, tools, vehicles, uniforms, communications devices, logistics and data management systems, and devices for estimating blood alcohol content to be used by its police force.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 20.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

21.    The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS, within the past ten years engaged in multiple, repeated, and continuous acts, *inter alia,* the complained of police misconduct and false charges of PLAINTIFF which constituted extortion and mail fraud under Illinois state law and federal law, and which further constitute a pattern of racketeering activity within the meaning of 18 U.S.C. §1961 et seq.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 21.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

22.    The DEFENDANT OFFICER'S and UNKNOWN CHICAGO POLICE OFFICERS' complained of police misconduct was inextricably intertwined with his authority and activities as an employee of the Chicago Police Department.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 22.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

23.    The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS ability to intimidate lawful citizens such as PLAINTIFF with the power and threat of arrest and prosecution was made possible by and through his employment as a police officer with the Chicago Police Department.

**ANSWER:**    Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 23.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

24.     The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS illegal activities were clearly helped along by their authority as Chicago Police Officers and by the fear and intimidation which a police officer such as DEFENDANT OFFICERS uniquely have the ability to engender in others by virtue of their position.

**ANSWER:**     Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 24.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

25.     All of DEFENDANT OFFICERS and UNKNOWN CHICAGO POLICE OFFICERS complained of police misconduct and false charges were intended and did earn the Chicago Police Department and CITY OF CHICAGO money and revenue.

**ANSWER:**     Defendant Cline states plaintiff's RICO claim (count X) was dismissed by this Court in an Order dated April 25, 2008.  (Dkt. #73).  Therefore, no answer is required to paragraph 25.  To the extent this paragraph is "re-alleged" in subsequent counts and a response is deemed necessary, Defendant Cline denies any liability to plaintiff.

### EQUAL PROTECTION

26.     With regard to an Equal Protection Claim, PLAINTIFF was a "Class of One."  In that regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis.  PLAINTIFF was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS.  The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF.

**ANSWER:**     Defendant Cline lacks knowledge or information sufficient to form a belief as to the truth or falsity of the vague allegations contained in paragraph 26 to the extent directed against unnamed or "unknown" police officers, or other defendants.  As directed against him, Defendant Cline denies the allegations contained in paragraph 26.

27.     Further, PLAINTIFF was similarly situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the vague and confusing allegations contained in paragraph 27.

### *MONELL* ALLEGATIONS

28.     It is the custom, practice and/or policy of police officers and/or their supervisors/agents and/or other employees of the CITY OF CHICAGO to perform the following acts and/or omissions:

   a.     generate false documentation to cover-up for the misconduct of fellow police officers;

   b.     engage in acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

   c.     fail to properly discipline officers from said police department who have committed act(s) of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

   d.     fail to properly investigate a complaint of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence perpetrated by a CITY OF CHICAGO police officer upon another;

   e.     fail to take proper remedial action against a CITY OF CHICAGO police officer once it is determined that an act of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence has been committed by said officer upon another;

   f.     allow misconduct to occur in various types and severity such that police officers believe that they can engage in false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence without repercussions and/or significant repercussions;

   g.     fail to provide adequate sanctions/discipline to officers who commit false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in such behavior;

h. fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

i. fail to provide adequate sanctions/discipline to officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

j. fail to properly investigate officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

k. fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in illegal behavior, *inter alia* false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence;

l. fail to take proper remedial measures to prevent and/or correct officers who falsify police reports, investigations and/or internal investigations, causing said officers to believe that they can manufacture evidence which will cause them to not be disciplined or significantly disciplined for engaging in behavior which violates the rules, policies and/or procedures of the CITY OF CHICAGO police department;

m. fail to properly investigate officers who commit acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

n.     fail to take proper remedial action with officers who commit acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, such that a permissive atmosphere exists among officers wherein they believe that they will not be disciplined (or significantly disciplined) for engaging in misconduct with citizens;

o.     fail to provide proper training to prevent officers from falsifying police reports, falsely charging innocent citizens, committing acts of false arrest, malicious prosecution, misrepresentation of facts, presentation of false testimony, significant intrusions to the body of innocent citizens, excessive force, and/or serious acts of violence, and violating the rules, policies and procedures of the CITY OF CHICAGO police department.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 28.

29.     This practice and/or custom, as alleged above, has gone unchecked and been allowed to exist in the CITY OF CHICAGO for a significant period of time, so much so, that police officers for the CITY OF CHICAGO recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers of the CITY OF CHICAGO police department in order to permit said conduct to re-occur.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 29.

30.     A code of silence exists between officers of the Defendant Municipality. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the department, regarding police officer misconduct.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 30.

## SPECIAL OPERATIONS OFFICERS

31.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that received at least ten civilian complaints lodged against them.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 31.

32.     The CITY OF CHICAGO possesses the names of the 662 police officers that have received at least ten civilian complaints lodged against them, between the years 2001 and 2006.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 32.

33.     Between the years 2001 and 2006, there were at least 662 Chicago police officers that worked in a unit called "Special Operations," that received at least ten civilian complaints lodged against them (these officers shall be referred to, herein, as "Special Operations Officers").

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 33.

34.     The civilian complaints lodged against the Special Operations Officers have not been properly investigated by the Chicago Police Department.

**ANSWER:**     Defendant Cline denies knowledge that any complaint registers opened against

police officers in the Special Operations Section were not investigated properly by the Chicago

Police Department, and he therefore denies the allegations of paragraph 34.

35.     In the year 2007, an order was entered by the HONORABLE JUDGE LEFKOW regarding the Special Operations Officers for the City of Chicago.  The order provided, *inter alia,* that the parties were permitted to make public the names of 662 Special Operations Officers that had ten or more civilian complaints lodged against them.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 35.

36.     The CITY OF CHICAGO refuses to release the names of the Special Operations Officers, referenced in the order of the HONORABLE JUDGE LEFKOW, to the public.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 36.

37.     There are at least four police officers who worked in the Special Operations Section of the Chicago Police Department who have received at least 50 complaints of misconduct.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 37.

38.     Within the last four years, six police officers who were members of the Special Operations Section of the City of Chicago have been indicted for robbing and kidnapping individuals.

**ANSWER:**    Defendant Cline admits upon information and belief certain police officers who were members of the Special Operations Section of the Chicago Police Department have been indicted.  Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 38.

39.    There are ten police officers who worked in the Special Operations Section who received a combined total of 408 complaints of misconduct (with the Office of Professional Standards).  With regard to those 408 complaints, only three were sustained.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39.

40.    Of the ten Special Operations Officers that received a combined total of 408 complaints, one officer, who was accused of misconduct 55 times, has never received a complaint that has been sustained.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 40.

## OFFICE OF PROFESSIONAL STANDARDS (OPS)

41.    Less then one percent of the charges of misconduct that have been lodged against Chicago Police Officers, through the Office of Professional Standards (hereinafter "OPS"), over the last ten years, have resulted in a "sustained finding" against said officer.

**ANSWER:**    Defendant Cline denies the allegation contained in paragraph 41.

42.    The OPS is fully funded by the City of Chicago.

**ANSWER:**    Defendant Cline admits the allegations contained paragraph 42.

43.    The OPS, over the last 10 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 43.

44.    The OPS, over the last 20 years, has been managed by an individual that has been appointed by the Mayor of the City of Chicago.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 44.

45.     Over the last 10 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by OPS.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 45.

46.     Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the decisions of OPS to determine whether or not an individual police officer should receive a sustained finding, as that term is defined by the Chicago Police Department.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 46.

47.     Over the last 20 years, there has not been an entity and/or agency, not employed by the City of Chicago, that has reviewed the work performed by OPS to determine whether OPS is properly investigating the complaints of misconduct of Chicago Police Officers.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 47.

48.     Due to the intimate connection between the OPS and the Mayor of the City of Chicago as well as other politicians of the City of Chicago, there is a lack of independent review of misconduct of Chicago Police Officers.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 48.

49.     For example, Officer Raymond Piwnicki obtained 56 complaints against him within seven years and failed to receive meaningful discipline for any act of misconduct.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the vague allegations contained in paragraph 49.

50.     Officer Rex Hayes received over 65 complaints of misconduct lodged against him, as well as ten lawsuits, amounting to over 2.5 million dollars that had to be paid out of City tax dollars as a result of the litigation.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 50.

## PARTICULARIZED MISCONDUCT OF
## CERTAIN OFFICERS

51.     Chicago Police Officer Broderick Jones has pled guilty, in Federal Court, before the Honorable Judge Guzman, of engaging in multiple acts of racketeering activity, to wit: possession of cocaine with the intent to distribute, robbery and extortion.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 51.

52.    In his plea of guilty, Broderick Jones admitted that he committed robbery, extortion and possession of cocaine with the intent to distribute, while he was working for the Chicago Police Department and while he was acting in the capacity of a Chicago Police Officer. He also admitted to undertaking these efforts from 1999 through March 2005.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 52.

53.    Chicago Police Officer Corey Flagg pled guilty, before the Honorable Judge Guzman, in Federal Court, to having conspired, along with Chicago Police Officers, Eural Black, Darek Haynes, Broderick Jones and others, to intentionally possessing and distributing cocaine and marijuana.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 53.

54.    Corey Flagg pled guilty to having worked with Eural Black, Darek Haynes and Broderick Jones to obtain cocaine, marijuana and drug money, through robbery and extortion.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 54.

55.    Corey Flagg, in his plea of guilty, stated that he understood that any cocaine and marijuana obtained during the course of his criminal efforts would be distributed to the people he was criminally involved with (i.e. Eural Black, Darek Haynes and Broderick Jones).

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 55.

56.    Corey Flagg admitted, in his plea agreement, that while he was a Chicago Police Officer, he knew that Broderick Jones recruited Chicago Police Officers, including himself and Officer Haynes, to conduct vehicle stops and home invasions in order to illegally obtain drugs, money and weapons.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 56.

57.    Corey Flagg, in his plea of guilty, recognized that he and other Chicago Police Officers used their power, authority and official position as Chicago Police Officers to promote and protect their illegal activities, as mentioned above.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in paragraph 57.

58.    Eural Black, previously a Chicago Police Officer, was found guilty of the following, by a Jury, in the City of Chicago, before the Honorable Judge Hibbler:

     a.    attempting to conspire and distribute controlled substances;

     b.    multiple acts of robbery and, racketeering;

     c.    the procurement of weapons from individuals through robbery and extortion;

     d.    recruiting Chicago Police Officers to conduct vehicle stops and home invasions of others to illegally obtain money, weapons and controlled substances;

     e.    delivering controlled substances in exchange for cash;

     f.    not enforcing the law with individuals that he was involved so that he could promote criminal activity;

     g.    along with Eural Black, Corey Flagg, Darek Haynes and non-Chicago Police Officers, distributing cocaine (up to 5 kilograms);

     h.    distributing cocaine in exchange for cash;

     i.    conducting home invasions of individuals (along with Corey Flagg, Eural Black and Darek Haynes) for the purpose of obtaining money, property, weapons and controlled substances;

     j.    using the power of his office as a Chicago Police Officer to engage in the above (a-i) acts;

     k.    using the facilities of the Chicago Police Department, namely his badge, gun, bullet proof vest and handcuffs, to promote his illegal activity (a-i).

These allegations serve as an example of misconduct by Chicago Police Officers, as well as the failure of the Chicago Police Department and OPS, to monitor itself.

**ANSWER:**    Defendant Cline denies any "failure" on the part of the Chicago Police

Department or OPS to monitor itself.   Defendant Cline is without knowledge or information

15

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 58.

**OPS INVESTIGATION RELATIVE TO**
**BLACK, FLAGG, JONES AND HAYNES**

59.     Corey Flagg, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 59.

60.     Corey Flagg has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 60.

61.     Eural Black, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 61.

62.     Broderick Jones, prior to being charged with criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 62.

63.     Darek Haynes has had no less then 15 federal lawsuits filed against him for civil rights violations for activity that occurred while he was employed as a police officer for the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 63.

64.     Darek Haynes, prior to being charged of criminal activity, possessed over 10 complaints of misconduct, none of which were sustained by the Chicago Police Department.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 64.

## LAWLESSNESS IN THE CHICAGO POLICE DEPARTMENT AND ITS CONNECTION TO THE POLITICAL SCHEME OF THE CITY OF CHICAGO

65.    Due to the lack of legitimate review of misconduct by Chicago Police Officers, many police officers for the City of Chicago believe that they can engage in lawless activities.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 65.

66.    The financial relationship between the City of Chicago and the OPS is such that the OPS can not be independent.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 66.

67.    This is due to the fact that, *inter alia,* if a determination is made, by OPS, that a police officer has committed an act of misconduct, said determination and the facts which flow from said determination, may be used by the victim, against whom the misconduct was inflicted, to receive a monetary award and/or settlement against the City of Chicago.

**ANSWER:**    To the extent that paragraph 67 is premised upon the allegations of the preceding paragraph, Defendant Cline denies the allegations contained therein.  Further, the allegations contained in paragraph 67 are vague, speculative, and present incomplete hypothetical circumstances.  Defendant Cline therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations in paragraph 67.

68.    In other words, if OPS renders a decision that a complaint should be sustained against an officer, the complainant may use the information gathered, as well as the fact that the complaint has been sustained, against the officer in a civil proceeding, to receive compensation.

**ANSWER:**    The allegations contained in paragraph 68 are vague, present incomplete hypothetical circumstances, and require speculation.  Defendant Cline therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

69.    Sustained complaints by OPS dramatically increases the likelihood that the City of Chicago will have to indemnify the officer for the misconduct inflicted by said officer.

**ANSWER:**     The allegations contained in paragraph 69 are vague, present incomplete hypothetical circumstances, and require speculation. Defendant Cline therefore lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations.

70.     Due to the structure of OPS and its intimate connection with the City of Chicago, OPS has been an illegitimate entity to investigate the misconduct of Chicago Police Officers.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 70.

71.     Due to the structure of OPS and its intimate connection with the City of Chicago, Chicago Police Officers have been able to engage in significant acts of lawlessness.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 71.

72.     It is due to these lawless activities that the constitutional rights of citizens become infringed, as police officers believe that they will be protected by OPS, which is, in turn, protected by the Mayor of the City of Chicago who appoints the person in charge of OPS.

**ANSWER:**     Defendant Cline denies the allegations contained in paragraph 72.

## MISCELLANEOUS FACTS REGARDING MONELL LIABILITY

73.     In the year of 2000, a resolution was submitted to City Council stating, in part, that Chicago Police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable for misconduct.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 73.

74.     William M. Beavers was an Alderman for the City of Chicago. In the year 2000, he was Chairman of the Committee on Police and Fire of the Chicago City Council.

**ANSWER:**     Defendant Cline admits the allegations contained in paragraph 74.

75.     Alderman Beavers submitted a resolution to City Council for the City of Chicago, which stated, among other things, that there exists "an environment where police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable even in instances of egregious misconduct."

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 75.

76.     Judge Holderman is a Federal Judge presiding in the Northern District of Illinois.

**ANSWER:**    Defendant Cline admits the allegations contained in paragraph 76.

77.    Judge Holderman wrote a legal opinion in *Garcia v. City of Chicago,* 2003 U.S. Dist., LEXIS, *16565* (N.D. Ill. Sep. 19, 2003).

**ANSWER:**    Defendant Cline admits upon information and belief that Judge Holderman issued a legal opinion in *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16565 (N.D. Ill. Sept. 19, 2003).

78.    In the legal opinion authored by Judge Holderman, he stated, in significant part, that the City's police abuse investigations were incomplete, inconsistent, delayed, and slanted in favor of the officers.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 78.

79.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same.  This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 79.

80.    Notwithstanding the fact that there is significant and credible evidence of torture that occurred in Chicago Police Departments, from the 1980's the 1990's, and the fact that the Mayor acknowledges that he failed to properly investigate torture that occurred by Chicago Police Officers while he was Cook County State's attorney, there has not been one Chicago Police Officer that has been punished, sanctioned and/or disciplined for same.  This has occurred as a result of the intimate connection between OPS, the Mayor, and the Chicago Police Department.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 80.

**BRAINMAKER**

81.    In 1995, the City of Chicago became aware of the BrainMaker program.

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73). Therefore, no further response is made or required to this paragraph.

82.    "BrainMaker" is a software product which can be used as an assistive device to forecast which officers on the police force are potential candidates for misbehavior.

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

83.    The Department's Internal Affairs Division used BrainMaker to study 200 officers who had been terminated for disciplinary reasons and developed a database of patterns of characteristics, behaviors and demographics found among the 200 police officers.

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

84.    The purpose of this study was to try to predict and/or understand the misbehavior of Chicago Police Officers.

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

85.    BrainMaker compared current officers against the pattern gleaned from the 200 member control group and produced a list of officers who, by virtue of matching the pattern or sharing questionable characteristics, were deemed to be "at risk."

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

86.    BrainMaker was used to study the records of 12,500 police officers (records that included such information as age, education, sex, race, number of traffic accidents, reports of lost weapons or badges, marital status, performance reports and frequency of sick leaves).

**ANSWER:**    In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

87.     The results of the BrainMaker study demonstrated that there were 91 at-risk Chicago Police Officers. Of those 91 people, nearly half were found to be already enrolled in a counseling program founded by the personnel department to help officers that were found to have engaged in acts of misconduct.

**ANSWER:**     In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

88.     Terry Heckart, a graduate student at Ohio's Bowling Green State University, recommended BrainMaker to UPS [sic] and/or the Office of Internal Affairs.

**ANSWER:**     In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

89.     Notwithstanding the assistance that BrainMaker provided to the City of Chicago, the City, through its agents, abandoned the project, further demonstrating the inherent difficulty in having the City of Chicago police itself.

**ANSWER:**     In an opinion and order dated April 25, 2008, this Court determined that the

allegations pertaining to the Brainmaker study "may be ignored."  (Order, at p. 12; Dkt. #73).

Therefore, no further response is made or required to this paragraph.

## COUNT I
### §1983 False Arrest

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count I.

Defendant Cline therefore does not answer or respond to the allegations in this count except to

the extent plaintiff realleges and incorporates certain paragraphs in later counts against him.

90.     PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**     Defendant Cline adopts and restates his answers and responses to paragraphs 1

through 89 as and for his answer and response to paragraph 90 as though fully set forth herein.

91.     The actions of the DEFENDANT OFFICER caused the arrest of the PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.  Therefore, the

conduct of the DEFENDANT OFFICER was in violation of the Fourth Amendment to the United States Constitution.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 91.

92.    The aforementioned actions of the DEFENDANT OFFICER were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 92.

## COUNT II
## False Arrest - State Claim

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count II.

Defendant Cline therefore does not answer or respond to the allegations in this count except to

the extent plaintiff realleges and incorporates certain paragraphs in later counts against him.

93.    PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 93 as though fully set forth herein.

94.    The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS arrested PLAINTIFF without probable cause to believe that PLAINTIFF committed criminal activity.  The conduct of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were in violation of the Constitution to the State of Illinois as well as Illinois law.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 94.

95.    The aforementioned actions of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the violations set forth above.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 95.

<u>**COUNT III**</u>
<u>**Malicious Prosecution - State Claim**</u>

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count III. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against him.

96.     PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**     Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 96 as though fully set forth herein.

97.     The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS alleged that PLAINTIFF violated the laws of the State of Illinois.  These allegations commenced or continued a criminal proceeding against PLAINTIFF.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 97.

98.     The DEFENDANT OFFICER engaged in this effort without probable cause.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 98.

99.     The underlying criminal charges were ultimately resolved in favor of PLAINTIFF.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 99.

100.     The underlying criminal charges were resolved in a manner indicative of innocence.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 100.

101.     The aforementioned actions were the direct and proximate cause of the violations of Illinois State Law, as set forth above.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 101.

### COUNT IV
### §1983 LIABILITY OF DEFENDANTS, DALEY
### CLINE, HILLARD, MORRIS AND LIGHTFOOT[1]

102.    PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 102 as though fully set forth herein.

103.    Defendants Phillip Cline, Terry Hillard, Richard Daley, Tisa Morris and Lori Lightfoot caused and participated in the deprivation of the constitutional rights of the PLAINTIFF.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 103.

104.    Defendants CLINE, HILLARD, MORRIS, DALEY and LIGHTFOOT at all times material to this complaint, were aware that the City maintained a widespread and settled policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers.  These Defendants were also aware that the maintenance of these practices would result in preventable police abuse.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 104.

105.    These Defendants oversaw, endorsed, condoned and acquiesced in the above-mentioned policies, practices and customs and refused to take steps to correct them.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 105.

106.    These Defendants, at all times material to this complaint, caused and facilitated the systematic denial of PLAINTIFF'S constitutional rights, by, among other things:

      (a)    failing to monitor police officers and groups who violate the constitutional rights of citizens;

      (b)    failing to discipline police officers who engaged in constitutional rights violations;

      (c)    turning a blind eye to repeated and systemic abuses of the constitutional rights of citizens, including the PLAINTIFF; and

---

[1] Defendants Daley, Hillard, and Lightfoot were dismissed from this action as reflected in this Court's Opinion and Order dated April 25, 2008.  (Dkt. #73).

(d)    failing to develop and implement an effective early warning system to identify police officers and groups who systematically violate the constitutional rights of citizens.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 106, including sub-paragraphs (a) through (d), inclusive.

107.    These Defendants were, at all times material to this complaint, deliberately indifferent to the rights and safety of PLAINTIFF, as evidenced by their acquiescence to and support of these policies and their obvious consequences.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 107.

WHEREFORE, Defendant, Philip Cline, denies that plaintiff is entitled to any judgment whatsoever as against him, and he requests that this Court enter judgment in his favor and against plaintiff on Count IV, and for his costs and fees, and for such further relief as this Court deems just and proper.

### COUNT V
### §1983 Equal Protection - Class of One

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count V. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against him.

108.    PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 108 as though fully set forth herein.

109.    The actions of THE DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS violated the Equal Protection clause to the United States Constitution.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 109.

110.    The aforementioned actions of said DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

**ANSWER:**     Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 110.

## COUNT VI – *Monell*

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count VI. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against him.

111.     PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**     Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 111 as though fully set forth herein.

## COUNT VII
### 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count VII. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against him.

112.     PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**     Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 112 as though fully set forth herein.

113.     Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS alleged above.

**ANSWER:**     Defendant Cline makes no answer to paragraph 113 as it is not directed against him.

114.     The DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

**ANSWER:**     Defendant Cline makes no answer to paragraph 114 as it is not directed against him.

## COUNT VIII
## Supplementary Claim for *Respondeat Superior*

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count VIII. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against him.

115.    PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 115 as though fully set forth herein.

116.    The aforesaid acts of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of *respondeat superior.*

**ANSWER:**    Defendant Cline makes no answer to paragraph 116 as it is not directed against him.

## COUNT IX
## Class Allegations

Defendant Cline is not a defendant from whom plaintiff seeks relief in Count IX. Defendant Cline therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in other counts against him.

117.    PLAINTIFF re-alleges paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Defendant Cline adopts and restates his answers and responses to paragraphs 1 through 89 as and for his answer and response to paragraph 117 as though fully set forth herein.

118.    The above described seizures and false arrests were undertaken in accordance with a policy of DEFENDANT CITY OF CHICAGO.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 118.

119.    DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS uniformly falsify police reports, fabricates DUI tests results, and/or testifies falsely in court to secure arrests and convictions for the CITY OF CHICAGO.

**ANSWER:**    Defendant Cline denies the allegations contained in paragraph 119.

120.    Plaintiff contends that as a result of DEFENDANT OFFICERS and UNKNOWN CHICAGO POLICE OFFICERS falsifications, he, and others, have been deprived of rights secured by the Fourth and Fourteenth Amendments and have been maliciously prosecuted.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the vague allegations contained in paragraph 120 concerning unnamed or "unknown" police officers or as to what plaintiff "contends."   Defendant Cline denies the remaining allegations contained in paragraph 120.

121.    Plaintiff brings this action individually and for the following sub-classes:

i.    All persons who, at any time on and after two years preceding the filing of this lawsuit until the date of entry of judgment, were detained and/or arrested by DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS as a result of a DUI stop without probable cause.

ii.    All persons who, at any time on and after one year preceding the filing of this lawsuit until the date of entry of judgment, were prosecuted by the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS based on false testimony, police reports and/or evidence, i.e. maliciously prosecuted, without probable cause.

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 121 as to plaintiff's purpose in bringing this action.   Defendant Cline denies the policies alleged by plaintiff and he therefore denies there is an appropriate basis for bringing a class action under the circumstances alleged in the "corrected" first amended complaint.

122.    Each proposed sub-class satisfies each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and class certification for each sub-class is appropriate under Rule 23(b)(3).

**ANSWER:**    Defendant Cline is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 122.   Defendant Cline denies

the policies alleged by plaintiff and he therefore denies there is an appropriate basis for bringing

a class action under the circumstances alleged in the "corrected" first amended complaint.

## COUNT X
## RICO Claim

123.    The PLAINTIFF and all members of the above referenced class, whose date of final resolution and/or in whose case the DEFENDANT OFFICER'S and UNKNOWN CHICAGO POLICE OFFICERS last act or omission of misconduct falls within the a time period of four years prior to the filing of PLAINTIFF'S Motion to File the First Amended Complaint, bring this RICO claim against the DEFENDANT OFFICER and the UNKNOWN CHICAGO POLICE OFFICERS.

**ANSWER:**    Count X of plaintiff's corrected first amended complaint was dismissed by court

order dated April 25, 2008.  (Dkt. #73).

124.    PLAINTIFF and Class Members re-allege Paragraphs 1 - 89 as though fully set forth herein.

**ANSWER:**    Count X of plaintiff's corrected first amended complaint was dismissed by court

order dated April 25, 2008.  (Dkt. #73).

125.    The actions of the DEFENDANT OFFICER and the UNKNOWN CHICAGO POLICE OFFICERS collectively and through a common scheme of extortion and mail fraud, caused the PLAINTIFF and Class Members to suffer a loss to business and property, in one or more of the following forms: loss of U.S. currency from payment for a supposed violation, the towing of their vehicle, court costs, attorney fees, impoundment fees and/or lost wages.

**ANSWER:**    Count X of plaintiff's corrected first amended complaint was dismissed by court

order dated April 25, 2008.  (Dkt. #73).

126.    The predicate acts for this cause of action are demonstrated by the fact that the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS have engaged in the same scheme, as alleged above, on over ten occasions, each occasion in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §1961.

**ANSWER:**    Count X of plaintiff's corrected first amended complaint was dismissed by court

order dated April 25, 2008.  (Dkt. #73).

127.    The aforementioned actions of the DEFENDANT OFFICER and UNKNOWN CHICAGO POLICE OFFICERS were the direct and proximate cause of the violations set forth above.

**ANSWER:**     Count X of plaintiff's corrected first amended complaint was dismissed by court order dated April 25, 2008.  (Dkt. #73).

**Jury Demand**

128.    Plaintiff demands trial by jury.

**ANSWER:**     Defendant Cline admits plaintiff's corrected first amended complaint includes a jury demand.  Defendant Cline denies any liability to plaintiff pursuant to the corrected first amended complaint.

## AFFIRMATIVE DEFENSES

NOW COMES defendant, Philip Cline, through counsel, without prejudice to his denials and all other statements in his answer and elsewhere, for his affirmative defenses to plaintiff's complaint, states as follows:

1.    At all times relevant to the allegations in the complaint, Defendant Cline was a public official exercising discretion in the course of his duties, and he therefore is entitled to qualified immunity.

2.    Defendant Cline is entitled to qualified immunity for his conduct because it was not clearly established that his actions violated plaintiff's constitutional rights.

3.    Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

4.    Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

5.    An award of punitive damages would deprive Defendant Cline of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear

and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

6.     Under the Illinois Tort Immunity Act, Defendant Cline is not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

7.     Defendant Cline is not liable for any of plaintiff's claims because a public employee acting within the scope of his employment is not liable for an injury caused by the act or omission of another person.  745 ILCS 10/2-202.

8.     To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principal that plaintiff has a duty to mitigate those damages.

9.     To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to, police reports and court records, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

## JURY DEMAND

Defendant Philip Cline  respectfully requests a trial by jury.

Dated: May 23, 2008                              Respectfully submitted,


                                                 By: s/ Paul A. Michalik
                                                     One of the Attorneys for Defendant,
                                                     PHILIP CLINE

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Gregory L. Lacey
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2008, I electronically filed the foregoing **Defendant Cline's Answer to Plaintiff's Corrected First Amended Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Tali K. Albukerk
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.676.2100 (telephone)
312.372.7076 (facsimile)
lobh@att.net

Daniel F. Gallagher
Querrey & Harrow Ltd.
174 W. Jackson Blvd.
Suite 1600
Chicago, Illinois  60604-2827
312.540.7000 (telephone)
312.540.0578 (facsimile)


s/ Paul A. Michalik
Paul A. Michalik

CHICAGO\2444971.1
ID\PAM