# EXHIBIT D

Case 1:07-cv-06134   Document 108-5   Filed 07/01/2008   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIMBERLY McDORMAN and JOSEPH )
PIEKEILKO, )
 )
        Plaintiffs, )
 )
 vs. ) No. 05 C 448
 )
THE CITY OF CHICAGO, et al., )
 )
        Defendants. )

    The deposition of SERGEANT MARY CONLEY, called by the Plaintiffs for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Ryan McGrath, Registered Professional Reporter and Notary Public, at 155 North Michigan Avenue, Suite 723, Chicago, Illinois, commencing at 10:16 a.m. on the 24th day of March, A.D., 2008.

1    Q.   I'm having some trouble with my hearing.  So
2  there might be times when I'm going to ask you to repeat
3  yourself.  Okay?  I apologize for that.
4        How long have you worked for the City of
5  Chicago?
6    A.   I've been a Chicago police officer for
7  23 years.
8    MR. NOLAND:  Just to put on the record what we're
9  here for, the Rule 30(b)(6) notice.  The City has
10  designated Sergeant Mary Conley, the witness, in
11  response to the plaintiff's amended component No. 3,
12  30(b)(6) witness from the City knowledgeable as to the
13  techniques seen or practices that the City uses to
14  attempt to predict and/or forecast which officers may be
15  the type of officers that engage in conduct that
16  violates the rules, policies, and/or procedures, i.e.,
17  general orders of the City of Chicago.  The relevant
18  time period for this request is from 1995 to 1-1-05.
19  Thanks.
20  BY MR. HORWITZ:
21    Q.   Okay.  How is it you are somebody who has
22  knowledge relative to the techniques the City uses to
23  predict officer misconduct?
24    A.   The techniques that the City uses is to

JENSEN REPORTING   (312) 236-6936

JENSEN REPORTING   (312) 236-6936
Electronically signed by Ryan McGrath (201-410-093-4895)          60766689-7067-4891-9968-2159e6987467

1  identify members who are engaging in potentially
2  problematic behaviors.  We do that through the
3  behavioral intervention system which is the department's
4  actual early warning system.
5      Q.  How is it that you have knowledge of that?
6      A.  I have been working in the personnel concerns
7  section which is the section that oversees the
8  behavioral intervention system.  For the past 9 and a
9  half years, I've been the actual commanding officer of
10 the section since January 2003.
11     Q.  What are the techniques the City uses in order
12 to attempt to predict which officers might be
13 potentially the type that would violate the rules,
14 policies, and procedures of the City of Chicago?
15     A.  There are several different techniques that we
16 use.  We have an automatic record system that the
17 internal affairs division puts out on a quarterly basis;
18 and in those records will be officers that have received
19 or been identified as fitting the criteria listed in
20 General Order 97-10, which is entitled the behavioral
21 intervention system, as well as we rely on the Office of
22 Professional Standards to let us know when a member has
23 -- is exhibiting a pattern of potentially problematic
24 behavior as well as I have day-to-day contact with

JENSEN REPORTING   (312) 236-6936

JENSEN REPORTING   (312) 236-6936
Electronically signed by Ryan McGrath (201-410-093-4895)                60766689-7067-4891-9968-2159e6987467

1    Q.   Why?
2    A.   I would use it as a backup to ensure -- Once
3  again, as I had said, I would do a comparison. I
4  would -- In case we missed a person, I would use that as
5  an alternative tool to ensure that we get everybody that
6  should be identified. So that would be very useful. If
7  we missed an officer somehow and this program could
8  bring up that officer -- for whatever reason it would
9  fit into their criteria, but not the other criteria that
10 our program uses, I would welcome it with no problem
11 because we may be able to rehabilitate that officer.
12   Q.   And also it could be that an officer isn't
13 reported to your system, your section, for whatever
14 reason but can still be a problematic officer; would you
15 agree with that?
16   A.   There's a possibility that somebody slips
17 through the cracks, yes.
18   Q.   Okay. And if a software system identifies
19 characteristics of individuals that are found in the
20 already existing database for the City of Chicago and
21 red flags those individuals as being the types of
22 individuals that should be in your system based upon
23 your criteria, then you would find that to be a very
24 useful tool; would you agree?

                JENSEN REPORTING   (312) 236-6936

1       MR. NOLAND:  Objection, form and foundation.

2             You can answer.

3  BY THE WITNESS:

4       A.   Yes.

5       MR. HORWITZ:  Okay.  I think it's probably a good

6  idea to take a lunch break because I'm probably going to

7  keep going on.  Take a lunch break for 45 minutes, if

8  you like.  But I'd probably say I have another maybe

9  hour and a half of questioning based upon what she's

10 testified to.

11      MR. NOLAND:  What do you prefer to do?  Go right

12 through?

13      THE WITNESS:  I would prefer to go right through.

14 I have other responsibilities that I have to deal with

15 at my office.

16      MR. HORWITZ:  Well, I need to take a break myself

17 to make sure that I don't start talking with my tongue

18 tied.  So I'd like to take a break for 25 minutes.

19 Okay?

20      THE WITNESS:  Okay.

21               (A short break was had.)

22 BY MR. HORWITZ:

23      Q.   I've asked you questions relative to the

24 effectiveness of the personnel concerns section --