IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDUARDO ALMARAZ, on behalf of himself and others similarly situated, ) ) ) | |
| Plaintiff, ) | No.   07 C 06134 |
| ) | |
| v.   ) | JUDGE HART |
| ) | |
| OFFICER HALEAS, TISA MORRIS, PHILLIP CLINE, UNKNOWN CHICAGO POLICE OFFICERS, and the CITY OF CHICAGO, ) ) ) ) ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE § 1983 CLAIMS[1] AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS**

NOW COMES Plaintiff, by and through his attorneys, Horwitz, Richardson & Baker, and responds to Defendant City of Chicago's Motion to Bifurcate and Stay Discovery and Trial as to Plaintiff's *Monell* claim. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

This is a case in which Plaintiff was falsely arrested and consequently suffered financial loss as a result of an illegal enterprise constructed by Defendant Haleas and others which served to increase Defendant Haleas' personal wealth[2] and generate revenue for the City of Chicago. Plaintiff alleges that Officer Haleas, currently under indictment, has engaged in illegal behavior for many years. (See specific allegations in Pl. Motion to Allow Brainmaker Discovery, Dkt. 108 at p. 2,4 (submitted to this Court *in camera*)).

---

[1] Contrary to the title of Defendant City's motion, Defendant City is moving to bifurcate Plaintiff's *Monell* claim only (not Plaintiff's other § 1983 claims) as that is the only substantive claim brought against the City.
[2] See specifics of financial gain in Plaintiff's Motion to Allow Brainmaker Discovery, Dkt. 108 at p. 4 (submitted to this Court *in camera*).

Plaintiff filed suit against Defendant Haleas claiming federal false arrest and equal protection violations as well as a state law claim of malicious prosecution. Plaintiff also brought a *Monell* claim against the City of Chicago and a supervisory liability claim against Defendants Cline and Morris (hereinafter, "Supervisory Defendants"). Plaintiff's *Monell* claim is particularly important in this case as Haleas has engaged in obvious illegal activity for many years.[3] It has only been through deliberate indifference (and the overall permitting of misconduct) that Haleas has been allowed to stay on the force.

Plaintiff first issued written discovery on Defendants on December 18, 2007. Since that time, extensive motion practice regarding discovery has taken place due to Defendant City's objections and delay tactics. Now, almost seven months after Plaintiff first propounded discovery, Defendant City is pursuing another attempt to avoid having to defend its unconstitutional practices and policies. Defendant City's motion should be denied.

## STANDARD OF REVIEW

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[t]he Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim. Fed. R. Civ. P. 42(b). However, absent some experience demonstrating the worth of bifurcation, "separation of issues for trial is not to be routinely ordered." Advisory Committee Notes to the 1966 Amendment to Fed.R.Civ.P. 42(b). Defendant's Motion is not novel and has been denied by numerous judges in the Northern District.[4]

---

[3] Haleas' criminal conduct has been specifically outlined in Plaintiff's Motion to Allow Brainmaker Discovery. (Dkt. 108). Also, as this Court is aware, Haleas is being criminally prosecuted for, *inter alia,* perjury. Lastly, the State's Attorneys Office has recently filed a motion suggesting that there is yet more criminal activity that shall surface as to Haleas.

[4] *See e.g., Cadiz v. Kruger, et al.,* 2007 WL 4293976 (N.D. Ill. Nov. 29, 2007) (Schenkier, J.); *Johnson v. City of Chicago,* 05 C 6545 (N.D. Ill. May 16, 2007) (Hibbler, J.); *Booker v. City of Chicago,* 2006 WL 4071596 (N.D. Ill. Dec. 15, 2006) (Keys, J.); *Patterson v. Burge,* 03 C 4433 (N.D. Ill. August 2, 2005) (Gottschall, J.); *McLaughlin v.*

**ARGUMENT**

I. **Defendant's Motion To Bifurcate Is Not For A Proper Purpose and Makes Misleading Assertions Regarding Any "Undue Burden"**

It is clear from the procedural history of this case that Defendants' stated reasons for their motion do not "hold water." Defendants' stated reasons for bifurcation are: a) judicial economy, b) avoidance of the additional litigation costs, and c) protection of the individual defendant from prejudice. These stated bases do not conform to Defendant's actions. Defendant's true motives are to protect policy makers and prevent the testimony of those with knowledge of the inner workings of the Defendant Municipality - at all costs.

If judicial economy was the basis for this motion, Defendants' reasoning fails. Judicial economy is not served by extending litigation. If this court bifurcates Plaintiff's *Monell* claim, said claim will be brought at the conclusion of this action, and litigated again, thereby extending the process even further. If avoidance of additional litigation costs were the actual goal for this motion why wasn't this motion along with a proper stipulation brought months ago, or even discussed. Instead, Defendants have chosen to wait until many long hours have been put into motion practice and discovery to act.

First, Defendant argues that it has an "undue burden" to produce "thousands of documents." (Def. Motion at ¶ 5). Defendant City is simply attempting to mislead this Court into believing, without providing an affidavit to this effect, that if *Monell* discovery were to be ordered at this time, Defendant would necessarily be inundated with unmanageable discovery requests. This is not the case. Discovery requests can always be tailored at the discretion of the

---

*City of Chicago,* 04 C 7156 (N.D. Ill. June 14, 2005) (Der-Yeghiayan, J.); *Bond v. Utreras,* 04 C 2617 (N.D. Ill. June 6, 2005) (Lefkow, J.); *Johnson v. City of Chicago,* 03 C 6620 (N.D. Ill. June 30, 2004) (Hart, J.); *Fox v. Tortoriello,* 02 C 2438 (N.D. Ill. Oct. 16, 2003) (Norgle, J.); *Daval v. City of Chicago,* 02 C 7955 (N.D. Ill. March 6, 2003) (Leinenweber, J.); *Waits v. City of Chicago,* 01 C 4010 (N.D. Ill. Sept. 6, 2001) (Hibbler, J.) (collection of cases attached hereto as Exhibit A). *see also, Deocampo v. City of Vallejo,* 2007 WL 1614572, *1 (E.D. Cal. June 4, 2007) (denying defendants' motion to bifurcate the trial and to stay discovery on all *Monell*-related claims).

court. In *Cadiz v. Kruger,* Judge Schenkier gave a thoughtful and detailed explanation on this score. 2007 WL 4293976, *3. Judge Schenkier denied Defendants' motion to bifurcate Plaintiff's *Monell* claim in part because

> [t]he City's assertion of the amount of document discovery that would be added by the *Monell* claims is general at best. The City says it would have to produce "thousands of documents" (Mot., ¶ 7), but that sort of non-specific assertion of burden is routinely rejected as a basis to deny or limit discovery under Fed.R.Civ.P. 26(b)(2)(C)(iii). *See, e.g., In re Aircrash Disaster Near Roselawn, Ind., Oct. 31, 1994,* 172 F.R.D. 295, 307 (N.D.Ill.1997). Such a vague assertion fares no better when a party resorts to it in support of bifurcating a *Monell* claim. To the extent that plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the Court can and will tailor them as necessary, as other courts have done. *See, e.g., Bond,* 2006 WL 695447.

*Id.* (citing to *Bond v. Utreras*, 2006 WL 695447 (N.D. Ill. March 10, 2006)

Furthermore, Plaintiff has already received many of the requisite documents, including City of Chicago Police General Orders, the complaint registers against Defendant Haleas, the 2000 City Council Resolution regarding police discipline and many complaints of misconduct lodged by City Council members. At this stage, Plaintiff requires mainly the complaint registers from the various entities involved.

Second, the Defendant City argues that the individual Defendants will be prejudiced and the jury confused by potential *Monell* issues. Defendant would have us believe that in Plaintiff's *Monell* claim, he alleges a "myriad of unrelated incidents" and that he failed to "connect an alleged illegal policy to this case" thus creating the potential for prejudice to the individual Defendants. (Def. Motion at n. 8). However, Defendant ignores the fact that this Court firmly rejected this argument in its April 25, 2008 Order by stating that Plaintiff has sufficiently alleged that certain customs and practices of the City of Chicago motivated Defendant Haleas in this

4

case. (Order, Dkt. 73, at p. 13)[5] Furthermore, any confusion of the issues can be readily cured with proper jury instructions and/or motions *in limine.*

Defendants' actions speak to the true motivation behind this motion: stopping discovery and preventing Plaintiff's counsel from obtaining potent evidence about the inner workings of the Defendant City, which should not be allowed by this Court.

**II.     Bifurcating *Monell* Discovery Is Inefficient Because Discovery Related To Plaintiff's *Monell* Claim Is Similar to His Supervisory Liability Claim and To Allegations of Multiple Plaintiffs**

Defendant argues that bifurcation of *Monell* discovery would promote judicial economy and eliminate potentially unnecessary litigation expenses. (Def. Motion at ¶¶ 6, 7). However, it is overlooking obvious reasons why this proposition will not hold true: 1) Plaintiff has alleged supervisory liability as to the Supervisory Defendants[6] which will necessarily require discovery into the City's policies, practices and customs in any case and 2) because there are multiple potential Plaintiffs,[7] their many factual scenarios demonstrate prior situations and patterns to analyze, which is similar to *Monell* discovery.

In this case, Plaintiff has alleged that the Supervisory Defendants were aware of widespread violations of police officers and of the failure of OPS to adequately investigate or discipline those officers. Plaintiff further alleged that these violations and failures were the moving forces behind Defendant Haleas' conduct. Had the City of Chicago engaged in proper investigations and/or analysis of its police officers, many officers, including Officer Haleas, would not have been able to continue their habitual pattern of abuse.

---

[5] That Defendant ignores the "law of the case" before this Court demonstrates the unbelievability of Defendant's position as well as the tenacious zeal by which the City seeks to hide its own misconduct.
[6] Defendant asserts that Defendants Cline and Morris "have only been sued in their capacities as municipal officials" (Def. Motion at n. 2), however, to be clear, Plaintiff has brought claims against Cline and Morris in their individual capacities and this Court has recognized as such. (Order, Dkt. 73 at p.16).
[7] Plaintiff has alleged that over 45 people claim misconduct attributable to Haleas. (See First Corrected Amended Complaint, Dkt. 30)

5

Supervisory liability discovery, therefore, will focus on what knowledge the Supervisory Defendants had regarding particular problems or persons within the department and the causal relationship of those problems to the incident involving Plaintiff. Plaintiff will need to review the Supervisory Defendants' personnel records as well as the departments' internal affairs files and procedures in order to prove that the Supervisory Defendants should have taken some action with the regard to the files other than the response which was made – that they should have credited the complaints and disciplined or that the complaints should have been investigated more vigorously. Plaintiff will also look at criminal conduct undertaken by various officers and show how the pattern attributable to said conduct contributed to the pattern and practice violative of *Monell.*

Because Plaintiff has alleged supervisory liability along with his *Monell* claim, bifurcation would be extremely inefficient for the parties and this Court. Even if this Court were to grant Defendant's motion, Plaintiff would still need to prove that the City had a violative custom, policy or practice that caused him to suffer the alleged constitutional violation as the necessary predicate for establishing the liability of the supervisory defendants. It would be virtually impossible to prove that the Supervisory Defendants had knowledge of these unconstitutional practices and customs without conducting discovery as to exactly those practices and customs. *See* Order, Dkt. 73 at p.16 ("A municipal official may be found individually liable based on a *municipal custom or practice* for which he or she is responsible and of which he or she knew.") (emphasis added); *see also, Id.* ("the supervisor must facilitate, approve, condone, or deliberately ignore the *practice* [of unconstitutional conduct by subordinates] in order to be liable.") (quoting *Anderson v. Cornejo,* 284 F.Supp. 2d 1008, 1029 (N.D. Ill. 2003) (emphasis added).

6

The overlap between supervisory liability discovery and *Monell* discovery is clear. For example, as argued above, Plaintiff will need to obtain Chicago Police Department's internal review complaints and procedures to determine their adequacy. *See Black v. Stephens,* 662 F.2d 181 (3d Cir. 1981) (holding that if a department's internal review procedures are designed to cover up acts of misconduct and are inadequate to inform supervisors of the wrongdoing of subordinates, the supervisors may be held liable). As this Court is aware, Plaintiff also requests evidence related to the Brainmaker program. With such evidence, Plaintiff will be able to demonstrate a pattern of deliberate indifference by showing that such a program that would have identified Defendant Haleas as "at risk" was intentionally not implemented by the Defendants City and Supervisors. *See* Pl. Motion to Allow Brainmaker Discovery at p. 5 (submitted to this Court *in camera*).

Plaintiff may also wish to hire an expert (and furnish him/her with the procedures and complaints files) to testify concerning the Department's internal review procedures and whether the supervisor's review of complaint files was appropriate. The expert will need to analyze, *inter alia,* whether the investigation of complaints was incomplete, whether citizens were discouraged from pursuing their complaints, whether the evidence was sufficient to compel closer supervision or discipline of the officer in question, but nothing was done, etc. The expert may then offer the opinion that, in the absence of appropriate supervision, officers will grow to feel that their actions are not monitored and will, in predictable ways – including the way in which Plaintiff was injured – exceed the limits of proper police conduct. *See also, Gutierrez-Rodriguez v. Cartegena,* 882 F.2d 553, 582 (1st Cir. 1989) (after reviewing complaints against the defendant officer as well as the police department's system of reviewing complaints, expert concluded that

7

defendants were responsible for constructing "a disciplinary system that was going through the procedural motions without any real objective of finding the truth.").

In addition, because supervisors can be held individually liable for punitive damages, *see Smith v. Wade,* 461 U.S. 30 (1983), discovery into departmental policies is required. It is well-established that punitive damages are assessed in an action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. Consequently, the supervisory defendants' disregard of known rules is probative of punitive damages, and as such, the various policies of the Defendant City are indicative of the state of mind of the supervisory defendants as to proper procedure. Likewise, the unconstitutional customs and practices of the City of Chicago that the supervisory defendants may have disregarded, such as a faulty disciplinary system that covered-up conduct such as that of Defendant Haleas, are also probative of punitive damages.

Finally, there is no significant difference between the claims against the supervisory defendants and the *Monell* discovery because, in this case, since the Supervisory Defendants likely have final policy-making authority, evidence of their actions alone could be sufficient to prove municipal liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-483 (1986).

Also, as argued above, discovery as to the multiple Plaintiffs in this case require *Monell*-type discovery in that many factual scenarios, complaints and investigations will need to be analyzed, thus establishing a pattern and practice. Therefore, bifurcation of *Monell* discovery and trial will promote *in*efficiency as it may require two trials using virtually the same evidence.

### III.     Defendants' Offered Stipulation Is Ambiguous, Flawed And Does Not Moot Plaintiff's *Monell* Claims

In addition to seeking to bifurcate *Monell* discovery and trial, Defendants seek to avoid Plaintiff's *Monell* claim by offering a stipulation that purports to moot the *Monell* issues

altogether.  This stipulation, however, is legally meaningless or of such little value as to be detrimental, does not promote judicial economy, and does not provide the same relief that Plaintiff will achieve if he prevails at trial.  Through its "stipulation" to "agree[ ] to entry of judgment against the City for compensatory damages" . . . if any City employee is found to have violated plaintiffs' constitutional rights, *while failing to admit to Plaintiff's* Monell *allegations* and declining to waive any other defenses it may have (Def. Motion, Ex B at ¶ 3), Defendants are clearly attempting to moot Plaintiffs' *Monell* claims without admitting liability – a maneuver that should not be allowed by this Court.

### a. The "Stipulation" Is Ambiguous and Fatally Flawed

Defendant argues that entry of its "stipulation" would "avoid 'the waste of the valuable time and resources of the court." (Def. Motion at ¶ 7) However, the ambiguities inherent in Defendant's stipulation dictate otherwise.

For example, the "stipulation" is unclear as to what would happen if a jury determines that constitutional violations occurred but the Individual Defendants are found to be qualifiedly immune from liability.  Will the Defendants still agree to indemnify?   Furthermore, Defendant City does not state that it agrees *irrevocably* to entry of judgment, implying that it could withdraw its agreement at any time.  Ambiguities such as this, and inconceivable others, present unnecessary challenges to the parties and this Court.  *See, e.g., Nessel v. City of Northlake,* 1994 WL 685508, *2 (Dec. 5, 1994 N.D. Ill.) (denying Defendants' motion to bifurcate the trial because of the possibility that the individual defendants may prevail on their qualified immunity defense requiring two trials of same evidence);  *Medina v. City of Chicago,* 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (denying motion to sever trials of officers and city because of "duplicative" nature of two trials in the event that individual defendants prevail on qualified immunity

defense); *Wawryniuk, et al. v. City of Chicago, et al.,* No 03 C 4291 (April 20, 2004 N.D. Ill.) (granting City of Chicago's motion to bar discovery of policy issues but holding that "if that individual officers prevail on their defense of qualified immunity, Plaintiff's case against the City will proceed").

Indeed, after allowing the stipulation to be entered, other judges have expressed frustration and regret. *See Booker,* 2006 WL 4071596 at *5 (citing *Evans v. City of Chicago,* 04 C 3570 (N.D. Ill. Aug. 18, 2005) (quoting Judge Coar: "I don't understand what the stipulation does"); *Lopez v. City of Chicago,* 01 C 1823 (N.D. Ill. Oct. 27, 2004) (explaining that Judge Der-Yeghiayan accepted the City's stipulation but later "regretted having done so" after parties became embroiled in a lengthy dispute over the legal significance and meaning of the stipulation)). Instead of "promoting judicial economy," the waiver actually creates more potential for protracted litigation and unmanageably complex litigation. See *Patterson v. Burge,* 03 C 4433, August 2, 2005 Order at p.7 (Ex. A, p. 14).

### b. 745 ILCS 10/9-102 Renders Defendants' Stipulation Illusory.

Interestingly, through its "stipulation," Defendants are offering that which Illinois law already provides but fails to fulfill what the Supreme Court authorized in establishing distinct municipal liability in civil rights cases. In Illinois, Defendants are required to indemnify judgments against its police officers for civil rights violations. *See* 745 ILCS 10/9-102. However, this statute does not let Defendants off the hook. Despite the existence of an indemnification statute, *Monell* and its progeny teach us that there is still a live controversy requiring the adjudication of municipal liability. *See, e.g., Jones v. Chicago,* 856 F. 2d 985, 995-96 (7th Cir. 1988) (Posner, J.) (upholding jury's *Monell* verdict against the City while recognizing that the Plaintiff would collect his judgment whether or not the City is liable);

10

*Medina,* 100 F.Supp.2d at 896 (rejecting City's argument that indemnification statute served to moot Plaintiff's *Monell* claims and explaining that "there are . . .non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer.")

In fact, because the stipulation states that Defendants deny any constitutional violation and that it does not waive any defenses and retains its right to post-trial motions and appeal (Def. Motion, Ex. B at ¶ 3), in effect, Defendants are actually not agreeing to entry of judgment against it at all. Defendants cannot on the one hand agree to a judgment against it, yet on the other deny *Monell* liability and maintain its unnamed defenses. *See Booker,* 2006 WL 4071596 at 5 ("The stipulation is not quite an agreement to have judgment entered against the City; instead it merely waives the City's right *not* to have liability imposed against it.") Indeed, it is illogical that Plaintiff be required to forego his *Monell* claim when the Defendant is unwilling to accept liability and judgment under *Monell*.

**IV.     Policy Makers who Cause the Injuries Should be Held Accountable**

*Monell* allows a municipality to be held liable for constitutional deprivations by individual defendants if those deprivations were caused by the "policy, custom, or practice" of the municipality or one with "final policy making authority"; indeed, it does more that just hold open the deep pockets of a municipality, it apportions blame on those who truly do harm. In this case, it is alleged that Plaintiff suffered injury because the City of Chicago fails to adequately investigate and discipline its officers who commit false arrest and who falsify police reports, thereby engendering a code a silence to cover-up for this type of lawless conduct. Specifically, a corrupt officer has been allowed to steal, cheat and lie for many years without fear of discipline. Now, the policy makers who support this conduct are attempting to avoid responsibility for their

11

actions by bifurcating the claims against them in the hope that after Plaintiff recovers from the individual Defendant Officer he will have no ability or little incentive to proceed for nominal damages or a finding that the Defendant Municipality did indeed cause his injuries.

Granting bifurcation would let the Defendant City off of the hook and would allow it to escape responsibility. The City of Chicago, through its officers, has a long history of public corruption and allowing *Monell* discovery and trial to proceed will force those policy makers and administrators to speak their misdeeds under oath and before a jury. Granting bifurcation, however, allows these wrongdoers to escape scrutiny until Plaintiff is unable or disinclined to prosecute his claims. That is exactly what Defendant City is attempting to do with its proposed "stipulation:" continuing to avoid scrutiny, which should not be permitted by this Court.

**V.     Defendants' Stipulation Denies Plaintiff His Full Relief at Trial.**

The Supreme Court, in *Carey v Piphus,* 435 U.S. 247, 98 S.Ct. 1042 (1978) held that a case or controversy exists even where Plaintiff has had a fundamental constitutional right violated but can only be awarded nominal or symbolic damages. In *Carey*, Plaintiff, a high school freshman was suspended from school for allegedly violating the school's policy against the use of drugs. Plaintiff sued the school under 42 U.S.C. §1983 claiming that he had been suspended without due process and sought, *inter alia*, $3,000 in actual and punitive damages. The Defendants claimed that the suspensions were justified and thus Plaintiff did not suffer any damages from any violation of his due process right. However, the Supreme Court held that due process was such an important and absolute right, it was actionable for nominal damages.

The Ninth Circuit in *Larez v. City of Los Angeles* 946 F.2d 630 (9th Cir. 1991) has expanded upon *Carey* and held that a violation of the right to freedom from unreasonable searches and seizures and right to bodily integrity were absolute rights actionable for nominal

12

damages against a municipality via a *Monell* theory of liability. In *Larez*, Plaintiff's brought a §1983 action against police officers, the police chief and the municipality for unreasonable search and seizure as well as violations of the right to bodily integrity. After prevailing against the officers, the trial proceeded against the municipality and chief. The Appellate Court held that the right to be free from unreasonable searches and seizures and the right to bodily integrity are of a similar stature to the due process "absolute right" and thus were actionable even if only for nominal damages. *Id.* at 640-41.

In *Ruvalcaba v. City of Los Angeles* 167 F.3d 514, 523 (9th Cir. 1999), the Ninth Circuit once again held that a Plaintiff "may still recover nominal damages for a 'separate and distinct [constitutional] wrong' irrespective of whether he is entitled to actual damages for that wrong." The Plaintiff in *Ruvalcaba* filed a §1983 action against, *inter alia*, a police officer for excessive force for kicking him and a municipality for an allegedly unconstitutional dog-bite policy. The Appellate Court held that while no further compensatory damages were available to Plaintiff he still could proceed for nominal damages for being subjected to an unconstitutional policy of the municipality under a *Monell* theory. *Id.* at 524.

As argued above, perhaps the most problematic aspect of the "stipulation" is it denies Plaintiff the relief he would otherwise receive at trial, namely a finding of fact. When Plaintiff prevails at trial he will have a finding of fact that it was the actions of the named Defendant, and the policies, practices and customs of the City of Chicago that caused him to be falsely arrested and maliciously prosecuted. Given the seriousness of Plaintiff's *Monell* claims and the importance of *Monell's* deterrent effects, mooting Plaintiff's claims by failing to follow *Larez* and *Ruvalcaba* would be a dramatic injustice.

If this case is bifurcated, and this stipulation entered by this Court, over Plaintiff's objection, Plaintiff will be denied the relief requested in his complaint. Though his fundamental Constitutional rights were violated, and he had the right to recover damages (nominal monetary damages, plus a finding of fact proving unconstitutional practices and policies), he would be denied his day in court.

Plaintiff is master of his complaint and may plead in any legally cognizable fashion. See *Avitts v. Amoco Production Co.,* 53 F.3d 690, 693 (5th Cir.1995) and *Christiason v. Merit Texas Properties, L.L.C.* 393 F.Supp.2d 435, (N.D.Tex.,2005). Plaintiff must complete *Monell* discovery before he can decide how to proceed at trial. Bifurcating *Monell* effectively estops Plaintiff from prosecuting his claims as he deems fit, and violates a fundamental and long standing precept of American Jurisprudence; as such, bifurcation must be denied.

## VI.     *Monell* Deters Future Misconduct.

There are other non-economic benefits to conducting *Monell* discovery and obtaining a verdict as to the liability of the City. Indeed, deterrence of future misconduct is always a proper goal when pursuing tort liability and of course §1983 claims are a form of tort liability. *See, e.g. City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 727 (1999); *Heck v. Humphrey,* 512 U.S. 477, 483 (1994). In this case,

> The ability to promote an individual official's "scrupulous observance" of the Constitution is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

*Medina,* 100 F. Supp. 2d at 896-97 (quoting *Amato v. City of Saratoga Springs,* 170 F.3d 311, 316 (2d Cir. 1999).

Liability of municipalities is crucially important even in cases where Plaintiffs are not ultimately entitled to compensation as the Supreme Court held in *Owen v. City of Independence,*

> [§ 1983] was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations . . .The knowledge that a municipality will be liable for all its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

445 U.S. 622, 650 (1980) (holding that a municipality could be held liable for its unconstitutional policies despite finding of qualified immunity for individual defendants); *see also, Amato,* 170 F.3d at 317 (holding that where the plaintiff received only nominal damages, plaintiff was entitled to pursue a claim under *Monell* "even in the absence of actual compensable injury");

Clearly, the ability to hold a municipality liable through the actions of its policy makers is an important part of our civil rights and notions of justice; bifurcating and thus making these rights so difficult or impossible to pursue frustrates or even extinguishes these rights.

## VII.    **Bifurcation Is Not Merited In Every Case.**

Many cases that allege *Monell* claims should be bifurcated or a stipulation should be entered into by the parties for the sake of judicial economy, expedience and/or avoiding prejudice, but bifurcation in the instant case would serve none of these purposes. Instead it would at best inexorably delay the final resolution of this matter, cause inefficiencies for this Court and the parties involved and most likely simply serve to protect the corrupt.

Considering the wealth of opinions on both sides of the issue including those cited by Plaintiff, *supra,* and Defendants (Def. Motion at n. 13) this Court will not significantly alter the legal atmosphere by denying bifurcation in the instant case, and, in following law and equity, should deny bifurcation. Bifurcation of the instant case will simply shield the blameworthy and deny Plaintiff the full legal redress to which he is entitled.

15

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Bifurcate.

                              Respectfully Submitted,

                              /s/ Tali K. Albukerk
                              One of the Attorneys for Plaintiff

HORWITZ, RICHARDSON, & BAKER, LLC.
20 S. Clark Street, Suite 500
Chicago, IL 60603
(312) 676-2100