EXHIBIT A

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

Cadiz v. Kruger
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Yvonne CADIZ, as Mother and Guardian of Michael Cadiz, a minor, Plaintiff,
v.
Michael KRUGER, et al., Defendants.
**No. 06 C 5463.**

Nov. 29, 2007.

Christopher Rudolf Smith, Jared Samuel Kosoglad, Law Office of Christopher R. Smith, Chicago, IL, for Plaintiff.
Angela Kowalski Zeman, Megan Kelly McGrath, City of Chicago, Department of Law, Chicago, IL, Elizabeth A. Ekl, James Gus Sotos, John H. Boyd, James G. Sotos & Associates, Ltd., Itasca, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

SIDNEY I. SCHENKIER, United States Magistrate Judge.
**\*1** This lawsuit arises out of an encounter on May 20, 2006 between Michael Cadiz, who was then was 12 years old, and officers of the Chicago Police Department who allegedly caught Michael and a friend defacing a garage with markers. Plaintiff (suing as Michael's mother and guardian) alleges that one or more of the defendant officers knocked Michael off his bike, severely beat and verbally abused him and then attempted to conceal the evidence of that misconduct, and wrongfully arrested him. Based on these allegations, plaintiff has asserted claims against three individual police officers under 42 U.S.C. § 1983 for excessive force (Count I) and unlawful search and seizure (Count II); a state law claim against the defendant City of Chicago seeking statutory indemnity for any compensatory damages assessed against the police officers on

the Section 1983 claims (Count IV); and state law claims for battery, false arrest, and intentional infliction of emotional distress against both the defendant police officers and the City (Counts V-VII).

The motion currently pending before the Court, however, does not directly involve any of those claims, but instead centers on plaintiff's attempt to establish direct Section 1983 liability against the City under the doctrine announced in *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, the Supreme Court held that while a local governmental body cannot be subject to vicarious liability under Section 1983, direct liability may be established against a unit of local government under Section 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ..."*Monell,* 436 U.S. at 694. *See also Estate of Sims v. County of Bureau,* --- F.3d ----, No. 01-2884, 506 F.3d 509, 2007 WL 3036752, \* 3 (7th Cir. Oct.19, 2007) (citations omitted) ("Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers' ").

In this case, plaintiff asserts a direct Section 1983 claim against the City under *Monell,* alleging that the defendant officers' unlawful search and seizure and use of excessive force were caused, in part, by various customs, policies and practices of the City (Count III). The City has filed a motion to bifurcate the *Monell* claim from the rest of the case, and to stay discovery and trial of the *Monell* claim (doc. # 78). By this motion, the City seeks to put completely on hold the discovery and adjudication of the *Monell* claim until resolution of the Section 1983 claims against the individual officers (Mot., ¶ 2).

In fact, the City's motion seeks far more than this.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

The City's goal in filing this motion is to prevent any merits adjudication of the *Monell* claim, whatever the outcome of the Section 1983 claims against the individual defendants. The City argues that if plaintiff does not establish Section 1983 liability against the officers, then there can be no *Monell* claim (Mot., ¶ 5), a proposition that is well settled. *See Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). The City further suggests that even if plaintiff does establish Section 1983 liability against the officers, trial of the *Monell* claim will be unnecessary (and thus should not proceed) because it can provide plaintiff with no additional compensatory damages (*Id.,* ¶ 10).[FN1]

> FN1. The City somewhat clouds its intentions by elsewhere in the motion stating that bifurcation will not "foreclos[e] unnecessarily the opportunity [for plaintiff] to establish the City's liability on the *Monell* claims" (Mot., ¶ 8), thus implying that the *Monell* claim would proceed if plaintiff first established liability against one or more officers on a Section 1983 claim. However, during a proceeding in open court on November 13, 2007, the City was quite direct about its intentions. At that time, the City made clear that the purpose of its motion was to avoid any litigation of the *Monell* claim even if plaintiff established Section 1983 liability against the officers:
>
> THE COURT: .... Now, what you're saying is that even if [plaintiff] demonstrated the underlying individual claim that you should never try the Monell claim.
>
> MS. EKL: Correct.

THE COURT: Isn't that the sense of your motion?

MS. EKL: Right.

THE COURT: So that's really not a bifurcation, is it? To bifurcate is a matter of sequencing.

* * * *

MS. EKL: .... Essentially, we are asking to dismiss it and that's really what we're asking, you're correct.

(11/13/07 Tr. at 8, 9).

**\*2** Plaintiff opposes the motion, and has filed a brief setting forth her position (doc. # 80). After considering the arguments and authorities offered by the parties, the Court denies the City's motion. We advised the parties of this ruling in open court on November 28, 2007. In this opinion, we explain more fully the reasons for our decision.[FN2]

> FN2. On March 26, 2007, the case was assigned to this Court for all proceedings, including the entry of final judgment, pursuant to the consent of the parties as authorized by 28 U.S.C. § 636(c) (doc.45, 49).

## I.

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or of any number of claims ...."Fed.R.Civ.P. 42(b). Whether to bifurcate the discovery or trial of various claims is a decision committed to the trial court's discretion.*McLaughlin v. State Farm Mut. Auto. Inc. Co.,* 30 F.3d 861, 870 (7th Cir.1994).

The City's motion here is not novel, but rather is one that the City has made (under various labels) in a number of cases within this district during the past several years. As each side has pointed out (Mot., ¶ 5; Pl.'s Resp. at 10 and Ex. 2), there is no

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

shortage of authority within this district both granting and denying motions by the City to bifurcate *Monell* claims. *See also Elrod v. City of Chicago,* 06 C 2505 & 07 C 203, 2007 WL 3241352, * 1 and nn. 2-3 (N.D.Ill. Nov.1, 2007) (collecting cases). While (as we discuss below) some of these decisions reflect certain philosophical views about the value of *Monell* claims, these decisions in the main reflect a case-specific assessment of the benefits and detriments of bifurcation. That much is evident from the fact that the same judges have both granted and denied requests by the City of Chicago to bifurcate the discovery and/or trial of *Monell* claims from other claims. *Compare Booker v. City of Chicago,* No. 04 C 6371, 2006 WL 4071596 (N.D.Ill. Dec, 15, 2006) (Keys, M.J., recommending grant of bifurcation) *and Bond v. Chicago Police Officers, et al.,* No. 04 C 2617, 2006 WL 695447 (N.D.Ill. Mar.10, 2006) (Keys, M.J. denying bifurcation); *compare Wawryniuk v. City of Chicago,* No. 03 C 4291 (N.D.Ill. Apr. 30, 2004) (minute order, doc. # 34) (St. Eve, D.J., granting bifurcation) *and Kasper v. City of Chicago,* No. 04 C 1041 (N.D.Ill. Sept. 2, 2004) (minute order, doc. # 23) (St. Eve, D.J., denying bifurcation).

In this case, the City argues that placing the discovery and trial of the *Monell* claim on hold will advance the interests of all the parties and of the judicial system because: (1) the City will be protected from "potentially unnecessary litigation expenses"; (2) the individual defendants will be protected from "undue prejudice"; (3) the plaintiff's interest in "expediting trial of his constitutional claims" against the individual defendants will be protected, "without foreclosing unnecessarily the opportunity to establish the City's liability on the *Monell* claims"; and (4) the Court's interest will be served by promoting judicial economy (Mot., ¶¶ 8-9). We examine each of these arguments in turn.

### A.

**\*3** The City argues that bifurcation is necessary to protect it from the substantial cost of conducting *Monell* discovery, which under *Heller* will prove unnecessary if plaintiff cannot establish a Section 1983 claim against one or more of the defendant officers. In aid of this argument, the City points to the broad scope of plaintiff's *Monell* claim (Mot., ¶ 6), and predicts that discovery of that claim "will be voluminous and will cause discovery to stretch well into next year"(*Id.,* ¶ 7). For her part, plaintiff states that the City exaggerates the scope of the *Monell* discovery, that there is substantial overlap between discovery of the individual and *Monell* claims, and that pursuing *Monell* discovery in tandem with individual discovery will not greatly delay the progress of the case (Pl.'s Resp. at 6-10). On balance, we conclude that plaintiff has the better of this argument.

To be sure, the City is correct that *Monell* discovery in this case will not perfectly overlap with discovery of the individual claims. That is inevitable with any *Monell* claim: while an individual Section 1983 claim focuses on the conduct of the individual officers, a *Monell* claim looks more broadly to the customs, policies or practices that are alleged to contribute to the individual misconduct. *See Medina v. City of Chicago,* 100 F.Supp.2d 893, 894 (N.D.Ill.2000). As a result, the presence of a *Monell* claim typically will expand the scope-and thus the cost-of discovery beyond that which would be relevant in a case involving only individual Section 1983 claims. Thus, bifurcation does carry the possible benefit of avoiding those costs in the event that plaintiff ultimately is unable to establish liability on a Section 1983 claim against one or more of the officer defendants.

But, if that fact alone were sufficient to require bifurcation, then bifurcation would be automatic and not a matter of discretion (which it is not), and courts always would bifurcate *Monell* claims (but they do not do so). In this case, we are not persuaded that the benefits of deferring, and potentially avoiding, the added scope and cost of *Monell* discovery are sufficient to outweigh the costs that would be incurred through bifurcation.

Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

The City's assertion of the amount of document discovery that would be added by the *Monell* claims is general at best. The City says it would have to produce "thousands of documents" (Mot., ¶ 7), but that sort of non-specific assertion of burden is routinely rejected as a basis to deny or limit discovery under Fed.R.Civ.P. 26(b)(2)(C)(iii).*See, e.g., In re Aircrash Disaster Near Roselawn, Ind., Oct. 31, 1994,* 172 F.R.D. 295, 307 (N.D.Ill.1997). Such a vague assertion fares no better when a party resorts to it in support of bifurcating a *Monell* claim. To the extent that plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the Court can and will tailor them as necessary, as other courts have done. *See, e.g., Bond,* 2006 WL 695447.

**\*4** The City also states that *Monell* discovery will require it to defend against expert witnesses, to conduct discovery into other claims of misconduct not involving the individual defendants, and to produce policy witnesses for deposition (Mot., ¶ 7). We have no doubt that pursuing the *Monell* claim will increase the scope of discovery, a point that plaintiff does not dispute (Pl.'s Resp. at 5). But, we are not persuaded that the burden imposed by *Monell* discovery in this case would be as overwhelming as the City claims.

At least one of the two expert witnesses identified by plaintiff on the *Monell* claim is well-known to the City, as he apparently has rendered opinions in two other cases involving *Monell* claims against the City (*Id.,* ¶ 7 n. 3). We would be surprised if the City has not already, in one or both of the other cases, conducted discovery (formal or informal) into the basis for the expert opinion. Moreover, the City does not disclose whether it has deposed this expert before; if so, that would lessen the burden of the City's efforts to do so here.

As for the need to produce policy witnesses for deposition here, the parties have identified 12-13 witnesses whom plaintiff has disclosed as having information to the *Monell* claim (Mot., Ex. D (Third Am. Rule 26 Discl); *see also* 11/13/07 Tr. at 6).

But, in our judgment, this additional *Monell* discovery would not transform an otherwise small case into a large one. Plaintiff here asserts five individual causes of action (two under Section 1983 and three under Illinois law) against three officers. Discovery in this case is proceeding simultaneously with discovery in a parallel suit against the same officers who are defendants here, which has been brought by a teenager who was with Michael Cadiz when the alleged events occurred, and who also allegedly was beaten. *Cardenas v. Ferraro,* 07 C 475 (N.D.Ill.). There likely will be substantial discovery into other acts by one or more of the defendant officers (*see* Pl.'s Resp., Ex. 1), to attempt to develop evidence that may be admissible under Fed.R.Evid. 404(b). Indeed, plaintiff's Rule 26(a)(1) disclosure identifies nearly 100 potential witnesses, including 18 doctors from seven different medical facilities.

Viewed against this backdrop, we are not persuaded that the 12-13 witnesses who would speak to the *Monell* claim dramatically expands the scope of the case from what it otherwise would be. That is particularly so because only a few of those witnesses have been identified as relevant solely to the *Monell* claim. The vast majority of these 12-13 witnesses have been identified as relevant to both the *Monell* and the individual claims. For those witnesses who would speak to both claims, bifurcation would lead to the possibility of requiring them to sit for multiple depositions, which likely would increase the cost of the depositions to the parties and which surely would be less convenient for the witnesses.

**\*5** That leads us to the observation that a stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date. In a case where *Monell* discovery would overwhelm an otherwise small case, it might be prudent to indulge that assumption because, if the assumption proved correct, the benefits of deferring that discovery would be substantial. But, this is not such a case. Discovery in this case will be substantial

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

with or without discovery into the *Monell* claim. And, if the *Monell* claim is ultimately addressed on the merits, the City's proposal to defer discovery and trial of the *Monell* claim until after the individual claims are decided would create additional costs and inefficiencies (which we discuss below) without achieving any offsetting benefit.

Thus, we read the City's argument to be that the benefits of deferring *Monell* discovery would not be speculative, because the *Monell* claim never will be addressed on the merits.[FN3] Accepting that proposition would require that we make one of two other assumptions. We could assume that plaintiff will fail to establish a Section 1983 claim against one or more officer defendants. The City's motion does not speak at all to the merits of the individual Section 1983 claim or explain why we should predict the failure of plaintiff's individual claims, and thus we have no reason to conclude that plaintiff's individual Section 1983 claims will fail.[FN4] Failing that assumption, we would have to assume that even if plaintiff succeeds on the his individual Section 1983 claims, the *Monell* claim will never be allowed to proceed because it can add no compensatory relief to that victory. As we explain below, that is not an assumption we are willing to make.

> FN3. The City has acknowledged that its request for bifurcation was not "on the basis that discovery has shown that there is no Monell claim to be had" (11/13/07 Tr. at 9).

> FN4. During proceedings on November 28, 2007, the parties indicated that while the City may seek summary judgment on plaintiff's search and seizure claim, it does not plan to do so on the excessive force claim against the individual officers. Thus, we do not have a situation where discovery has shown that the individual Section 1983 claims appear to be doomed, thus rendering it unlikely that plaintiff could establish a necessary element for the *Monell* claim.

To summarize, we are not persuaded that, given the overall scope of the case, the burden and cost of *Monell* discovery is as great as the City urges; or that the benefits to be achieved by deferring *Monell* discovery are as certain as the City suggests; or that, on the facts of this case, those benefits would significantly outweigh the inefficiencies that would result from pursuing phased discovery. We therefore do not find that the City's understandable desire to defer, and potentially avoid, the cost of *Monell* discovery weighs heavily in favor of the bifurcation that the City seeks here.[FN5]

> FN5. That conclusion is not an endorsement of the scope of *Monell* discovery that plaintiff seeks. The City attached to its motion several discovery requests issued by plaintiff that include requests for certain *Monell* discovery (Mot., Exs.A-C), but did not identify any particular requests that it claims are irrelevant to the *Monell* claims or that it claims would impose undue burden and cost under a Rule 26(b)(2)(C)(iii) analysis. Our review of the discovery requests suggests that there is room to narrow certain of them. But, before passing on that question, we will require the parties to resort to the meet and confer process under Local Rule 37 .2 to see if they are able to reach agreements on the scope of the requests.

**B.**

The City argues that bifurcation would protect the individual defendants from undue prejudice that would result from "broader and extraneous evidence regarding the City's customs, policies, and practices for, among other things, addressing police officer misconduct" (Mot., ¶ 8). This argument focuses on potential trial prejudice, and not on any prejudice to the officer defendants from pursuing *Monell* discovery. And with good reason: we see no prejudice to the defendant officers were *Monell* discovery to proceed simultaneously with discovery on the individual claims.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**\*6** As for the specter of unfair trial prejudice, we note that "our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others-even in criminal cases, where a person's liberty is at stake."*Medina v. City of Chicago,* 100 F.Supp.2d 893, 897 (N.D.Ill.2000). The fact that a unitary trial would expose jurors to evidence relevant to the *Monell* claim and not to the claims against the individual officers does not automatically mean that bifurcation is in order. *See Elrod,* 2007 WL 3241352, \* 7 ("Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings in limine, and limiting instructions").

There are circumstances in which bifurcation of the trial of individual and *Monell* claims is appropriate. But, at this stage, we cannot tell if this is such a case. *Monell* discovery has not yet been fully produced. Thus, "neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the *Monell* claim or just how prejudicial that evidence might actually be to the officers."*Medina,* 100 F.Supp.2d at 897. Without that information, the Court cannot evaluate the extent of prejudice that might be created by a unitary trial, or the effectiveness of measures short of bifurcation, or whether the threat of unfair prejudice outweighs the inefficiencies of proceeding in two trials (which, as we discuss below, would be substantial under the City's bifurcation proposal).

For these reasons, we conclude that the claim of unfair prejudice to the individual defendants does not weigh in favor of the City's motion for bifurcation.

### C.

We next consider the City's argument that bifurcation will promote plaintiff's interest in "expediting trial of his constitutional claims" against the individual defendants "without foreclosing unnecessarily the opportunity to establish the City's liability on the *Monell* claims" (Motion, ¶ 8). Plaintiff's op-

position to the bifurcation motion makes plain that she disagrees with the City's assessment of what is in her best interest. And, we confess to some skepticism whenever one party to a lawsuit opines about what judicial ruling would be in the opposing party's best interest.

That said, we are not persuaded that bifurcation will expedite the trial of the case. As of now, no trial date has been set. Fact discovery on the individual claims has not yet been completed, and expert discovery will follow after that. Moreover, during proceedings in Court on November 28, 2007, the parties indicated that the City may seek summary judgment on some (but not all) of plaintiff's claims. In these circumstances, we consider it unlikely that proceeding with *Monell* discovery along with other discovery will materially delay the trial of the matter.

In any event, a plaintiff has the right to select the claims she wishes to pursue, so long as those claims state legally viable causes of action and raise live fact issues for trial. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002) ("plaintiff is master of the complaint"). Plaintiff had the choice of pleading only individual claims, or to additionally plead a *Monell* claim. Plaintiff opted for the latter course, thus making a choice that many plaintiffs eschew. Many (indeed, in our observation, most) plaintiffs plead excessive force or other claims of alleged police misconduct without adding *Monell* claims. That is no doubt because litigating a *Monell* claim imposes burdens on a plaintiff as well as on the City. By being prepared to litigate the *Monell* claim vigorously (including by expending the resources to retain experts on the *Monell* claim), plaintiff has signaled that she believes the *Monell* claim is important to her case. If some delay in the commencement of trial were to result from the presence of a *Monell* claim, that is a detriment that plaintiff apparently is prepared to endure in order to have the chance to prove her *Monell* claim. Thus, while in some cases there may be good and compel-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

ling reasons for bifurcating *Monell* and *non-Monell* claims, protecting the interests of a plaintiff who wishes to simultaneously pursue both is not one of them.

### D.

**\*7** The City also argues that bifurcation will advance the Court's interest by promoting judicial economy (Mot., ¶ 9). In particular, the City contends that bifurcation will spare the Court the need to intervene in disputes about *Monell* discovery; will eliminate the need for "the City's inevitable summary judgment motion" on the *Monell* claims; and will eliminate the need to preside over a trial made "lengthy and factually complex" by the presence of *Monell* and *non-Monell* claims (*Id* ). We find these arguments unpersuasive.

Deferring discovery of the *Monell* claim is unlikely to eliminate discovery disputes. Rather, in the short term, bifurcation more likely will shift the locus of discovery disputes from the appropriate scope of *Monell* discovery to whether discovery sought by plaintiff is permissible discovery into the individual claims or impermissible *Monell* discovery. Moreover, we are bemused that even before *Monell* discovery has occurred, the City can say that a summary judgment motion directed to the *Monell* claim would be "inevitable." The City has made clear that its current motion to bifurcate is not based on discovery showing that plaintiff has no triable *Monell* claim (11/13/07 Tr. at 9).

A stay of *Monell* discovery will only defer-and not eliminate-disputes about *Monell* discovery and a summary judgment motion if we later authorize plaintiff to move forward on the *Monell* claim. The bifurcation the City seeks can be sure to eliminate *Monell* discovery disputes and a summary judgment motion on the *Monell* claim only if bifurcating results in the *Monell* claim being sidestepped without the Court or a jury ever addressing it on the merits. As we discussed earlier and will address further below, we are not willing to assume that will occur.

Finally, for the reasons we have set forth above, we are not in a position at this time to decide whether bifurcation at trial of the *Monell* and non-*Monell* claims would be efficient. For example, we do not know how much trial time the *Monell* claim would add to the trial of the case; or how that compares to the amount of time it would take to try the individual claims alone; or whether a unitary trial would take materially longer to complete than would a bifurcated trial. However, we can say that the particular brand of bifurcation proposed by the City would lead to substantial inefficiency if the *Monell* claim ultimately were tried.

The City urges that all proceedings on the *Monell* claim be stayed until after resolution of the Section 1983 claims against the individual defendants. Under the City's proposal, the *Monell* claim would not be ready for trial (if it survived the summary judgment motion that the City views as inevitable) at the time the individual claims go to trial. As a result, if plaintiff were to prevail on one or more of those claims at trial, then the trial of the *Monell* claim could not commence before the same jury. Rather, we would have to restart the discovery process; subject certain witnesses who already were deposed on the individual claims to an additional deposition on the *Monell* claim; go through summary judgment on the *Monell* claim; and then, if the *Monell* claim goes to trial, empanel an entirely new jury to hear it. The second jury will not have heard the underlying evidence concerning the individual claims. We envision many disputes about how much evidence from the first trial may be rehashed before the new jury, with the result that there likely will be at least some repetition of evidence that would have been unnecessary-even with a bifurcated trial-if both phases had occurred before the same jury.

**\*8** None of this would advance the goals of efficiency and judicial economy. Thus, on the record before the Court at this time, we conclude that these considerations do not weigh in favor of the City's bifurcation proposal.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

## II.

Finally, we turn to the proposition that lies at the heart of the City's motion, which we have identified but not yet fully addressed: the proposition that plaintiff's *Monell* claim should never be addressed on the merits, even if plaintiff establishes her Section 1983 claims against the individual officers. We have no doubt that this is the true goal of the City's motion, as the City admitted before even filing the motion (11/13/07 Tr. at 8-9).

The City states that it has a statutory and contractual obligation to indemnify the defendant officers for any judgment against them, because there is no dispute that they were acting within the scope of their employment during their encounter with Michael Cadiz (Mot., ¶ 10). The statutory obligation arises from 745 ILCS 10/9-102, which authorizes a municipality to pay tort judgments of compensatory damages, attorneys' fees and costs against its public officials for acts within the scope of their employment. *E.g., Kolar v. Sangamon County of State of Ill.,* 756 F.2d 564, 566 (7th Cir.1985) (a Section 1983 judgment against a governmental employee acting within the scope of employment is a "tort" judgment to which Section 10/9-102 applies).[FN6] The City does not identify the source of its contractual obligation to indemnify, but we presume it is based on the collective bargaining agreement. The City argues that in light of its obligation to pay a judgment against the officer defendants under Section 1983, proceeding thereafter on a *Monell* claim would be pointless because plaintiff cannot recover any additional compensatory damages even if she prevailed against the City on that claim. *See Spanish Action Committee of Chicago v. City of Chicago,* 766 F.2d 315, 321 (7th Cir.1985).[FN7]

FN6. The statutory obligation to indemnify does not extend to any punitive damages awards that might issue against the defendant officers if plaintiff succeeds on her Section 1983 claims against them. However, the *Monell* claim does not afford plaintiff the possibility of obtaining punit-

ive damages on a direct claim against the City, since municipalities cannot be liable for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271-72, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

FN7. In its motion, the City does not expressly offer a stipulation to pay damages, as the City has done in other cases. *See, e.g., Elrod,* 2007 WL 3241352, * 1;*Parker v. Banner,* 479 F.Supp.2d 827, 829 (N.D.2007). Some courts have noted that in the absence of a formal stipulation, there is no guarantee that a municipality will agree that it is obligated to indemnify. *Parker,* 479 F.Supp.2d at 829 n. 3;*Medina,* 100 F.Supp.2d at 896. In this case, the City has admitted that the defendant officers acted within the scope of employment, both in its motion (Mot., ¶ 10) and in its answer to the complaint (doc. # 55: Ans. ¶ 4). The City's defense to the claim for indemnification in Count IV is based solely on a denial that the individual officers committed misconduct, and not on a claim that they acted outside the scope of employment or under color of law (doc. # 55: Ans. Count IV ¶ 19). Thus, our denial of the City's motion is not based on its failure to offer a formal stipulation here.

That is where the City's analysis ends. The City does not say that its obligation to pay a judgment against the officer defendants renders the *Monell* claim moot, thereby eliminating any case or controversy. Nor does the City argue that having achieved a monetary award on the individual Section 1983 claims, plaintiff has no further legal interest in the *Monell* claim and thus lacks standing to pursue it. And, indeed, we do not believe such an argument would have merit.

While success in establishing a constitutional claim against the officers is essential to establishing a *Monell* claim, the Supreme Court has made clear that this alone is not enough to prove a *Monell*

Slip Copy
Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

claim. A municipality's liability under *Monell* is not merely derivative of the liability of its employees, but rather stems from the municipality's mainten-ance of policies, practices or customs that contrib-ute to the unconstitutional conduct of its employ-ees. *Monell,* 436 U.S. at 695. A *Monell* claim thus seeks not merely to vindicate the right of a plaintiff to be free from unconstitutional conduct by muni-cipal employees, but rather to vindicate the inde-pendent right of a plaintiff to be free of municipal policies, practices or customs that foster such con-duct. When (as here) a plaintiff claims the violation of a constitutional right as a result of a municipal-ity's policies, practices or customs, that claim cre-ates a separate case or controversy from the claims against the individual officers that the plaintiff has standing to pursue.

**\*9** That separate constitutional claim is not legally extinguished merely because the plaintiff obtains full economic recovery through the claim against the individual officers. "Common-law courts tradi-tionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money."*Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)."By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law re-cognizes the importance to organized society that those rights be scrupulously observed; ..."*Id.*That principle applies here. A plaintiff who succeeds on a *Monell* claim may not recover compensatory dam-ages in excess of those awarded on the individual Section 1983 claims, *Spanish Action Committee,* 766 F.2d at 321, but we see no bar to the plaintiff recovering nominal damages ($1.00) since no addi-tional compensatory damages cannot be proven. "The mandate of 'case or controversy' only re-quires that something concrete be at stake-a dollar will do."*Parker v. Banner,* 479 F.Supp.2d 827, 834 (N.D.Ill.2007) (in granting bifurcation, held that if a plaintiff prevailed on individual Section 1983 claims, he then could decide whether it was worth pursuing the *Monell* claim against the City of

Chicago, explaining that "[i]f he is entitled to try for additional nominal damages, then he clearly has a right to pursue them").

Unable to argue that plaintiff's *Monell* claim would be legally mooted out by the City's payment of a judgment against the officer defendants, the City's argument boils down to one of expedience: that neither the City nor the judicial system should have to spend the time or resources litigating *Monell* claims that have so little economic value. Implicit in that argument is the proposition that there are no non-economic benefits to *Monell* claims that should weigh into the equation. The case law reflects dis-agreement about the validity of that proposition.

Some courts have pointed out that successful *Mon-ell* actions may have the benefit of deterring future official misconduct, which is "a proper object of our system of tort liability."*Medina,* 100 F.Supp.2d at 896. "A judgment against a municipality not only holds that entity responsible for its actions and in-actions, but also can encourage the municipality to reform the patterns and practices that led to consti-tutional violations, as well as alert the municipality and the citizenry to the issue."*Amato v. City of Saratoga Springs,* 170 F.3d 311, 317-18 (2d Cir.1999). As a result, a finding of liability on the part of individual officers "does not serve all the purposes of, and is not the equivalent of, a judg-ment against the municipality."*Id.*

A recent decision out of this district has rejected this deterrence rationale. In *Parker,* the court ex-pressed doubt that the *Amato* court "would have contended that an award of $1.00 would alert any city or its citizenry to the issue of police miscon-duct."*Parker,* 479 F.Supp.2d at 830. Bringing the matter closer to home, the *Parker* court stated that the policy claims against the City of Chicago in that case, which involved alleged police misconduct, "are legitimate matters of public concern, over which there is already public debate. I do not think Plaintiff argues that *Monell* discovery is necessary in bringing claims of police abuse to the public consciousness."*Id.* at 833-34.The *Parker* court

Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

reasoned that payment by the City of Chicago of a damages award against the officer defendants in that case "is a good reason for [the City] to change policies that are unconstitutional," thus suggesting that a judicial finding that the City maintained unconstitutional policies, practices or customs would not create any further incentive for change. *Id.* at 834.[FN8]

> FN8. The *Parker* court further stated that "[i]n the absence of claims for equitable relief, and in addition to damages, Plaintiff wants a piece of paper saying that the City acts unconstitutionally. I do not know exactly why he wants that paper, but securing a verdict or opinion for the sole purpose of having those words does not create a case or controversy within the meaning of Article III of the Constitution."479 F.Supp.2d at 834.For the reasons set forth above, we disagree with this comment. Indeed, we note that the *Parker* court further observed that the possibility of a nominal damage award of $1.00 would satisfy the case or controversy requirement. *Id.*

**\*10** We decline to speculate as to what effect, if any, a finding that the City maintained unconstitutional policies, practices or customs would have on City policymakers. We understand the point of view, expressed in *Parker,* that payment of large awards on Section 1983 judgments against individual officers should provide ample motivation to identify and change any policies, practices or customs that may contribute to unconstitutional conduct and damage awards (or settlements) that create a strain on City coffers. On the other hand, we also understand how one might reasonably conclude, as did the *Amato* court, that a jury verdict that police misconduct stemmed from unconstitutional municipal policies, practices or customs could provide a greater incentive for change than the payment of a damages award that the City then could chalk up to aberrational conduct by a rogue officer.

We have no evidence one way or the other about

the "incentive" value of payment of money damages as opposed to findings of *Monell* liability in leading to changes in any unconstitutional municipal policies. It is difficult to envision the real-life laboratory setting in which that question could be studied and answered in any reliable way. To the extent that *Monell* claims might have a salutary effect in changing municipal policies that are unconstitutional, the City's request for bifurcation and ultimate extinguishment of *Monell* claims would render that possible benefit a dead letter. Accepting the City's request for bifurcation would ignore the fact that a plaintiff who succeeds in proving unconstitutional policies, practices or customs has achieved a significant victory "not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance ..."*City of Riverside v. Rivera,* 477 U.S. 561, 577, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). On the other hand, there also may be benefits that accrue to the City from defeating a *Monell* claim, and thus vindicating the constitutionality of its polices, practices and customs.

If accepted, the City's bifurcation strategy would allow it to avoid the merits of virtually any *Monell* claim alleging police misconduct.[FN9] One may argue that this is not significantly different than the City avoiding a *Monell* claim by settling the case. However, we see a major difference. A settlement is a mutual agreement through which a plaintiff accepts a sum of money to forego litigating the *Monell* claim, but also to avoid the risk of losing that claim after expending substantial resources in the effort to prove it. In some cases, there may be a serious question about scope of employment (unlike here) and thus about the City's obligation to indemnify. That, in turn, could create a serious question about the collectability of any judgment and fee award that a plaintiff may obtain. In that circumstance, a plaintiff may be willing to agree to drop a *Monell* claim in exchange for a stipulation by the City to pay a judgment against the officer defendants, trading the possibility of succeeding on a *Monell* claim (and the risk of losing that claim after

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

spending substantial time and money on it) for the certainty of collectability if the plaintiff succeeds on the individual claims.[FN10]

> FN9. We are mindful that the *Parker* court commented that some plaintiffs may seek not only monetary damages on a *Monell* claim, but also may seek injunctive relief against specific police practices. *Parker,* 479 F.Supp.2d at 833 n. 9. In that event, the City could not avoid adjudication of a *Monell* claim on the merits, because the plaintiffs would have the possibility of equitable relief against the City that could not be obtained through a judgment against officer defendants. However, in the typical excessive force case that would give rise to an accompanying *Monell* claim, a plaintiff would lack standing to seek prospective injunctive relief for a past event that (as to that plaintiff) has no foreseeable likelihood of recurring. *See City of Los Angeles v. Lyon,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction [against the use of choke holds] than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional").

> FN10. Some courts have expressed the concern that *Monell* claims "unduly inflate the settlement value of suits" in simple excessive force cases that have minimal evidence of actual damages. *Choate v. County of Orange,* 86 Cal.App.4th 312, 103 Cal.Rptr.2d 339, 351-53 (Cal.App.2000) (quoted in *Parker,* 479 F.Supp.2d at 831 n. 5). We do not find that concern persuasive in this case, which presents individual claims which could lead to a substantial

damage award if plaintiff were to prevail. Moreover, Rule 42(b) provides for bifurcation as a tool to be used to promote convenience, expedition and economy and to avoid prejudice, not as a tool to be used by courts to affect the settlement value of a case.

**\*11** By contrast, the City proposal would foist upon an unwilling plaintiff the elimination of her *Monell* claim. We do not believe that the City should be allowed to deprive a plaintiff of a merits determination of a *Monell* claim by the expedient of agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway.[FN11]

> FN11. In some cases, bifurcation has been denied on the reasoning that an agreement by the City to pay a damages award would provide a plaintiff no comfort if the officer defendants were to avoid liability on the basis of qualified immunity. In that scenario, the plaintiff would be able to recover damages against the City on the *Monell* claim that were unavailable against the officers on the individual claim. *See Medina,* 100 F.Supp.2d at 896. Here, the officer defendants have asserted qualified immunity as an affirmative defense. However, generally speaking, "the likelihood of a defendant prevailing on that defense in the context of an excessive force claim has not been a persuasive argument against bifurcation." *Elrod,* 2007 WL 3241352, * 5. This case is no exception. If plaintiff succeeds in proving the alleged conduct that gives rise to the excessive force claim, it is difficult to envision how that conduct would not be deemed to have violated a clearly established right. *See Wilkie v. Robbins,* --- U.S. ----, 127 S.Ct. 2588,2617, 168 L.Ed.2d 389 (2007). Thus, in denying the City's bifurcation motion, we have not relied on the officers' assertion of qualified

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 4293976 (N.D.Ill.)
**2007 WL 4293976 (N.D.Ill.)**

immunity.

### *CONCLUSION*

For the foregoing reasons, we deny defendant's motion to bifurcate Section 1983 claims and stay discovery and trial on those claims (doc. # 78). In so doing, we express no view as to the merits of plaintiff's *Monell* claim, and do not rule on the scope of the *Monell* discovery that plaintiff may obtain. We simply hold that: (1) plaintiff has a right to pursue his *Monell* claim notwithstanding the City's willingness to pay any judgment against the officers on the individual Section 1983 claims, and (2) the City has not demonstrated that the bifurcation it seeks is warranted on the facts of this case. Upon a more complete record, we later can revisit the question of whether bifurcation of the trial of the individual and *Monell* claims (in a proceeding before the same jury) is appropriate.

N.D.Ill.,2007.
Cadiz v. Kruger
Slip Copy, 2007 WL 4293976 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Ronald Johnson

                  Plaintiff,

v.                                           Case No.: 1:05−cv−06545

                                           Honorable William J. Hibbler

City of Chicago, et al.

                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, May 16, 2007:

      MINUTE entry before Judge William J. Hibbler: Motion hearing held on 5/16/2007 regarding motion to bifurcate[135]. Defendant City of Chicago's Motion to bifurcate [135] is denied for the reasons stated in open court. The parties are to proceed before Magistrate Judge Valdez to set a Monell discovery schedule. Status hearing set for 7/9/2007 at 09:30 AM. Mailed notice (jdh)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

Slip Copy, 2006 WL 4071596 (N.D.Ill.)
**(Cite as: Slip Copy)**

Booker v. City of Chicago
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Crispus BOOKER, Plaintiff,
v.
CITY OF CHICAGO, Chicago Police Officers
George K. Livergood, G. McGovern, and as yet un-
known Chicago Police Officers Defendants.
**No. 04 C 6371.**

Dec. 15, 2006.

Arthur R. Loevy, Jonathan I. Loevy, Mark Reyes,
Loevy & Loevy, Chicago, IL, for Plaintiff.
David Andrew Shedd, Dawn Eileen Bode, George
John Yamin, Jr., Mara Stacy Georges, City of
Chicago, Department of Law, Andrew M. Hale,
Eileen Ellen Rosen, John Joseph Rock, Silvia Mer-
cado Masters, Rock, Fusco LLC, Kathryn M. Doi,
Corporation Counsel's Office, Chicago, IL, for De-
fendants.

*REPORT AND RECOMMENDATION*
KEYS, Magistrate J.
**\*1** On November 19, 2002, Chicago Police Officer
George K. Livergood pursued Crispus Booker on
foot. Mr. Booker claims that, even though he was
unarmed and had committed no crime, Officer Liv-
ergood shot him twice. Mr. Booker asserts that Of-
ficer Livergood, with assistance from Officer G.
McGovern and other unknown Chicago Police Of-
ficers, then fabricated evidence indicating that Mr.
Booker unlawfully possessed a weapon at the time
of the shooting.

Mr. Booker filed suit against Officers Livergood
and McGovern, and the unidentified Officers, al-
leging excessive force, false arrest and imprison-
ment, and violations of his due process rights, pur-
suant to 42 U.S.C.1983 (West 2006).[FN1] Mr.
Booker also raises a claim pursuant to *Monell v.
New York Dept. of Social Servs.,* 436 U.S. 658, 98
S.Ct. 2018, 56 L.Ed.2d 611 (1978), claiming that
the Defendant Officers' unlawful conduct stemmed
from the City of Chicago's policies and practices.

> FN1. Plaintiff's Complaint also contains
> State law claims for malicious prosecution,
> respondeat superior and indemnification.

The City of Chicago now presents the Court with a
stipulation, waiving Mr. Booker's need to prove the
remaining *Monell* elements in the event that he suc-
cessfully demonstrates that the Individual Defend-
ants violated his constitutional rights. The City
agrees to entry of judgment against it for compens-
atory damages based upon these constitutional viol-
ations, if proven. The City claims that the stipula-
tion moots Mr. Booker's *Monell* claim, because
there is no longer a justiciable case or controversy.

Mr. Booker counters that the Federal Rules of Civil
Procedure do not recognize unilateral stipulations
that do not contain admissions of guilt, and charac-
terizes the City's tactic as an attempt "to re-clothe
its pre-existing statutory obligation to satisfy any
judgment against the individual Defendants under
745 ILCS 10/9-102 into a purported basis to 'bar
discovery and trial on the *Monell* claims against it."
' Pl.'s Resp. at 2. Mr. Booker argues that the stipu-
lation, even if procedurally proper, does not moot
his *Monell* claim, and that ambiguity in the pro-
posed stipulation counsels against accepting it.

The Court finds that, while a true offer of judgment
might render Mr. Booker's *Monell* claim moot for
lack of a case or controversy Under Article III of
the Constitution, the Stipulation offered by the City
presents a potential minefield of liability loopholes,
rendering its promise of a stipulated judgment illus-
ory.

DISCUSSION

The dispute before the Court is not novel,[FN2] but
clear precedent is lacking. The parties readily ac-
knowledge that several courts in this district have
grappled with the propriety of similar proposed
stipulations with conflicting results. Judges Zagel,

Slip Copy
Slip Copy, 2006 WL 4071596 (N.D.Ill.)
**(Cite as: Slip Copy)**

St. Eve, Der-Yeghiayan, Lefkow, and Pallmeyer have accepted the City's proposed stipulations.[FN3]

> FN2. And familiarity breeds contempt. The City claims that while Plaintiff has no economic incentive to pursue the *Monell* claim under these circumstances, Plaintiff's counsel does and is attempting to derail the stipulation only to protect his cash cow, i .e. the continued viability of the *Monell* claim enables counsel to churn fees. Plaintiff's counsel counters that the City's professed interest in conserving resources and taxpayers' money is disingenuous, and that the City is only interested in shielding its illegal conduct from public scrutiny.

> FN3. *See* Def.'s Brief in Support of Mot. To Bar *Monell* Discovery and Trial ("Def.'s Brief"), at Ex. C.

In *Grant v. City of Chicago,* No. 04 C 2612, 2006 WL 328265, a *2 (N.D.Ill. Feb. 10, 2006), for example, Judge Lefkow found no reason to deviate from other court decisions accepting the City's stipulation. *See* Def. Brief at Ex. C. In *Grant,* a mother claimed that four officers used excessive force in arresting her son that caused his death; she sued the officers and the City. The City offered to stipulate to a judgment against it, if the plaintiff proved her case against the four officers. The plaintiff balked, but Judge Lefkow granted the motion. Judge Lefkow rejected the plaintiff's claim that a unilateral stipulation without admission of guilt was not recognizable under the federal rules, noting that consent judgments are a device to avoid trial and can be entered without findings of fact having been made. *Id.* Judge Lefkow concluded ultimately that there was no case or controversy, while acknowledging that a verdict against the City following a trial would be a better deterrent to unconstitutional conduct.

**\*2** But other district judges, including Judges Gottschall, Coar, Norgle, Hart, and Denlow, have taken issue with the City's attempt to avoid discovery and a trial on *Monell* claims. *See* Pl.'s Resp., Ex. A. In

*Patterson v. Jon Burge,* No. 03 CV 4433 (Aug. 2, 2005), Judge Gottschall found that the City's Motion-offering to stipulate to a judgment without an admission of guilt-was procedurally anomalous. In denying the Motion, Judge Gottschall noted that the evidence against the individual defendants and the official defendants would be largely overlapping. Judge Gottschall reasoned that the plaintiff's case against the individual officers could reasonably be strengthened by the evidence concerning the City's policies and practices. Finally, Judge Gottschall concluded that granting the City's motion would impede and confuse, not improve, the discovery process and trial.

This Court agrees with Judge Lefkow that a stipulation to judgment would moot Plaintiff's *Monell* claims, but further finds, like Judge Gottschall, that the procedurally anomalous stipulation offered here could potentially complicate, as opposed to streamline, these proceedings.

### A. A True Stipulation to Judgment Would Render Plaintiff's *Monell* Claim Moot

Federal court jurisdiction is limited by Article III's "case and controversy" requirement, which is crucial to maintaining the Constitution's division of power between the three branches of government. *Daimler Chrysler Corp. v. Cuno,* --- U.S. ----, ----, 126 S.Ct. 1854, 1856, 164 L.Ed.2d 589 (U.S.2006). To satisfy the case and controversy requirement, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 1861. (quotations omitted) (noting that plaintiffs bear the burden of establishing their standing.) *See also, Haitian Refugee Center v. Gracey,* 809 F.2d 794, 798 (D.C.Cir.1987) ("To satisfy article III's 'case' or 'controversy' requirement, a litigant must 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision." ')

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The City of Chicago claims that, because it has agreed to the entry of judgment [FN4] against itself if the named Defendants are found liable for the constitutional injuries, Article III's case and controversy requirement is not satisfied. Because Plaintiff will have achieved all the relief to which he is entitled -the City's promise to pay the resulting judgment-Plaintiff is not entitled to a trial on his *Monell* claim. The City correctly points out that Seventh Circuit caselaw provides that "a party must have an economic dispute with the defendant, one surviving the offer of settlement, to be allowed to press on in the face of the defendant's willingness to satisfy the plaintiff's initial demand." *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 878 (7th Cir.1987).

> FN4. For purposes of this section of the discussion, the Court will accept the City's characterization of its Stipulation.

**\*3** In *Alliance,* the parties entered into an agreement, whereby the defendants accepted an injunction against the conduct in question, and the parties agreed to a monetary remedy of $10,000 per plaintiff. However, the parties also agreed to what the appellate court referred to as a "wager of law"; instead of simply accepting the injunction and the money, each of the plaintiffs had the option of presenting the controversy to the trial court, in the hope of securing beneficial precedent. This option, however, came with a price: if the trial court ruled in favor of a plaintiff, that plaintiff would keep his $10,000 settlement, but if the court ruled against that plaintiff, the plaintiff would forfeit his $10,000. The plaintiffs proceeded with the gamble, and the trial judge ruled in favor of three of the five plaintiffs.

The parties appealed, raising numerous issues. The Seventh Circuit remanded, stating that "[t]here is a more fundamental problem, the absence of a 'case or controversy' within the meaning of Article III. The case was settled before the Judge decided it." *Id.* at 875. Judge Easterbrook explained that "[n]o matter how desirable it may be to have a constitutional question settled, the resolution must await the

concrete controversy, for only then does the judge have an adequate justification for giving an opinion." *Id.* at 876 (further noting that "no relief turned on the court's answer to the question" and identifying "the redressability rulethe principle that a case is justiciable only when a constitutional adjudication is capable of solving the plaintiff's problems.") The court made clear that a plaintiff who is offered all the relief he demands may not refuse the offer and go to trial. *Id.* at 878.

Similarly, in *Greisz v. Household Bank,* 176 F.3d 1012 (7th Cir.1999), the trial court dismissed the plaintiff's suit after the defendant bank made a Rule 68 offer of judgment to the plaintiff for $1,200-$200 more than the plaintiff could possibly have obtained by going to trial. Judge Posner affirmed the dismissal, because the bank's settlement offer, which was the equivalent of a default judgment, eliminated the legal dispute upon which federal jurisdiction was based. *Id. at* 1015. These cases teach that federal courts do not have jurisdiction to issue advisory opinions, and judicial opinions that resolve constitutional dilemmas but provide no relief are just that-advisory opinions. *See Harrington v. Heavey,* No. 04 C 5991, 2006 WL 3359388, at \*7 (N.D.Ill. Nov.16, 2006)

Plaintiff counters that these cases are distinguishable, because courts have an obligation to resolve cases where a plaintiff's "absolute rights" have been infringed, even if only nominal damages are available. In *Amato v. City of Saratoga Springs,* 170 F.3d 311 (2d Cir.1999), an arrestee brought a § 1983 action against the city, certain officials, and individual police officers based upon his claim that two officers used excessive force during his booking. The district court bifurcated the trial. At the first trial, the arrestee's evidence included a videotape that showed one of the officers striking the plaintiff, and the plaintiff falling to the floor. However, the plaintiff was back on his feet shortly thereafter, looking only slightly worse for the wear, and didn't seek significant treatment for the alleged injuries for more than one year after the incident. A jury found in plaintiff's favor but awarded him only $1 in damages. The trial court dismissed the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff's claims against the city, because the plaintiff could only recover nominal damages.

**\*4** On appeal, the Second Circuit reversed, holding that a litigant claiming that his "absolute rights" were violated is entitled to: 1) a judgment against a municipality; and 2) an award of nominal damages, even in the absence of an actual compensable injury. *Id.* at 318. The court explained that, although § 1983 actions resemble tort actions in many ways, there is an important distinction: the central goal of tort law is merely to compensate victims for actual injuries, while victims whose "absolute" constitutional rights were violated are entitled to nominal damages, in the absence of an actual injury, and to "obtain a ruling by a court that the defendant's conduct was tortious." *Id.*

The Court concluded that "a judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all purposes of, and is not the equivalent of, a judgment against the municipality." Id. *at* 317-318. The Court noted in a footnote that the City could avoid the expense of a trial by making a Rule 68 offer of judgment. *See* n.11.

At first glance, the *Amato's* court's reasoning supports Plaintiff's claim that, despite the City's stipulation, he is entitled to his day in Court on his *Monell* claim. *Amato* is distinguishable, however, because the municipality had not stipulated to judgment on the *Monell* claims if the plaintiff successfully established the underlying constitutional violation. *See Id.* (noting that the city could avoid a trial by making an offer of judgment.) In addition, the *Amato* trial court simply dismissed the claims against the city and its officials once the jury awarded the plaintiff only nominal damages, reasoning that a judgment against the city would be pointless as it could not result in a substantial economic award to the plaintiff. In the instant case, however, the City is *agreeing to the entry of judgment* FN5

against it, even if the Individually Named Defendants are slapped with only a nominal penalty.

> FN5. But only under some circumstances, which are discussed more thoroughly below.

As such, *Alliance* and *Greisz* teach that there is no justiciable controversy, because Plaintiff has received all of the relief to which he is entitled-a judgment against the City. While Mr. Booker's desire to see the City's practices publicly scrutinized and, potentially, subject to judicial criticism and sanction are understandable, the courts cannot be used as vehicles for personal vindication when the legal dispute has been resolved. *Greisz,* 176 F.3d at 1015 ("You cannot persist in suing after you've won.") *See also, Bohen v. City of East Chicago, Indiana,* 622 F.Supp. 1234, 1245 (N.D.Ind.1985) ("The plaintiff's desire for psychological vindication, however, deeply felt, cannot keep alive a case that is otherwise moot.") (Judge Easterbrook, sitting by designation was reversed on other grounds, 799 F.2d 1180 (7th Cir.1986)).

### B. The Proposed Stipulation is Too Vague to Moot Plaintiff's *Monell* Claim

**\*5** *Greisz* and *Alliance* do not carry the day for the City, however, because the terms of the proposed Stipulation do not assure a judgment against the City. The City's briefs oversell what it actually offers in its Stipulation. In its Reply brief, the City argues that the Plaintiff's arguments against the Stipulation are misplaced, because the City is offering to submit to the entry of judgment against itself, and not merely to the indemnification of a judgment against the Individual Defendants.

But the stipulation is not quite an agreement to have judgment entered against the City; instead it merely waives the City's right *not* to have liability imposed against it. FN6 Specifically, the Stipulation states that "the City specifically waives its right under *Monell v. New York City Dept. Of Social Services* not to be held liable in damages under section 1983 without proof that the City, by its 'policy, custom or practice,' and with the requisite degree

Slip Copy, 2006 WL 4071596 (N.D.Ill.)
**(Cite as: Slip Copy)**

of culpability, caused the alleged constitutional vi-olation." Notably, the Stipulation expressly denies such widespread, permanent "policies, customs or practices," and that the injuries were caused by a person with final policymaking authority. The Stip-ulation also retains the City's unidentified defenses, and permits the City to retain the right to alter or amend judgment.

> FN6. Other Judges in this district have ex-pressed confusion over precisely what the proposed Stipulation is. As Judge Coar stated in *Evans v. City of Chicago, et al.,* NO. 04 C 3570, (Trans. Of Aug. 18, 2005 Hearing) "I don't understand what the stip-ulation does" and "Tell me what a waiver of proof is." *See* Pl.'s Resp. at Ex. A

Next, the Stipulation limits the City's obligations in a potentially troubling way. The Stipulation states that "the City agrees to entry of judgment ... if and only if the finder of fact in this case finds that the named individual defendants violated plaintiff's constitutional rights." If Mr. Booker were to estab-lish a constitutional violation on the part of an as of yet Unnamed Officer Defendant, or other City em-ployee, the Stipulation does not clearly waive the City's right to dispute *Monell* liability. Mr. Booker contends that the problems stemming from this po-tential "liability gap" are more than theoretical; purportedly, the same gap created a contentious ambiguity in *Evans v. City of Chicago,* No. 04 C 3570, which was litigated by the same attorneys arg-uing in this case, and is now on appeal. *See* Pl.'s Resp. at Ex. A.

Similarly, in *Lopez v. City of Chicago,* No. 01 C 1823 (Oct. 27, 2004), Judge Der-Yeghiayan accep-ted a similar stipulation from the City. *See* Pl.'s Resp. at Ex. A. Plaintiff claims (and the City does not dispute) that Judge Der-Yeghiayan later regret-ted having done so, after the parties became em-broiled in a protracted dispute over the legal signi-ficance and meaning of the City's stipulation. When the City attempted to introduce a similar stipulation in a later case, Judge Der-Yeghiayan promptly re-jected it. *See McLaughlin v. Chicago,* No. 04 C

7156 (June 14, 2005 hearing) (Pl.'s Resp. at Ex. A.)

Absent a stipulation to specific elements, as op-posed to a waiver of proof under certain circum-stances, it is unclear how the district court should proceed in the event that the Individual Officers ef-fectively assert qualified immunity, or if the Indi-vidual Officers settle with Mr. Booker. Would the district court be required to reopen discovery and litigate the *Monell* issue at that time?

**\*6** In *Treece v. Hochstetler,* 213 F.3d 360 (7th Cir.2000), a similar stipulation persuaded the dis-trict court to grant (and the appellate court to af-firm) the bifurcation of the plaintiff's *Monell* claim. The procedurally anomalous submission is far less troubling under such circumstance, because the lit-igation is in no way hindered or delayed in the event that a dispute arises over the application or interpretation of the stipulation. In this case, however, accepting the stipulation results in either a bar on *Monell* discovery, if all goes smoothly, or an unplanned-for delay, if it does not.

CONCLUSION

While Article III's case or controversy requirement bars courts from issuing advisory opinions, the City's Stipulation is too vague to moot Mr. Booker's *Monell* claim. While the City claims that the Stip-ulation is motivated by a desire to conserve taxpayer resources, accepting the Stipulation creates more potential for protracted litigation than allowing the parties to proceed with adjudication of the *Monell* claim. Therefore, the Court recommends denying the City's Motion.

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Mark Filip. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object con-stitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir.1990).

N.D.Ill.,2006.
Booker v. City of Chicago
Slip Copy, 2006 WL 4071596 (N.D.Ill.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AARON PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03 CV 4433** |
| | ) | **Honorable Joan B. Gottschall** |
| **JON BURGE, ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**RULING ON CITY'S MOTION TO BAR DISCOVERY**
**AND TRIAL ON PLAINTIFF'S MONELL CLAIMS**

The City has moved to bar discovery and trial on plaintiff's *Monell* claims based on what it offers as a "Stipulation." The Stipulation provides that "the City agrees to entry of judgment against the City for compensatory damages if and only if the finder of fact in this case finds that City employees violated plaintiff's constitutional rights as alleged in the first amended complaint." Stipulation, p. 2. That is, assuming that plaintiff first proves a constitutional injury by an individual officer, "the City specifically waives its right under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 . . . (1978) not to be held liable in damages under §1983 without proof that the City by its 'policy, custom, or practice' and with the requisite degree of culpability caused the alleged constitutional violation."

As a preliminary matter, two things should be noted about this "Stipulation." First, it is not a stipulation in the sense of agreement, as that term is typically used. Plaintiff vigorously opposes it. Second, it is not an admission of liability that the City's policies or practices caused plaintiff's injury. The "Stipulation" makes clear that the City denies that its policies or practices, or its

1

policymakers, caused any constitutional injury to plaintiff. Rather, it is a consent by the City to entry of judgment against it for any compensatory damages which the jury may find plaintiff suffered due to any constitutional tort by the individual defendants.

Procedurally, the motion is anomalous. The court is unaware of any rule of law or procedure which would permit one litigant, without settling the claims against it or conceding liability as to those claims, to take the claims against it out of contention and prevent its opponent from proceeding to discovery and trial on those claims.[1] Granted, the court has discretion to order the sequencing of discovery and the bifurcation of plaintiff's claims, and to dictate the order in which they will be tried. But the court has denied the City's motion to delay discovery of the *Monell* claims and sees no reason, at least at this point in the litigation, to order bifurcation of the claims for trial. This is one of a number of cases alleging similar conduct by police officers in the same district, and the claim that the individual officers acted pursuant to a policy or practice appears more substantial than it does in the typical §1983 case, where the conduct of which the plaintiff complains is more likely to have been, if it occurred, an isolated act of misconduct by individual officers.

There are many §1983 cases in which bifurcation promises many benefits, including economy and efficiency, with few countervailing costs. Bifurcation is especially appropriate where the evidence necessary to show a policy or custom on the part of the municipality is unnecessary to make out the claims against the individual officers. *See Ingles v. City of New York,* 2005 WL 1354028 (S.D.N.Y. June 7, 2005). When a number of individual claims implicate common issues

---

[1]The City's proposed procedure bears some analogical relationship to a Rule 68 offer of judgment to the extent it is an offer to allow judgment to be taken against it. However, unlike an offer of judgment, the City is not offering to settle the litigation for a sum certain, and its offer to pay damages is entirely contingent on the outcome of the plaintiff's case against the individual defendants.

2

of policy, however, bifurcation may frustrate the goals of efficiency, convenience and the avoidance of prejudice. *Id.* at *1. In the case at bar, the costs of separating the claims appear substantial, in that the ability of the litigation to get at the truth of plaintiff's claims may be compromised if the issues are fractured. Perhaps more important, however, in this case, the benefits may be illusory.

Plaintiff has sued a number of high level municipal officials such as Richard Devine, Terry Hillard and Leroy Martin. As the court understands plaintiff's claims (and its understanding is far from complete at this stage), plaintiff charges these individuals both with personal involvement in his alleged constitutional injuries and with *Monell* involvement, meaning as policymakers whose policies are attributable to the City. The City's motion does not indicate the impact of the proposed stipulation on discovery and trial related to these persons. Presumably some or all of these individuals may have factual information relevant to the claims against the individual police officers, or factual information relevant to their own conduct as individuals who contributed personally to plaintiff's alleged injuries. If the claims against the City's policymakers go forward insofar as they are sued in their individual capacities, the economies of staying the claims against these individuals as City policymakers might not be significant, since attempting to draw lines between what high-ranking officials did in their individual capacities and what they did in their official capacities might be a difficult and burdensome task. Indeed, attempting to draw lines for discovery and trial among these individuals' various roles may be practically impossible and, at the very least, may make this complex litigation even more difficult to manage. At the very least, the difficulty of attempting to draw such lines might be at least as much of a burden as managing whatever discovery the *Monell* claims add to the case.

The City implicitly assumes that because its liability is derivative of that of the individual

officers, *see, e.g., City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986), plaintiff has no legitimate need to discover and prove his case against the City while the liability of the individual officers remains undetermined.  This is not necessarily true.  The City's liability is derivative in the sense that plaintiff cannot recover against the City without first proving a constitutional injury by a City employee.  But the fact that a finding against an individual employee is a necessary prerequisite to a judgment against the City does not mean that a plaintiff's case against the individual employee might not be strengthened by evidence he discovers as to the City's governing policies and practices. Without having analyzed all the evidentiary problems that would arise in a joint trial of the individual and *Monell* claims, it is easy to imagine that the information a plaintiff discovers concerning municipal policies and practices which caused his injury might well assist him in discovering evidence of and proving the unconstitutional conduct of individual City employees. Again, as in the case of trying to draw lines between the high-ranking defendants' individual liability and *Monell* liability in advance of trial, it is even more predictable that if the court gets into the business of trying to draw lines between information concerning individual employees' conduct and information concerning municipal policies and practices which may have been causally related to that conduct, it will be overwhelmed with discovery disputes that will slow down and possibly impede the search for truth.

The appeal of the City's motion lies in its promise of allowing complete avoidance of any trial on the plaintiff's *Monell* claims.  Individual defendants in this case are liable for compensatory and punitive damages.  The City, however, is liable only for compensatory damages and is not liable at all unless plaintiff first proves a constitutional injury by an individual City employee.  Thus, if plaintiff fails to establish a constitutional injury by any individual City employee, the City cannot

be liable, and if plaintiff does establish a constitutional injury by an individual City employee, the City's "Stipulation" provides for the payment of any award by the City, without the necessity of proving the *Monell* prerequisites to City liability.

In truth, however, the City's Stipulation provides the plaintiff and the court with little that the law does not otherwise provide. As Judge Kennelly pointed out in *Medina v. City of Chicago,* 100 F.Supp.2d 893, 895-96(N.D. Ill 2000), an Illinois state statute, 745 ILCS 10/9-102, directs local governments to pay tort judgments for compensatory damages for which its employees are liable, and the Seventh Circuit has held that this statute permits a §1983 plaintiff to bring a claim directly against the municipality to obtain a judgment for the amount due to the plaintiff from an individual officer. *Wilson v. City of Chicago,* 120 F.3d 681, 684-85 (7th Cir. 1997). Accordingly, the City's proposed Stipulation accomplishes nothing that Illinois law does not provide on its own.[2] If plaintiff gets a compensatory damages judgment against the individual officers in this case, he can recover the amount of the judgment from the City, with no need to prove his *Monell* claim. On the facts of this case, therefore, the City's "Stipulation" appears to offer little if anything to the court and the plaintiff other than a mess of tangled issues for discovery and trial.

The elephant in this room is the issue of whether, given the many decisions like that of the Seventh Circuit in *Treece v. Hochstetler,* 213 F.3d 360 (7th Cir. 2000), holding that municipal *Monell* liability is entirely derivative of individual employee liability (meaning that if the individual employee is not liable, the municipality is not liable), and given statutes like 9-102, that establish

---

[2]Obviously, in an appropriate case, the City could contest liability under 9-102 on the theory that its employees' unconstitutional acts were not committed within the scope of their employment. Based on what this court knows about the case at bar, it is unlikely that such a defense to liability could be made out here.

that if the individual employee is liable, the municipality must pay any compensatory damages awarded, and given the fact that no damages other than compensatory damages are recoverable against a municipality, there is any point to trying *Monell* claims, in this or in any other case.

This court grants that the argument for trial of *Monell* claims is weak, aside from the public interest in exposing unconstitutional municipal policies and practices, an interest which has been substantially deprecated by the many cases approving bifurcation and holding that a verdict in favor of the individual employees requires dismissal of the case against the municipality. *See, e.g., City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Interestingly, however, the facts that absent a finding against an individual employee, there is no cognizable interest in pursuing a *Monell* claim against a municipality, and that a finding against an individual employee entitles the plaintiff to collect his damages from the municipality without a trial (as the City's Stipulation provides), have not led to appellate holdings that the court *must* bifurcate. The reasons for giving the district court discretion in this matter are sound. First, it is conceivable that a verdict in favor of the individual officers could fail to moot the claim against the City, such as if the jury found that the officers acted in good faith or were otherwise immune. Second, were the plaintiff to recover only nominal damages against the individual defendants, there is authority for the proposition that plaintiff would be entitled to proceed against the City for an award of nominal damages. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999), holding that a decision to dismiss a plaintiff's claim against a municipality because only nominal damages are at stake is error.[3] As the Second Circuit in *Amato* emphasized, where the plaintiff has alleged claims of wrongdoing against the

---

[3]The court does not consider what such a strategy would mean for plaintiff's ability to recover attorneys' fees.

municipality that are separate and distinct from the allegations against a named individual defendant, the claims against the municipality are not moot even following a verdict against an individual employee which fully compensates the plaintiff for his injury because the municipality may be liable for nominal damages. *Id.* at 320-21 and n. 9. Finally, and most important in the case at bar, the court must consider its ability to manage the case as efficiently and economically as possible. While the City sees great advantages to its own interests in eliminating the need for discovery and trial of the *Monell* claims, the court sees a piece of litigation becoming unmanageably complex.

The City can attempt to settle its potential liability. It can concede liability and take the *Monell* issues out of contention. But what it is doing, albeit in an unusual and indirect way, is attempting to obtain the stay of discovery on the *Monell* claims which the court has previously refused, and to force bifurcation of the trial, promising in return that if the plaintiff wins against an individual officer, the City will not require the plaintiff to prove a policy and practice. At this stage, the court sees only difficulty and confusion from the course the City proposes. The City's motion is denied.

ENTER ORDER:


_____/s/_____
Joan B. Gottschall
United States District Judge


Dated: August 2, 2005

7

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.4
### Eastern Division

Bridget McLaughlin, et al.

                                   Plaintiff,

v.                                                  Case No.: 1:04–cv–07156
                                                    Honorable Samuel Der–Yeghiayan

City of Chicago, et al.

                                   Defendant.

---

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, June 14, 2005:

      MINUTE entry before Judge Samuel Der–Yeghiayan :As stated on the record, defendants' motion to reconsider denial of motion to bar Monell discovery and bifurcate trial [47] is denied. Plaintiff's motion for entry of protective order [49] is granted without objection. All previously set dates are to stand. Judge's staff mailed notice(mw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William T. Hart | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6620 | **DATE** | 6/30/2004 |
| **CASE TITLE** | Johnson vs. City of Chicago | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   In light of the amendment adding claims against defendants Cline and Hillard, there is no significant difference between discovery needed for those claims and discovery needed for the "Monell" claims against the City.  Defendant City's motion to bar discovery [24-1] is denied. No opinion is expressed as to the continuing effect of the City's waiver nor any effect such waiver might have on the trial itself. The parties shall consider waiting to conduct the depositions of Cline and Hillard until after other discovery is completed and a determination that such depositions are still necessary.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | JUL 0 1 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | 59 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| cw | courtroom deputy's initials | | | | | |

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2438 | **DATE** | 10/16/2003 |
| **CASE TITLE** | Fox vs. Tortoriello, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Discovery Motions Involving Policy Issues on Plaintiffs' § 1983 Claim Against City of Chicago

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Status hearing held.  For reasons stated on the record, Plaintiffs' Motion to Lift the Court Stay on Monell Discovery [41-1] is granted and City of Chicago's Motion to Bar Discovery of Policy Issues on § 1983 Claim Against City [43-1] is denied.  Jury Trial set for March 2, 2004 at 10:00 a.m.  Final Pre-trial Order including jury instructions due on February 17, 2004.  It is so ordered.

*Charles R. Norgle*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | **Document Number** |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 2 0 2003 | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | date docketed | |
| ✔ | Docketing to mail notices. | | 67. | 52 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7955 | **DATE** | 3/6/2003 |
| **CASE TITLE** | Paul Daval vs. City of Chicago, et al | | |

MOTION:    [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant City of Chicago's Motion to Structure Discovery

**DOCKET ENTRY:**

(1)  ☒  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☒  Status hearing re-set for 22 Apr. 03 at 9:00 A.M..

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ☒  [Other docket entry]  Defendant City of Chicago's Motion to Structure Discovery is denied.

(11)  ☐  [For further detail see order (on reverse side of/attached to) the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAR 10 2003 | | 9 |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | VMJ | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| WAP | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  03 MAR -7 PM 4:07  FILED-ED TO | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4010 | **DATE** | 9/6/2001 |
| **CASE TITLE** | WAITS vs. CITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    City of Chicago's motion to structure discovery is denied as stated in op
court.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | |

JHC

courtroom deputy's initials

FD-T
FILED FOR DOCKETING
01 SEP 10 PM 7: 09

Date/time received in central Clerk's Office

number of notices

SEP 1 3 2001
date docketed

docketing deputy initials

SEP 1 3 2001
date mailed notice

mailing deputy initials

**Document Number**

16