# EXHIBIT E



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDUARDO ALMARAZ, on behalf of          )
himself and other similarly           )
situated,                             )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      No. 07 C 6134
                                      )
OFFICER HALEAS, TERRY HILLARD,        )
LORI LIGHTFOOT, TISA MORRIS,          )
PHILIP CLINE, MAYOR RICHARD DALEY,    )
CITY OF CHICAGO, and UNKNOWN          )
CHICAGO POLICE OFFICERS,              )
                                      )
                                      )
            Defendants.               )

## OPINION AND ORDER

Plaintiff Eduardo Almaraz alleges that, on January 29,
2007, he was arrested without probable cause by defendant Officer
Haleas, a Chicago police officer.  Plaintiff also alleges that
Haleas committed state law malicious prosecution by providing
false testimony in support of charges against plaintiff that were
ultimately resolved in plaintiff's favor.  Also named as
defendants are the City of Chicago; Chicago Mayor Richard Daley;
former Superintendent of Police Philip Cline; Cline's predecessor
Terry Hillard;[1] Lori Lightfoot, who was Chief Administrator of

---

[1] Judicial notice is taken that Hillard has not been
Police Superintendent since August 2003.

the Police Department's Office of Professional Standards ("OPS")

from August 2002 to July 2004; and Tisa Morris[2] who succeeded

Lightfoot and remained in that position until October 2006.[3]   The

First Corrected Amended Complaint contains ten counts labeled as

follows:   (I) [42 U.S.C.] § 1983 false arrest against Haleas;

(II) state law false arrest against Haleas; (III) state law

malicious prosecution against Haleas; (IV) § 1983 liability of

the Supervisory Defendants: (V) § 1983 equal protection--class of

one against Haleas; (VI) Monell [municipal liability] claim

against the City; (VII) 745 ILCS 10/9-102 [municipal tort

liability] claim against the City; (VIII) state law respondeat

superior claim against the City; (IX) class allegations;[4] and

(X) RICO claim against Haleas.

---

[2]Collectively, Daley, Cline, Hillard, Lightfoot, and Morris will be referred to as the "Supervisory Defendants."

[3]The caption of the Complaint also includes unknown Chicago police officers as defendants and the body of the Complaint contains repeated references to such officers.   For present purposes, any liability of those officers need not be considered.

[4]The Complaint proposes the following definitions of two sub-classes:   "i. All persons who, at any time on and after two years preceding the filing of this lawsuit until the date of entry of judgment, were detained and/or arrested by [Haleas] and UNKNOWN CHICAGO POLICE OFFICERS as a result of a DUI stop without probable cause.   ii.   All persons who, at any time on and after one year preceding the filing of this lawsuit until the date of entry of judgment, were prosecuted by [Haleas] and UNKNOWN CHICAGO POLICE OFFICERS based on false testimony, police reports, and/or evidence, i.e. maliciously prosecuted, without probable cause."   Compl. ¶ 121.

Although all defendants are represented by the same attorney, the City and Haleas, the Mayor, and the other defendants each filed a separate motion to dismiss.[5] It is this bench's longstanding practice to examine a motion to dismiss prior to it being presented in court. If the motion to dismiss does not appear to be meritorious or, if any arguments that appear meritorious would only result in the dismissal of less than all claims and not significantly affect discovery,[6] the motion to dismiss will be denied without prejudice to renewing any arguments on summary judgment. Such a procedure results in a substantial saving of court and attorney time and allows the parties to devote their time to discovery rather than briefing a motion that will not significantly affect the proceedings other than to delay them. When the motion is noticed for a day on which the court does not happen to be sitting, an order denying such a motion will be issued without the movant first appearing in court to present the motion. That is what initially happened with the motions to dismiss filed by defendants in this case.

---

[5]Any further motions and supporting briefs filed in this case by defendants shall be consolidated into a single motion and brief, at least as long as they are represented by the same attorney.

[6]Generally, it is also considered whether any defendant might have all the claims against him, her or it dismissed. Here, since the Supervisory Defendants are all represented by the same attorney, dismissing one or more of the Supervisory Defendants would not have a significant impact on discovery nor any defendant's defense costs.

Promptly thereafter, defendants moved for reconsideration. Because defendants were insistent that the court had missed the merits of its arguments, plaintiff was thereafter required to respond to the motions to reconsider. The motions to reconsider and the merits of the motions to dismiss will now be fully addressed.

Plaintiff argues that the court should not address the merits of the motions to dismiss because defendants do not have any sufficient ground for seeking reconsideration, just reiterations of their original arguments in support of the motions to dismiss. When no judgment has been entered, no specific time limit applies to a motion for reconsideration and the district court has the inherent authority to reconsider its ruling. In comparison with a Rule 59(e) motion brought after the entry of judgment, the scope of issues that may be raised in seeking reconsideration of an interlocutory order is broader. It is within the court's discretion as to what issues to reconsider, which can include arguments not previously raised as well as reiterations of arguments previously raised. See United States Gypsum Co. v. LaFarge N. Am., Inc., 2007 WL 2091020 (N.D. Ill. July 18, 2007); Denson v. Northeast Ill. Reg'l Commuter R.R. Corp., 2002 WL 745797 *1 (N.D. Ill. April 26, 2002); Anderson v. Cornejo, 199 F.R.D. 228, 253 (N.D. Ill. 2000).

- 4 -

On reconsideration, the merits of the original motions to dismiss will be considered.

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Estate of Sims v. County of Bureau, 506 F.3d 509, 514 (7th Cir. 2007). Plaintiff need only plead facts sufficient to raise a right to relief above the speculative level, providing fair notice and an appearance of plausibility. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1973-74 & n.14 (2007); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Sims, 506 F.3d at 514; St. John's United Church of Chicago, 502 F.3d 616, 625 (7th Cir. 2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007). A complaint should be dismissed if "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." St. John's, 502 F.3d at 625 (quoting Airborne, 499 F.3d at 667). When a case is more complex than the average case and discovery is likely to be more costly than the average case, more factual detail may be necessary to establish the plausibility of the claims requiring the additional burden. See Limestone Dev. Corp. v. Village of Lemont, Ill., ___ F.3d ___, 2008 WL 852586 *5 (7th Cir. April 1, 2008). Still, absent the applicability of Fed. R. Civ. P. 9(b), heightened fact

pleading of specifics is not required.  Id. at *5 (quoting
Twombly, 127 S. Ct. at 1964, 1974).

The well-pleaded allegations of the complaint must be
taken as true and all reasonable inferences drawn in plaintiff's
favor.  Twombly, 127 S. Ct. at 1965; Erickson, 127 S. Ct.
at 2200; Sims, 506 F.3d at 512; Caldwell v. Jones, 513
F. Supp. 2d 1000, 1003 (N.D. Ind. 2007).  "[O]nce a claim has
been stated adequately, it may be supported by showing any set of
facts consistent with the allegations in the complaint."
Twombly, 127 S. Ct. at 1969; Caldwell, 513 F. Supp. 2d at 1003.
As long as consistent with the allegations of the complaint,
plaintiff may assert additional facts in his response to the
motion to dismiss.  Brokaw v. Mercer County, 235 F.3d 1000, 1006
(7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368
(7th Cir. 2000); Bass v. Dart, 2007 WL 3374584 *1 (N.D. Ill.
Nov. 8, 2007); Gershengorin v. Vienna Beef, Ltd., 2007 WL 2840476
*3 (N.D. Ill. Sept. 28, 2007).

Additionally, under federal pleading rules, plaintiff is
not limited to nor bound by the legal characterizations of his
claims contained in the complaint.  A claim can survive as long
as the facts alleged would support relief.  Forseth, 199 F.3d
at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041
(7th Cir. 1999); LaRoe v. Cassens & Sons, Inc., 472 F. Supp. 2d
1041, 1047 (S.D. Ill. 2006).  The legal basis for a claim,

though, must be identified in response to a motion to dismiss and adequate argument made in support of an adequate claim being stated. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Defendants contend that plaintiff's Count I false arrest claim alleges insufficient facts. Plaintiff alleges that Haleas arrested him on January 29, 2007, that plaintiff was not engaging in any criminal activity, and that Haleas did not have any information that would support probable cause for an arrest. Compl. ¶¶ 10-16, 90-92. Also included in the general allegations is an allegation that additional unknown police officers were involved in his arrest. Haleas, however, is the only defendant named in Count I. Although plaintiff does not expressly allege the grounds for which he was purportedly arrested, it can be inferred from the class allegations, see id. ¶ 121, that he was arrested for driving while under the influence. Defendants complain that plaintiff does not allege "the site of his arrest, identify the time of the encounter with the police, explain what happened, provide the number of other officers involved, or offer any details regarding any other allegedly unlawful 'acts or omissions' of the 'Unknown Chicago Police Officers.' Plaintiff also does not identify or provide any description of the 'unknown

officers' who allegedly engaged in these unspecified acts or omissions.'" City & Haleas Motion to Dismiss [35] ¶ 5. Plaintiff responds that defendants have adequate notice because they have access to the police report and his name, the arresting officer's name, and the date are sufficient information to locate the police report.

A false arrest claim is based on a relatively discrete event. It does not require substantial detail to provide a defendant with fair notice of such a claim. That plaintiff was arrested, had not committed any crime, and the arresting officer had insufficient information to support probable cause, even alleged in a conclusory manner, supports that plaintiff has a cognizable claim. Plaintiff's name and the date of the arrest provide sufficient information for defendants to investigate the allegations and respond to the Complaint. See Nawrocki v. Scully, 2006 WL 1735294 *5-6 (N.D. Ill. June 19, 2006); Antonelli v. Askew, 1996 WL 131177 *3 (N.D. Ill. March 21, 1996). The references to additional officers are irrelevant to whether plaintiff has adequately alleged that Haleas, the only defendant named in Count I, committed a false arrest. Count I will not be dismissed.

The principal issue raised by defendants (except Haleas) is whether plaintiff has alleged sufficient facts to support municipal liability as to the City and supervisor liability on

- 8 -

the part of the Supervisory Defendants.  Liability of the City

will be addressed first.  A municipality may be held liable based

on "a widespread practice that is so permanent and well-settled

that it constitutes a custom or practice."  Sims, 506 F.3d

at 515.

Plaintiff alleges that employees of the Chicago Police

Department engage in a widespread custom or practice of

(a) producing false documents to cover up for police officers;

(b) false arrests and related violations; (c) failing to

discipline or otherwise sanction officers who commit false

arrests and related violations; (d) failing to properly

investigate such violations; and (e) failing to take remedial

actions to prevent further violations of this type.  It is

further alleged that the widespread existence of these practices

with no attempt to stop them have resulted in Chicago police

officers recognizing that they are unlikely to be punished for

committing such acts, including false arrests and creating

falsified police reports.  Additionally, it is alleged that a

code of silence has arisen among members of the police force that

interferes with the reporting and discipline of misconduct.

In support of the general allegations of the existence of

these practices, plaintiff has alleged some supporting facts as

well as alleging a number of specific instances of such

practices.  Plaintiff alleges that, from 2001 through 2006, at

least 662 special operations officers have had at least ten
complaints filed against them and the City has not attempted to
properly investigate these complaints. At least four officers
have 50 or more complaints against them. Ten officers have a
total of 408 complaints against them of which three have been
sustained. Plaintiff does not expressly allege that any of these
numerous complaints were meritorious. Plaintiff alleges six of
the special operations officers were indicted for robbing and
kidnaping.[7]

Plaintiff alleges that OPS has sustained less then one
percent of the complaints brought before it. Plaintiff does not
allege what percentage of the complaints were meritorious. He
does allege that the City has never retained any outside party to
review the accuracy of OPS's findings or to study whether OPS has
been properly investigating complaints of police misconduct. It
is alleged that OPS's relationship with the Mayor and City has
prevented OPS from being an independent investigator of police
conduct. He alleges that OPS's lack of independence results in
it limiting its investigations and keeping down sustained
findings so as to prevent the complainant from having information

---

[7]As was reported at a recent status hearing and can be
verified by state court records of which judicial notice could be
taken, Haleas was recently indicted for falsifying police records
when arresting an alleged DUI offender.

or findings that would be helpful in obtaining monetary damages from the City.

As to four of the indicted special operations officers, plaintiff specifically alleges their names and the crimes they committed and that three pleaded guilty to those crimes and the fourth was found guilty after a trial. Each of them had more than ten complaints filed against him and OPS did not sustain any of those complaints. Two of those officers had more than 15 federal lawsuits filed against them. None of them had been disciplined prior to being indicted.

Plaintiff generally alleges that, in the 1980's and 1990's, members of the Chicago Police Department engaged in torture and that significant and credible evidence of that conduct has come to light. Nevertheless, nobody implicated by that evidence has been disciplined.

Plaintiff alleges that, in 1995, the Internal Affairs Division of the Police Department conducted a study of disciplined police officers in an attempt to determine if a software program known as BrainMaker could identify factors indicating police officers who were at risk of committing disciplinary violations. When the study results were applied to 12,500 of the Department's officers, 91 officers were identified as being at-risk, of which half were already in a counseling program for officers who had engaged in misconduct. The project

- 11 -

Case: 1:07-cv-06634 Document 73-6 Filed: 04/25/2008 Page 2 of 21

was abandoned without attempting to follow up on the at-risk officers. There is no allegation that Haleas was one of the at-risk officers or that, had his characteristics been entered in the program, he would have been identified as at-risk.

Under applicable federal pleading standards, plaintiff has alleged sufficient facts to support that the Chicago Police Department has a practice of failing to adequately investigate and discipline police officers who commit false arrests and falsify reports of criminal activity by citizens.  Cf. Thayer v. Chiczewski, 2007 WL 3447931 *6-7 (N.D. Ill. Nov. 13, 2007).  It is not enough, however, to simply allege the existence of a policy or practice.  There must also be sufficient allegations to support that the policy or practice was a moving force behind the conduct that injured the plaintiff.  Sims, 506 F.3d at 514.  A direct allegation of causation is not required; it may be inferred from the facts alleged.  See Johnson v. Dossey, 515 F.3d 778, 782 (7th Cir. 2008).  The inference still must be sufficiently strong to have an appearance of plausibility; it must be more than speculative.

There are no factual allegations plausibly supporting that Haleas would have been identified as being at risk of engaging in improper conduct had the Department followed up on the BrainMaker study so those allegations may be ignored.  There are also no allegations plausibly supporting that the City

- 12 -

directly encouraged Haleas to commit false arrests. The question
is whether plaintiff sufficiently alleges that Haleas was
encouraged by knowledge that he was unlikely to face any
discipline for falsely arresting plaintiff or falsifying
documentation that plaintiff had committed a crime. Such a
practice can support municipal liability, see Sledd v. Lindsay,
102 F.3d 282, 288-89 (7th Cir. 1996), though it still must be
adequately alleged under current pleading standards. Whether
Haleas was so motivated is an issue of Haleas's mental state,
which may be generally alleged. See Fed. R. Civ. P. 9(b).
Plaintiff does not include in the Complaint an express allegation
that Haleas acted on such a belief. However, it is alleged that
Haleas engaged in repeated acts of false arrests. Compl. ¶ 21.
From the allegations of (1) a widespread practice of failing to
discipline police officers for engaging in false arrests and
falsifying documents and (2) Haleas engaging in repeated false
arrests, it may reasonably be inferred that Haleas believed he
was unlikely to be disciplined for such misconduct and that this
belief was a motivating force behind his continuing to engage in
such conduct, including when arresting plaintiff. The facts are
sufficient to plausibly support that Haleas was so motivated.

The City cites Chaparro v. Powell, 2008 WL 68683 *2-3
(N.D. Ill. Jan. 2, 2008), which dismissed municipal liability
claims against the City. In that case, it is held that

- 13 -

allegations of a code of silence based on police misconduct not
directly involving the plaintiff and police officer defendants in
that case were insufficient to plausibly support the municipal
liability claims in that case. Although the Chaparro opinion
does not detail the allegations of the Chaparro complaint,
defendants represent that the plaintiff in that case is
represented by the same attorney that represents plaintiff
Almaraz in this case and that the portions of the complaints
labeled as Monell allegations in both cases are essentially
identical. An examination of the docket and complaint in the
Chaparro case (No. 07 C 5277 (N.D. Ill.)) confirms this
representation. As represented by defendants and as stated in
Chaparro, 2008 WL 68683 at *3 & n.1, a number of other cases
involving the same plaintiff's attorney include similar
allegations. None of the other cases have issued opinions
addressing the municipal liability issue. Almaraz's Complaint,
however, contains an allegation that distinguishes it from the
Chaparro complaint. Almaraz alleges that Haleas engaged in
repeated acts of arresting persons without probable cause from
which it has been reasonably inferred that Haleas was motivated,
at least in part, by believing it was unlikely he would be
disciplined. An examination of the Chaparro complaint does not
indicate a similar allegation regarding the defendants in that
case. And even if such an allegation is contained in the

- 14 -

<u>Chaparro</u> complaint, it was not considered by the court when addressing the municipal liability issue in <u>Chaparro</u>. To the extent <u>Chaparro</u> is not factually distinguishable from the present case, for the reasons discussed above, this bench respectfully disagrees with the municipal liability ruling in <u>Chaparro</u>.

The City's motion to dismiss the Count VI municipal liability claim will not be granted.

Still to be considered are the claims against the Supervisory Defendants. The Complaint does not expressly state whether these defendants are sued in their individual or official capacity. These defendants contend the Complaint should be construed as suing them in their official capacities only. A reasonable reading of the Complaint, however, is that the Supervisory Defendants are sued in their individual capacities. The Supervisory Defendants' titles are not included in the caption of the Complaint. The one count of the Complaint in which they are named (Count IV) refers to their "§ 1983 liability." This is in contrast with a separate "<u>Monell</u>" count (Count VI) naming the City. With the City already named as a defendant, also naming the Supervisory Defendants in their official capacities would be redundant, and Counts IV and VI would be redundant. If sued in their official capacities only, it would be unnecessary to allege, as is done in Count IV, that the Supervisory Defendants had personal knowledge of the

- 15 -

practices and were deliberately indifferent. Also, if sued in
their official capacity, it would be unnecessary to name two
Police Superintendents and two OPS Administrators. Also, the
appropriate person to name in an official capacity suit is a
current municipal officer. All the Supervisory Defendants except
Mayor Daley formerly held the positions referenced in the
Complaint. The Complaint is construed as naming the Supervisory
Defendants in their individual capacities only. Cf. Wynn v.
Southward, 251 F.3d 588, 592 (7th Cir. 2001).

A municipal official may be found individually liable
based on a municipal custom or practice for which he or she is
responsible and of which he or she knew.

> To be liable for a constitutional violation, a
> supervisory defendant need not have directly
> participated in the deprivation of rights, but he
> or she must have been personally involved in the
> deprivation. [Del Raine v. Williford, 32 F.3d
> 1024, 1047 (7th Cir. 1994)]; Sanville v.
> McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001);
> Chavez [v. Illinois State Police], 251 F.3d
> [612,] 651 [(7th Cir. 2001)]. "A defendant
> 'will be deemed to have sufficient personal
> responsibility if he directed the conduct
> causing the constitutional violation, or if it
> occurred with his knowledge or consent.'"
> Sanville, 266 F.3d at 740 (quoting Chavez,
> 251 F.3d at 652). "Supervisors who are merely
> negligent in failing to detect and prevent
> subordinates' misconduct are not liable. . . .
> The supervisors must know about the conduct and
> facilitate it, approve it, condone it, or turn a
> blind eye for fear of what they might see. They
> must in other words act either knowingly or with
> deliberate, reckless indifference." Chavez,
> 251 F.3d at 651 (quoting Jones v. City of
> Chicago, 856 F.2d 985, 992-93 (7th Cir.1988)).

> Thus, where there is a formal policy that is
> unconstitutional, an official will be liable for
> "formulating and directing" the policy. <u>Del
> Raine</u>, 32 F.3d at 1052 (Manion, J., concurring);
> <u>Neilis v. Ward</u>, 2000 WL 1372870 *3 (N.D. Ill.
> Sept. 21, 2000); <u>Bolden v. Peters</u>, 1994 WL 695524
> *4 (N.D. Ill. Dec. 9, 1994). Where there is a
> custom, practice, or pattern of unconstitutional
> conduct by subordinates that is not pursuant to a
> formal policy, the supervisor must facilitate,
> approve, condone, or deliberately ignore the
> practice in order to be liable. <u>Clinkscales v.
> Sheahan</u>, 1998 WL 292402 *2 (N.D. Ill. May 19,
> 1998).

<u>Anderson v. Cornejo</u>, 284 F. Supp. 2d 1008, 1029 (N.D. Ill. 2003)

(quoting <u>Anderson v. Cornejo</u>, 225 F. Supp. 2d 834, 859-60 (N.D.

Ill. 2002), <u>rev'd in part, vacated in part</u>, 355 F.3d 1021 (7th

Cir. 2004)).

As was previously discussed regarding the City's

liability, plaintiff has adequately alleged the existence of a

custom or practice of the Police Department that was a moving

force behind Haleas's conduct. As to the Supervisory Defendants,

it must be determined whether their responsibility for those

practices is adequately alleged. Lightfoot and Morris were

directly responsible for the unit of the Police Department

charged with considering complaints against police officers. It

is alleged that they were aware of both widespread violations by

police officers and the failure of OPS to adequately investigate

such violations or discipline the officers engaged in such

misconduct. Federal pleading rules permit general allegations of

conditions of mind such as knowledge. In light of the widespread violations that are alleged, it is plausible that the OPS Administrator would be aware of what was happening. It is also alleged that Superintendents Hillard and Cline had such knowledge and failed to act to stop the abuses. The allegations as to them are also plausible. Mayor Daley is another step removed. It is alleged that he appointed the OPS Administrator, but there is no allegation that he had direct control over the Police Department. There are insufficient allegations to plausibly support the Mayor's individual liability in this case. The claim against Mayor Daley will be dismissed.

Hillard, Lightfoot, and Morris also argue that they cannot be liable because they were no longer in the alleged positions when plaintiff was arrested in January 2007. It is plausible that the practices alleged in the Complaint would have the complained of effects for a period of time beyond when they left their positions. However, after others have had time to impose new policies and practices, the former official eventually will no longer be responsible for existing conditions. Here, the arrest of plaintiff occurred almost three and one-half years after Hillard left the Superintendent position and approximately two and one-half years after Lightfoot stopped being the OPS Administrator. Absent additional facts supporting the lingering effects of their conduct, it is speculative that Hillard and

Lightfoot were a cause of plaintiff's arrest. The claims against these two defendants will be dismissed. Morris was the OPS Administrator until a few months before plaintiff's arrest. It is plausible that her conduct contributed to the practices that are alleged to be a cause of plaintiff's arrest. The Count IV claims against Cline and Morris will not be dismissed.

Last, Haleas argues that the RICO claim should be dismissed because plaintiff has not alleged an injury to business or property necessary to support standing for such a claim. See Evans v. City of Chicago, 434 F.3d 916, 924 (7th Cir. 2006). Plaintiff alleges that he suffered a loss of property in the form of the costs of having his vehicle towed, court costs and attorney fees to defend himself, and lost wages.[8]

The Seventh Circuit has held the injury to business or property that is required for RICO standing does not include "recovery for personal injuries and the pecuniary losses incurred therefrom." Id. at 925 (quoting Doe v. Roe, 958 F.2d 763, 767 (7th Cir. 1992)). Lost income while falsely imprisoned by a police officer and costs and fees incurred while defending against false charges do not qualify as RICO injuries to business

---

[8]Plaintiff also alleges injury in the form of fines ("payment for a supposed violation"). Compl. ¶ 125. The RICO count includes class allegations. Since plaintiff alleges that the charges against him were resolved in his favor, he would not have had to pay a fine. The allegation as to fines should be understood as pertaining to putative class members.

or property.  <u>Evans</u>, 434 F.3d at 926-33; <u>Thompson v. City of Chicago</u>, 2008 WL 780631 *2 (N.D. Ill. March 20, 2008); <u>Cannon v. Burge</u>, 2007 WL 2278265 *3-4 (N.D. Ill. Aug. 8, 2007).  The towing of plaintiff's car when arrested is also a form of personal injury that does not support RICO standing, as would be any fine imposed as a result of charges being prosecuted.  The RICO claim will be dismissed for lack of standing.

        IT IS THEREFORE ORDERED that defendants' motions for reconsideration [42, 44] are granted in part and denied in part. Count X of the First Amended Corrected Complaint is dismissed. The claims against defendants Hillard, Lightfoot, and Daley are dismissed and those defendants are dismissed from this action. Within two weeks, defendants shall answer the remaining allegations of the First Amended Corrected Complaint.  All discovery is to be completed by September 26, 2008.  By May 21, 2008, plaintiff shall file his motion for class certification and a supporting brief.  Defendants' answer is due June 11, 2008. Plaintiff's reply is due June 25, 2008.  A status hearing will be held on June 4, 2008 at 11:00 a.m.

                            ENTER:


                                    _William T. Gott_____
                                    UNITED STATES DISTRICT JUDGE

DATED:  APRIL  25  , 2008