**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDUARDO ALMARAZ,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.      ) | No. 07 C 6134 |
| ) | |
| OFFICER HALEAS, TISA MORRIS,     ) | Judge William Hart |
| PHILLIP CLINE, and the CITY OF     ) | |
| CHICAGO,     ) | Magistrate Judge Susan Cox |
| ) | |
| Defendants.     ) | |
| ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF
MOTION TO BIFURCATE §1983 CLAIMS AND
TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS**

**INTRODUCTION**

The City's position is simple.  The City has agreed to waive proof of certain elements of plaintiff's *Monell* "policy" claim.  As a result, plaintiff can obtain all the relief he is entitled to seek from the City merely by proving a constitutional violation was committed by an individual City defendant.  If plaintiff succeeds, the City has stipulated to judgment being entered against it, and the City will pay any compensatory damages (and reasonable attorneys' fees) plaintiff is awarded.  Grounded squarely on the pragmatic values of Rule 42(b) of the Federal Rules of Civil Procedure – in particular, efficiency, economy, and fairness – the motion is especially well-suited as applied to §1983 *Monell* claims, which are prone to prolonged and costly litigation. The motion is a powerful procedural tool that serves the best interests of the parties, this Court, and the litigation process itself.

Rather than embrace the City's attempt to streamline this case, plaintiff's reaction is to attack the motion, primarily by mischaracterizing it and what it would accomplish.  Plaintiff's response tries to make the motion seem confusing and needlessly complicated.  Plaintiff mainly opposes the motion on the grounds that it does not serve the interests of judicial economy.  To create the illusion of inefficiency, plaintiff's argument necessarily misstates both the nature and scope of his claims against the municipal defendants and the discovery he believes necessary to establish those claims.  This Court should grant the City's motion.

<u>**DISCUSSION**</u>

A.      <u>**Bifurcation Best Serves the Interests of Economy, Efficiency, and Fairness**</u>

Plaintiff initially opposes the City's motion because the City supposedly overstates the nature and amount of *Monell* discovery involved in this case. It is plaintiff, not the City, that makes "misleading assertions" concerning the *Monell* discovery burden. Plaintiff appears to suggest all that remains as far as document production is for his receipt of complaint registers. (Response, at p. 4). Plaintiff's own discovery requests, pleadings, and current motion practice belie such a conclusion.

Plaintiff's "*Monell* Discovery Requests" consist of 37 separate paragraphs. (*See* Exhibit A attached to City's Motion to Bifurcate, Dkt. #114). Some of these requests relate to defendant Haleas; others do not. Those that do not range far beyond defendant Haleas and the type of incident (a DUI arrest) underlying plaintiff's claim. To take one example, plaintiff seeks documents of any kind over a ten year period of time concerning charges, lawsuits, complaints, or internal investigations against a City police officer alleging false arrest. (*See* "*Monell* Discovery Requests," *supra*, at par. 4). Another makes a similarly broad request for documents relating to malicious prosecution. (*Id*. at par. 13). Yet another seeks documents concerning situations when police officers arrest fellow officers. (*Id*. at par. 23). Putting aside the highly questionable relevance of such requests, the number and type of documents that arguably might fall within the scope of these requests is staggering.

Plaintiff's pleadings suggest an even broader scope of potential discovery. Plaintiff's corrected first amended complaint includes a sweeping *Monell* claim that alleges police misconduct going back at least 25 years. Rather than articulate a specific municipal policy, plaintiff's *Monell* claim generally references a myriad of unrelated incidents that include alleged Area 2 torture in the 1980's, misconduct in the Special Operations Section, the unrelated *Bond* lawsuit, the alleged non-independence of OPS, and charges against recently convicted police officers Flagg, Black, Jones, and Haynes. Indeed, plaintiff has a pending motion seeking to reintroduce the "BrainMaker" allegations into his *Monell* claim. Plaintiff's ineffectual attempt in the Response to downplay the massive scope of potential *Monell* discovery is conclusively refuted by his own pleadings and discovery requests. *See Ojeda-Beltran v. Lucio, et al.*, No. 07 C 6667, 2008 WL 2782815, at *2 (N.D. Ill. July 16, 2008) (Aspen, J.) (Motion to bifurcate granted where "plaintiffs' contention that the *Monell* litigation will not require substantial

additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests"); *Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at *6 (N.D. Ill. Nov. 1, 2007) (Brown, J.) (same).[1]

Discovery on the *Monell* claims is likely to be "colossal," notwithstanding plaintiff's attempts to minimize it. In addition to the extensive written *Monell* discovery already served by plaintiff's counsel, the expansive, wide-ranging nature of plaintiff's unfocused *Monell* claim potentially could involve dozens upon dozens of depositions. Arguably, any individuals involved in, or who had knowledge of, the multiple instances of alleged police misconduct referenced in plaintiff's *Monell* claim might be subject to deposition. Simply put, there are scores of purely *Monell* witnesses whose depositions can be avoided. Discovery motions and disputes related to *Monell* (such as plaintiff's "Brainmaker" motion currently pending before this Court) can be avoided. *Monell* expert discovery and depositions can be avoided. *Monell* summary judgment motions can be avoided. Granting the City's motion will significantly streamline and simplify discovery in this case, resulting in substantial savings of time and expense for the parties and this Court. As recently recognized by Judge Aspen in granting an analogous motion:

> Accordingly, we conclude that litigation of the *Monell* claim is likely to require a considerable investment of resources on the part of the parties and the Court outside of those required for the resolution of the claims against Defendant Officers. We find it prudent to resolve the claims against Defendant Officers before engaging in costly and time-consuming litigation of the *Monell* claim.

*Ojeda-Beltran*, 2008 WL 2782815, at *3.

Plaintiff's next argument in opposition to the motion suggests bifurcation of discovery will be inefficient because his supervisory liability claims are substantially similar to the *Monell* claim. This argument appears to be based in part on plaintiff's erroneous contention there is "no significant difference between the claims against the supervisory defendants and *Monell* discovery." (Response, at p. 8). As set forth below, there are important differences between such claims, not the least of which is the scope of relevant discovery. Moreover, plaintiff's

---

[1] The City will provide the Court with copies of the unreported decisions along with the courtesy copies of the motion to bifurcate and this reply brief.

argument as to the similarity between his *Monell* and supervisory liability claims ignores the actual allegations of his complaint.

At the outset, it must be understood that neither defendant Philip Cline nor defendant Tisa Morris are City policymakers for purposes of *Monell* liability.  There are three ways in which §1983 liability can be imposed on a municipality: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or, (3) a constitutional injury caused by an individual with "final policymaking authority."  *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-05 (7th Cir. 1998).  The Seventh Circuit has determined that the legislative body (City Council) is the final policymaker for purposes of §1983 liability against the City.  *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992).  Accordingly, a theory that Cline or Morris are "final policymakers" provides no support for plaintiff's argument that supervisory liability discovery and *Monell* discovery will be the same.

A review of plaintiff's pleadings demonstrates discovery relevant to establish the liability of defendants Cline and Morris under a theory of supervisory liability will not substantially overlap with *Monell* discovery.  While both theories would require plaintiff to prove a violation of his constitutional rights, plaintiff's supervisory liability claim is much more narrow than his *Monell* claim.  *Monell* liability requires a plaintiff to establish municipal policymakers (here, City Council) demonstrated deliberate indifference to the alleged practice or custom that caused the constitutional violation.  Full-blown *Monell* discovery therefore would involve written and oral discovery concerning the conduct of the City Council.  And as detailed above, plaintiff's *Monell* claim incorporates a myriad of unrelated allegations of police misconduct over a 25 year time period.  Discovery on such a broad claim will be expansive, wide ranging, and extremely time consuming.

In contrast, discovery of the claims against defendants Cline and Morris will be significantly more limited.  An individual cannot be liable in a §1983 action unless he or she caused or participated in an alleged constitutional deprivation.  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).  For that reason, a plaintiff must establish the supervisory official personally participated in or directly caused his alleged constitutional deprivation.  *Williams v. City of Chicago*, No. 94 C 3350, 1994 WL 594674, at *4 (N.D. Ill. 1994).  As observed by the

Seventh Circuit, "without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf-Lillie v. Sonquist*, 699 F.2d at 869.

In response to a previously-filed motion to dismiss (Dkt. #42), plaintiff insisted his claims were asserted against defendants Cline and Morris in their individual capacities for their alleged personal involvement in violating plaintiff's constitutional rights. (Dkt. #57). These supervisory defendants either personally committed a constitutional violation against plaintiff, or they did not. Evidence to establish such a claim is separate from the elements needed to prove a *Monell* claim. While these defendants will still be subject to written discovery and/or a deposition, bifurcation would limit the scope of inquiry to their personal actions as alleged in the complaint. If *Monell* issues are postponed (or potentially eliminated) by the City's stipulation, then the discovery of these individuals would not need to focus on the various alleged municipal policy issues, and instead would be limited to whether their personal conduct rose to the level of a constitutional violation resulting in an injury to plaintiff.

Plaintiff's Response repeatedly confuses the differences between an individual's potential supervisory liability and a municipality's potential *Monell* liability. For example, plaintiff claims in his Response that the supervisory defendants were aware of the failure of OPS to adequately investigate or discipline other officers. Confusing the concept of municipal liability with supervisory liability, plaintiff declares, "Had the *City of Chicago* engaged in proper investigations and/or analysis of its police officers, many officers, including Officer Haleas, would not have been able to continue their habitual pattern of abuse." *See* Response, at p. 5 (emphasis added). Plaintiff's assertion undeniably invokes traditional concepts associated with municipal liability. In focusing on the City's alleged failure, however, plaintiff's argument disregards the requirement of personal responsibility as an element of supervisory liability.

Similarly, plaintiff argues that he wants to conduct discovery as to "BrainMaker" to show deliberate indifference by the City and the supervisors. (Response, at p. 7). Under no circumstances can plaintiff reasonably suggest "BrainMaker" is relevant to the potential supervisory liability of defendants Cline or Morris, as opposed to a purely *Monell* issue that can be avoided by granting the City's motion. Plaintiff's pleadings allege "BrainMaker" was tested and subsequently "abandoned" by the City in the 1990's. (*See* Plaintiff's Corrected First

Amended Complaint, ¶¶ 81-89, Dkt. #63).  Plaintiff knows or reasonably should have known Tisa Morris was Chief Administrator of OPS from July 2004 to October 2006 (*Id.* at ¶ 9), and that Phil Cline was Superintendent of Police from October 2003 through August 2007.  (Dkt. #94).  Neither defendant Cline nor defendant Morris could possibly have been a supervisor with personal involvement during the time that "BrainMaker" allegedly was "abandoned."  In other words, plaintiff can never establish that either Cline or Morris was personally involved with the testing, implementation, or abandonment of the "BrainMaker" program.  Thus, "BrainMaker" presents an example of how discovery does not overlap between *Monell* and supervisory liability issues.  "BrainMaker" is solely a *Monell* issue.  It was raised as part of plaintiff's *Monell* claim in the pleadings and is completely irrelevant to plaintiff's purported supervisory liability claims against Cline and Morris.[2]  This Court should reject plaintiff's attempt to demonstrate an overlap that does not exist by his "confusion" of the issues of municipal liability and supervisory liability.

While there may be limited overlap of discovery relevant to both supervisory and municipal liability, it is nowhere near as substantial as suggested by plaintiff in this case.[3]  Plaintiff's generalized, wide ranging *Monell* allegations go far beyond any custom and policy discovery that will be relevant to individual defendants Cline and Morris.  Conversely, proof of plaintiff's supervisory liability claims against Cline and Morris would not include most of the evidence plaintiff would need to prove his *Monell* claims.  The circumstances of this case, as determined by plaintiff's own pleadings and discovery requests, demonstrate it is much more efficient to bifurcate the *Monell* claims and to stay *Monell* discovery at this time (perhaps negating the need for that discovery all together).  *See Elrod v. City of Chicago,* 2007 WL 3241352, at *7.  Because the discovery overlap is limited in this case, the presence of supervisory liability claims does not pose an obstacle to this Court's bifurcation of *Monell*.

---

[2] As such, the pending motion to allow "BrainMaker" discovery presents a concrete example of a current discovery dispute that can be avoided by granting the City's motion.

[3] In some cases, the overlap between *Monell* discovery and supervisory liability discovery might be much more substantial.  (*See*, *e.g.*, *Johnson v. City of Chicago*, No. 03 C 6620 (N.D. Ill. June 30, 2004) (Hart, J.) ("no significant difference").  As framed by plaintiff's own pleadings and discovery requests, such is not the case here.

### B.     Bifurcation Will Avoid Prejudice to the Individual Defendants

Bifurcation of the *Monell* claims from those against the individual defendant also will serve to protect that defendant from the risk of prejudice arising from the introduction of wide ranging and extraneous evidence concerning allegedly deficient municipal customs, policies, and practices. As set forth in the City's motion (at p. 6), plaintiff will attempt to prove the *Monell* claim, at least in part, by the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers over the past 25 years. The extent and type of misconduct alleged heightens the substantial risk such evidence will unfairly prejudice the individual defendant in his attempt to defend himself against plaintiff's claims. Bifurcation of the *Monell* claim is a proper means to combat this potential prejudice. *See Ojeda-Beltran,* 2008 WL 2782815, at *3 (bifurcation appropriate to protect against undue prejudice to individual defendant officers where plaintiffs intended to prove their *Monell* claim "through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers").

Plaintiff's response does not really address this portion of the City's motion. Plaintiff mistakenly suggests this Court already rejected the City's position in its denial of the motion to dismiss plaintiff's *Monell* claims. (Response, at pp. 4-5). No such issue was raised or addressed in this Court's Opinion and Order of April 25, 2008. (Dkt. #73). That Order simply found plaintiff's corrected first amended complaint contained sufficient allegations to state a *Monell* claim under federal pleadings standards. Nothing in the Order supports plaintiff's claim that this Court rejected the argument that the individual defendant could be unfairly prejudiced at trial by plaintiff's introduction of evidence regarding alleged acts of police misconduct committed by non-party officers.

Indeed, the potential for such prejudice is particularly strong in this case, given the broad and wide-ranging scope of plaintiff's *Monell* allegations. As previously noted, plaintiff's *Monell* claims consist of generalized allegations of police misconduct dating back 25 years, and reference a number of incidents unrelated to allegedly illegal arrests for DUI. (*See* Motion to Bifurcate, at p. 3, fn. 8). Given the broad scope and potential unfair prejudice of such wide ranging allegations, there is a "real danger" that evidence admissible on the *Monell* issues "will contaminate the mind" of the jury in its deliberation of the liability of the individual defendant.

*Ojeda-Beltran,* 2008 WL 2782815, at *3, *quoting Ismael v. Cohen*, 706 F.Supp. 243, 252 (S.D.N.Y. 1989). Bifurcation of the *Monell* claim would eliminate this potential prejudice.

### C.    Plaintiff's Claim that the Stipulation is Ambiguous and Flawed is Erroneous

Plaintiff's next attack on the motion to bifurcate erroneously contends the City's offered stipulation is ambiguous and flawed. Plaintiff's creation of perceived ambiguities is nothing more than a smokescreen to distract this Court from the straightforward proposition contained in the stipulation. The City's stipulation simplifies rather than complicates this litigation, providing for the possibility that plaintiff may obtain compensatory damages for a proven constitutional injury without the expenditure of significant resources of time and money that would otherwise be required.

By its terms, the City's stipulation accepts judgment against the City as long as plaintiff proves a constitutional injury as alleged in the complaint. Plaintiff questions the effect of the stipulation in the hypothetical situation where the named defendant officer is granted qualified immunity. Several courts that have addressed such an argument have concluded the issue of qualified immunity is a remote possibility at best. In *Elrod v. City of Chicago*, *supra*, Magistrate Judge Brown analyzed the potential scenario in which a plaintiff proves a constitutional violation, loses his claim against the individual defendant because of a qualified immunity defense, but could still theoretically prevail against the City under a *Monell* claim. Magistrate Judge Brown did not believe the possibility of qualified immunity automatically precluded bifurcation. She rejected the likelihood of the defendant prevailing on a defense of qualified immunity in the context of an excessive force claim as a basis to oppose bifurcation. *Elrod*, 2007 WL 3241352, at *5, *citing Grant v. City of Chicago*, 2006 WL 328265, at *3 (N.D. Ill. Feb. 10, 2006) ("The right to be free from excessive force is clearly established"). *See also Parker v. Banner*, 479 F.Supp.2d 827, 833 (N.D. Ill. 2007) (finding that a qualified immunity defense was a "remote possibility," given the allegations in the complaint, which involved a police officer's misconduct of a "commonplace nature"). Similarly here, a qualified immunity defense seems a "remote possibility" and provides no basis to preclude bifurcation. Plaintiff asserts a claim for false arrest, and the right of a citizen to be free from false arrest is clearly established.

In any event, even if a qualified immunity defense was a real (as opposed to remote) possibility, the stipulation essentially renders that issue irrelevant. Federal courts utilize a two-step procedure in considering a qualified immunity defense. *See Sullivan v. Bornemann*, 384

8

F.3d 372, 376 (7th Cir. 2004), *citing Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001).
The first issue is whether there was a violation of a constitutional right; assuming a constitutional
violation, the second inquiry asks whether the constitutional right was clearly established. *Id.* In
light of the City's stipulation here, whether the defendant officer can prevail on qualified
immunity is essentially irrelevant to the question of judgment against the City: if the officer is
entitled to qualified immunity on the second prong only, the City will still have judgment entered
against it if a constitutional violation is proven; and, if the officer is entitled to qualified
immunity because there is no constitutional violation (the first prong), then the City would
prevail as an initial matter. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if plaintiff fails
to prove that his constitutional rights were violated by the defendant officer, his *Monell* claim
against the City would also fail as a matter of law). *See also Treece v. Hochstetler*, 213 F.3d
360, 364 (7th Cir. 2000). In either event, qualified immunity does not weigh against the City's
motion.

Plaintiff's challenge to the stipulation as "illusory" is similarly without merit. Plaintiff
contends the Illinois indemnity statute, 745 ILCS 10/9-102, requires the City to indemnify its
police officers for judgments for civil rights violations, so that the stipulation simply offers that
which Illinois law already provides. *See* Response, at p. 10. Once again, plaintiff is wrong.

The City's position is best expressed in the following quote from Judge Zagel:

> Plaintiff argues that the stipulation is illusory because Illinois law
> already requires indemnification (not to mention the current
> collective bargaining agreement between the City and its officers).
> The stipulation is not illusory for two reasons. First, the stipulation
> is binding for the life of this case, even if state law or union
> agreements change. Second, without the stipulation plaintiff may
> have to bear the costs of enforcing the existing indemnification
> rights if, for example, he prevails against an individual officer but
> loses its case against the City. If that were to occur, the City might
> then claim on a variety of grounds that it does not have to
> indemnify the officers. The stipulation guarantees that if the
> officers are finally assessed damages, plaintiff will be paid
> notwithstanding any change in law or policy, and without further
> legal costs.

*Parker*, 479 F.Supp.2d at 829, fn. 3. Of course, if plaintiff fails to prove his constitutional rights
were violated by the defendant officer, his *Monell* claim against the City necessarily would fail
as well. *Heller*, 475 U.S. at 799; *Treece*, 213 F.3d at 364. The City's stipulation provides

benefits to all parties and this Court by avoiding costly and time consuming discovery (and potentially trial) of the *Monell* issue and adds the benefit of a direct judgment against the City if a constitutional violation is established.

      **D.**      **Contrary to Plaintiff's Assertions, Bifurcation Does Not Defeat Any Deterrent Component of *Monell***

      Plaintiff argues that the City's present motion avoids an alleged deterrent component of *Monell*. Again, plaintiff mischaracterizes the City's motion and waiver. Assuming plaintiff proves a constitutional violation, the City stipulates to a direct judgment against itself. The City recognizes that some courts have found societal interests (such as deterrence) are served by adjudicating *Monell* claims. *See e.g., Medina v. City of Chicago*, 100 F.Supp.2d 893 (N.D. Ill. 2000); *Cadiz v. Kruger*, 2007 WL 4293976 (N.D. Ill. Nov. 29, 2007). However, the United States Supreme Court has made clear that the primary purpose of §1983 damages is to compensate persons for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254-55, 98 S.Ct. 1042 (1978). As explained by Judge Pallmeyer when granting an earlier version of the City's motion:

> The relief to your client - - and I am a real believer in the system of justice. But the relief to your client in a case like this is money. That's the relief. It isn't having established some judgment against somebody. It's getting a check. If there is a defendant who's going to have a judgment entered against him or her and that judgment is going to be paid by the City, then it seems to me that that relief is satisfactory. I am not sure that if there is some additional psychic satisfaction that anybody gets out of saying, "We won a judgment against the City of Chicago," then that might be psychic satisfaction that I am not sure is fair to impose fees on the defendant to pay.

*See* Transcript of Proceedings 3/16/05, *Nix v. City of Chicago*, 04 C 7981 (Pallmeyer, J.), at p. 7 (attached as Exhibit 1). As Judge Pallmeyer later explained, "You know what I think moves the City to change? Having to pay a whole lot of money. That's what I think will move the City to change." Transcript of Proceeding 4/28/05, *Nix v. City of Chicago*, 04 C 7981, at p. 17 (attached as Exhibit 2).

      Other courts have concurred that the City's need to pay damages would deter future violations. Judge Zagel reasoned that payment of damages would have a deterrent effect, "and, if damages grow too large, then the city will change its policies, customs, and practices." *Parker*, 479 F.Supp.2d at 829. As far as a catalyst for change, Judge Zagel further reasoned:

> Given a choice between having a court hear a single case or having a legislature conduct a hearing (free from ordinary evidentiary constraints) in order to decide whether and how to change policy, practice or custom, the choice ought to be made in favor of leaving it to the legislature. It is the job of the City Council to deal with citywide policies and practices. The court sits to remedy any particular act by a city employee which violates the Constitution, and it will do so regardless of what the City Council may choose to do. Here that remedy would be a damage award which is being paid by the City. That award is a good reason for it to change policies that are unconstitutional.

*Id*. at 834.

Plaintiff's argument that the deterrent factor would be avoided by granting the City's motion is therefore misplaced. As the Supreme Court stated in *Owen*, "a damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." *Owen*, 445 U.S. at 650. The City's stipulation herein is consistent. The City has stipulated to judgment against itself provided plaintiff can establish a constitutional violation. Plaintiff's attempt to essentially obtain an advisory opinion under the guise of a "deterrent" should be rejected. *See Heller*, 475 U.S. at 799.

### E.    Granting the City's Motion Will Not Deny Plaintiff His Full Relief at Trial

Plaintiff's contention that granting the City's motion will deny him his full relief at trial likewise fails upon closer examination. The City can only act through its employees, and therefore its liability is based solely on its employees' constitutional violations, so no additional damages are recoverable against it. (*See Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987) (plaintiff offered all the relief he demands may not refuse offer and go to trial); *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994) (case moot where City offered plaintiff all damages due him). Assuming, *arguendo*, a finding of liability against the individual defendant, plaintiff will not be entitled to recover any additional compensatory damages, even if he prevails against the City on the *Monell* claim. *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). Litigation of the *Monell* claim thus would provide no additional monetary benefit to plaintiff.

Without Seventh Circuit support for his argument on additional damages, plaintiff resorts to citing *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). As an initial matter, *Larez* is factually distinguishable, not binding on this Court, and contrary to Seventh Circuit holdings.

But perhaps most significantly, there was no similar stipulation from the municipality or waiver of the "policy" issues as the City has provided here. The other case cited by plaintiff on this point, *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999), similarly did not involve a stipulation like that provided by the City in this case. Rather, it was argued in each of those cases that the *Monell* claim became moot once the municipality became obligated to pay the judgment against the officers. Here, the City has stipulated to judgment against it if the defendant officer is found to have violated plaintiff's constitutional rights.[4]

But even if, as plaintiff argues, a claim for nominal damages survives against the City, his arguments evaporate upon a proper reading of the stipulation and the relief requested in the City's motion. To reiterate, the City seeks two things: (1) bifurcation of plaintiff's §1983 *Monell* claims against the City; and, (2) a stay of both discovery and trial on those claims. (*See* Motion to Bifurcate, p. 5). According to the stipulation, the City agrees to entry of judgment against it for compensatory damages and, to the extent allowed by Court, reasonable attorneys' fees, if and only if the jury in this case finds that any City employee violated plaintiff's constitutional rights as alleged in the complaint. (Stipulation, Dkt. #114-3, at p. 3). If plaintiff cannot prove an underlying violation of his constitutional rights as alleged in his corrected first amended complaint, his *Monell* claim will fail as a matter of law and litigation will end without the need for discovery or a trial on the *Monell* claims. *Heller*, 475 U.S. at 799 ("Neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury as concluded that the officer inflicted no constitutional harm"). If plaintiff proves the individual defendant violated his constitutional rights, he is not entitled to recover any additional compensatory damages from the

---

[4] These cases from the other Circuits also fail to recognize that if plaintiff fails to prove his constitutional rights were violated, then he will have no more claim against the City than he does against the individual defendant. *See Heller, supra, Treece, supra.* Moreover, *Ruvalcaba* and *Larez* have held that a "nominal damages" claim against the City survives the payment of a judgment for full compensatory damages against an individual officer defendant. These cases hold that although a §1983 plaintiff may collect compensatory damages only once, the plaintiff still possesses a claim for nominal damages against the municipality. The Seventh Circuit, to the contrary, has held that once the damages have been paid in full by one of several persons subject to joint and several liability, the claims against the others are moot. *See United States v. Balint*, 201 F.3d 928, 936 (7th Cir. 2000) (defendant's appeal of restitution order moot where the obligation had been paid in full by another defendant); *Spanish Action Committee of Chicago*, 766 F.2d at 321 (holding claim against officer moot on appeal where no punitive damages available because judgment had been entered against City and not appealed and "compensatory damages can only be collected once" and City was obviously able to satisfy damage award).

City because of the *Monell* claim.  *See Spanish Action Committee of Chicago*, 766 F.2d at 321. Thus, if plaintiff prevails against the individual defendant, the stipulation provides plaintiff with a judgment against the City as well.

As a practical matter, it would not be necessary for plaintiff to go forward with his *Monell* claim against the City.  The stipulation requires the City to pay plaintiff any award of compensatory damages without plaintiff needing to prove the *Monell* prerequisites for liability, *i.e.*, without any trial on plaintiff's *Monell* claims.  At that point, proceeding against the City on the *Monell* claim simply for the purpose of obtaining nominal damages, to the extent such a right exists in the Seventh Circuit, would be an extremely inefficient use of the Court's time and resources, and would seriously call into question the motivation for continuing the action.  (*See* Motion to Bifurcate, at p. 5, fn. 12).  Nevertheless, plaintiff would retain that right.

In a recent memorandum opinion and order granting a motion to bifurcate presented by the City, Magistrate Judge Brown succinctly summarized the effect of the City's stipulation on plaintiff's "right to trial" on the *Monell* claim:

> It is important to remember that bifurcation does not mean dismissal of the *Monell* claims.  Plaintiffs retain the right to discover and try their *Monell* claims.  Bifurcation in this case means structuring the process to facilitate a more economical and efficient process of discovering merits of the underlying §1983 claim, at the conclusion of which the parties will have the opportunity to consider possible settlement or go to trial on the underlying claim, without having incurred the expense of discovery relating to the *Monell* claims.  If settlement is not reached and the trial results in a verdict for one or both of the Plaintiffs, the Plaintiffs reserve their right to discover and try the *Monell* claims.  *The City's Stipulation does not eliminate that right*.  (Emphasis added).

*Elrod v. City of Chicago*, 2007 WL 3241352, at *8.  *Accord*, *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *4 ("In ordering the bifurcation and stay of Plaintiffs' *Monell* claim against the City, we have simply attempted to balance party convenience, judicial economy, prejudice against Defendant Officers, and prejudice against Plaintiffs.  Bifurcation of the *Monell* claim is not dismissal of the *Monell* claim").

## CONCLUSION

Plaintiff claims that the City's motion to bifurcate *Monell* claims and stay discovery and trial on those claims will somehow deny him "the full legal redress to which he is entitled."

(Response, at p. 15).  In fact, nothing is further from the truth.  If this Court grants the City's motion, plaintiff will have a full and fair opportunity to go to trial on the only claims for which he can collect a judgment for compensatory damages - his claim that his constitutional rights were violated by the individual defendants.  In the meantime, the litigation process will be greatly expedited by setting aside the broad and wide-ranging *Monell* claims against the City - claims that, even if plaintiff were to prevail on them, would not entitle him to additional monetary recovery.  The benefits in terms of judicial and litigation economy are obvious and will accrue to the parties and this Court.  Accordingly, for the reasons set out in the City's motion and in this reply brief, defendant City of Chicago asks this Court to grant the motion and the relief requested therein.

Dated: August 20, 2008                                    Respectfully submitted,


                                              By: s/ Paul A. Michalik_____
                                                    One of the Attorneys for Defendant,
                                                    CITY OF CHICAGO

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Gregory L. Lacey
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2008, I electronically filed the foregoing **Defendant City of Chicago's Reply in Support of Motion to Bifurcate §1983 Claims and to Stay Discovery and Trial on those Claims** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Blake Wolfe Horwitz
Amanda Sunshine Yarusso
Tali K. Albukerk
Horwitz, Richardson & Baker, LLC
20 South Clark Street
Suite 500
Chicago, Illinois  60603
312.676.2100 (telephone)
312.372.7076 (facsimile)
lobh@att.net

Daniel F. Gallagher
Querrey & Harrow Ltd.
174 W. Jackson Blvd.
Suite 1600
Chicago, Illinois  60604-2827
312.540.7000 (telephone)
312.540.0578 (facsimile)

s/ Paul A. Michalik
_____
Paul A. Michalik

CHICAGO\2494923.1
ID\PAM

15