# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL NIX, SR., on behalf of his minor son, MICHAEL NIX, JR., | ) | Docket No. 04 C 7981 |
| Plaintiff, | ) | |
| vs. | ) | Chicago, Illinois<br>April 28, 2005<br>9:00 a.m. |
| CITY OF CHICAGO, CHICAGO POLICE OFFICER MARK PICKERT, and UNKNOWN CHICAGO POLICE OFFICER, | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - Status and Ruling
BEFORE THE HONORABLE REBECCA R. PALLMEYER

APPEARANCES:

For the Plaintiffs: LOEVY & LOEVY
BY: MR. RUSSELL R. AINSWORTH
312 North May Street, Suite 100
Chicago, Illinois 60607

For the Defendant City of Chicago: CITY OF CHICAGO, DEPARTMENT OF LAW
BY: MR. GEORGE JOHN YAMIN, JR.
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602

For the Defendant Pickert: CITY OF CHICAGO, DEPARTMENT OF LAW
BY: MS. SUSAN E. SULLIVAN
30 North LaSalle Street, Suite 1400
Chicago, Illinois 60602

EXHIBIT 2

Court Reporter: FRANCES WARD, CSR, RPR, FCRR
Official Court Reporter
219 S. Dearborn Street, Suite 2118
Chicago, Illinois 60604
(312) 427-7702

THE CLERK: 04 C 7981, Nix versus City of Chicago for status and a ruling.

MR. AINSWORTH: Good morning, your Honor. Russell Ainsworth on behalf of plaintiffs.

MS. SULLIVAN: Good morning, Judge. Susan Sullivan on behalf of Officer Pickert.

MR. YAMIN: Good morning, your Honor. George Yamin on behalf of defendant City of Chicago.

THE COURT: I want to begin by telling you that your briefs on this motion were the best briefs I have read in weeks. It's excellent. Not only free of typos and misused apostrophes, which makes me crazy, but also really fluid writing. Excellent, excellent job. It makes it all the harder to decide this motion.

But let me just ask, Mr. Ainsworth, if you look at the last page of the brief that I got from Mr. Yamin most recently, I think he ticks off about five or six arguments and addresses those.

Is your concern with the City's unwillingness to take -- I understood that your concern was that the City had stepped up and agreed to indemnify the officers, but that the plaintiff's real goal was actually to get a judgment against the City.

And I understood from the reply memorandum that Mr. Yamin has essentially said, yes, that's fine, too. We

will have a judgment entered against the City. In return -- we will agree to do that without proof of *Monell* liability in return for your agreement not to pursue the discovery that would support it.

Is that satisfying to the plaintiff, or do I still misunderstand this?

MR. AINSWORTH: It's not satisfying. The reason is because defendants in their answer to the complaint have denied that they have any unconstitutional policies, denied that they are violating constitutional rights of Chicago citizens, and denying that through either their practices or their policies.

But at the same time they are now saying, well, we will stipulate. If you win, then we will stipulate to this, and thus avoid having any litigation to find out whether or not their policies do violate citizens' civil rights.

This is a matter that affects a great number of Chicago citizens. It's of the utmost importance to have judicial review of the City's policies and procedures. Without that, in any case where there is no scope of employment question, which is the majority of cases against the Chicago Police Department, and the ones where the City's policies are most important, because it governs what the officers do while they are on the job, there will be no way to have any review of those policies.

I have stated in the motion we are willing to -- you know, we run the risk of not getting our fees if we pursue *Monell* discovery.

If there is a burdensome issue, I think the $28,000 figure quoted in the Chicago's brief -- I think they should get a new copy service if that's what they are being charged for it. But we are willing to go to the warehouse. We will take a look at the files, see if there is something there before pursuing any costly litigation.

We would like to reserve the opportunity to go and do that fact-finding discovery before this stage of the litigation just to cut off -- and potentially in all litigation to cut off any inquiry into the City's policies while they still deny having unconstitutional policies.

THE COURT: First, with great respect for my own role in the system, I don't think any ruling I make controls any other litigation, not even on the basis of precedent or lack thereof. I think there is a great deal of law from the Seventh Circuit. I, for one, have no quarrel with their statements that no district judge decision -- the decision of no district judge constitutes precedent. It's not binding.

It's only if the Court of Appeals reviews it and puts a stamp of approval on something that the district court has done and says further, not just that it wasn't an abuse of discretion, but that it was the right thing to do, only

then do we have a matter of law.

So I am not terribly concerned with the expression that I've seen at least in some of the briefs that this will somehow control what happens in other cases, because I am sure that it won't.

With respect to the determination that there is a policy, I understand -- there is at least a basis to understand the defendants' proposal to be: We will stipulate that what the defendants -- what the defendants -- individual defendants did here may be viewed as policy.

MR. AINSWORTH: Then amend the pleadings and admit what the plaintiff has alleged in the pleading.

THE COURT: Well, what the plaintiff has alleged is that there was some unconstitutional conduct.

MR. AINSWORTH: And then they can deny causation. They can deny that this caused the injury to the plaintiff.

THE COURT: I don't think they are even required to admit that something was unconstitutional in order to say what we did was policy.

Let me give you an example. I have a case going to trial next week in which the plaintiff alleges that the actions of particular officers were a violation of the constitution. And the plaintiff in that case has only sued the municipal defendant because the municipal defendant all along has said, "We know what they did; and, yeah, that's our

policy."

And the plaintiff says, "Well, that violates my constitutional rights." And the defendant says, "Well, no, it doesn't."

But there I think we have what might illustrate the goal you are seeking to achieve here.

If we can get the City to stipulate that what these officers did in fact reflects City policy, then what possible benefit to your client is there in your reviewing dozens, or hundreds in this case, of disciplinary files?

MR. YAMIN: Your Honor, just so we don't get off -- so there is no misunderstanding, that's not actually what the City is stipulating to, just so that's clear.

The City is not stipulating that any conduct by Officer Pickert or any other defendants in this case reflects any municipal policy.

What the City is stipulating to is if the plaintiff can prove his constitutional rights were violated by any City employee, which in this case would be defendant Pickert or unknown officers, then the City will waive the obligation of plaintiff to prove the *Monell* requirements and the City will accept judgment against it and pay the compensatory damages.

As we tried to make clear in our briefs, we are proposing the following trade-off: No one has to engage in *Monell* discovery and proof in exchange for the City accepting

entry of judgment against it as long as plaintiff can prove there was a constitutional violation.

As the case law is perfectly clear on, if the plaintiff proves a constitutional violation and can prove compensable damages that could correspond to the violation, then the damages that are -- the compensatory damages that he can prove reflect a limit as to what he can collect.

So going forward against the City provides him with no additional money.

So by virtue of the City's waiver, the plaintiff gets what he is entitled to get, and everyone is spared going through what's entailed in the *Monell* litigation. By everyone being spared, we include not only the City, which is, of course, the party which I am most concerned with, but the Court and, as we argue in the reply brief, the plaintiff himself.

But I just want to make sure it's clear to the Court that those are the terms of the agreement so there is no misunderstanding.

MR. AINSWORTH: Your Honor, so it's clear, our complaint alleges eight paragraphs of our *Monell* allegations, including the failure to train, the failure to supervise, the failure to adequately investigate complaints against misconduct. Those are the allegations that the City could admit to, say, yes, we failed to do these things, but dispute

whether those actually caused the injury to the plaintiff.

Then we prove our -- or dispute that plaintiff suffered an injury to his constitutional rights. We litigate the issue of whether his rights were violated, and then we have got exactly what the stipulation purports to do, but we have it in the procedure that's set forth by the Rules of Civil Procedure.

THE COURT: You know, I myself like that idea, Mr. Ainsworth, but I am shaking out in my head how is your client better off with a determination, whether it's by stipulation or whether it's by virtue of lengthy litigation and a finding of the court, by this assessment that what happened was a matter of policy?

MR. AINSWORTH: Because, your Honor, my client is a -- he is a 16-year-old Chicago resident. He has a vested interest in the City's policies and practices, to him especially as a young black male in the city.

But more than that, the City -- and what they are doing, they are denying that they have a wrongful policies, and yet they are agreeing to stipulate to nothing at this point.

THE COURT: It's not nothing. It really isn't nothing. I think the City is prepared to make a significant stipulation here, but you are telling me that it's really not quite enough.

MR. AINSWORTH: That's correct.

THE COURT: Because they are not simply saying -- my understanding at least -- and, Mr. Yamin, I am sure you will correct me again if I am wrong.

My understanding is the City is not simply saying, "We will pay any judgment entered against the officers." The City is saying, "Not only will we pay any judgment against the officers, but we will consent to judgment against us if there is a determination against the officers."

MR. YAMIN: That's exactly right.

MR. AINSWORTH: That's correct. However, at this point it evades judicial review of what the City's policies are. We are civil rights lawyers. This is a civil rights violation that will go unlooked upon because it happened while the officer was under the scope of his employment.

There is no way to take a look and see why doesn't Chicago have these policies? Why doesn't it discipline its officers? Why does it allow its officers to abuse citizens without fear of punishment? The stipulation doesn't address any of those issues.

MR. YAMIN: Your Honor, just to respond to that, first of all, there is no way the City will admit to the allegations. So if the Court rules against -- if the Court denies our motion, we will litigate *Monell* to the hilt.

THE COURT: In other words, I understand the City

is not going to acknowledge a constitutional violation. I understand that.

MR. YAMIN: They are not going to acknowledge a deficient policy, yes.

THE COURT: You don't have to acknowledge a deficient policy. Is the defendant -- and I don't know that Mr. Ainsworth is even asking for that.

Is the City willing to acknowledge a policy?

MR. YAMIN: No, your Honor. But I think that is what Mr. Ainsworth is asking. He is saying today in court and in the response brief the ideal solution -- given the framework the City set out here with its motion and stipulation, the ideal solution is for the City to admit the allegations in the complaint -- that it fails to train, supervise and discipline its police officers. The City won't admit to that because it's not true.

If there is -- if the Court in assessing the arguments and the law denies the City's motion, then we will litigate -- the City will litigate the *Monell* claims to the final disposition.

Now, in terms of final disposition, when plaintiff talks about getting judicial review and having the City's alleged policies examined in the open forum, that is assuming an ideal world where the plaintiff's claims are going to go forward from the day this motion is denied, from today until

that disposition date. In that interim there is going to be lengthy, costly and protracted litigation of *Monell* claims.

In terms of the fee of $28,000, just as an aside -- brief aside -- Mr. Ainsworth said the City should get a new copy service. Actually, his own firm uses that copy service when we have provided it with these documents.

This is expensive costs. This is up-front costs, your Honor. This is just producing complaint registers to get *Monell* litigation rolling. Once it gets rolling, there are multiple elements that have to be proven. There is going to be multi-facetted discovery, written and oral. Discovery is not going to be one-sided. The City will engage in its discovery against plaintiff.

Mr. Ainsworth knows that the City -- at least when I represented it -- is very aggressive in the discovery that it pursues. The requirements that a plaintiff has to pursue -- has to prove or even establish disputed facts regarding are as rigorous and as demanding as any I have seen in the law of civil rights that I have been dealing with in ten years.

So to talk about judicial scrutiny in the abstract is one thing. To talk about it in the context of concrete litigation where both sides are going to be going at it with the Court's involvement and where they are going to spend money and time that's not going to get the plaintiff a single

cent I think is all the support that the Court needs to agree with the judges that have granted this motion and to grant this motion in this case.

I would add, your Honor, as we point out in the City's reply brief, every minute, every hour that plaintiff's counsel spends to defend -- I am sorry -- to prosecute a *Monell* claim where his client gets not a cent is time taken away from litigating the claims that matter to his client.

So if the plaintiff wants to say that going before a court and maybe going before a jury is going to get some kind of psychic satisfaction because the world has been -- the world has seen what the City allegedly does, where the effort and cost in doing so is so extravagant and where even to get there the plaintiff has to prove a constitutional violation that his attorney is spending time away from by litigating a *Monell* claim, I find actually quite questionable.

MR. AINSWORTH: Well, then the City has its answer. It should be very confident of a victory in this and go through it and see who's right.

But herein lies the problem. The City is denying and will deny to the bitter end that its policies caused this constitutional violation. They are saying it now and they will say it at the end of the case. It prevents any way to hold them accountable for their actions for the policies that

they have. If it's so tru that the *Monell* proof is so difficult, then that should be the bar to plaintiffs from bringing an unmeritorious claim. That should prevent them from bringing such an action.

THE COURT: Well, the reality is that everybody knows that discovery is extremely time consuming and can leverage a settlement. So that's -- I can't assume that every step that's being taken by plaintiff's counsel here is for no purpose other than to achieve justice for the client in these circumstances where I think there has never been a challenge to the defendants' position that we are not talking about any additional recovery to the plaintiff as a result of this, no additional financial recovery to the plaintiff as a result of this.

Now, I am thinking in my mind, is it possible that we could proceed and get -- if there is a judgment, for the Court to simply say -- enter a judgment that there is -- that *Monell* liability is stipulated, which is, I think, essentially --

MR. AINSWORTH: A stipulation without any admittance of guilt. I mean, what stipulation is that?

THE COURT: A city is not a human being. A corporation is not a human being.

You know, we say prove to a jury these things. *Monell* is a much heightened test compared to respondeat

superior. Juries don't understand these nuances of *Monell*. Juries think if a police officer did something, well, that was the City that did it. That's what they think.

Just like they think the same thing generally -- I think we all understand this -- if some large corporation's agent or manager takes particular action, that it's the corporation that's responsible. I mean, I think that's the way people think.

So you are saying we should permit the plaintiff to jump through additional hoops, but I still don't understand exactly why.

MR. AINSWORTH: Then what does *Monell* say? Why does the --

THE COURT: Because *Monell* is designed to protect municipalities, which are publicly-funded entities and have limited budgets, from respondeat superior liability under Section 1983. The idea is Section 1983 torts do not by themselves justify the imposition of liability against a municipal corporation, which may or may not have had anything to do with the wrongdoing.

MR. AINSWORTH: But it permits the plaintiff to prove a constitutional violation despite there being no additional compensatory damages apart from what were recovered against the officer.

THE COURT: Mr. Ainsworth, *Monell* requirements a

plaintiff to take additional action. It doesn't permit the plaintiff to take additional action.

And the defendant is saying, "Look, you don't have to take any additional action. We are going to stipulate to judgment being entered against us if you manage to prove your case against the individuals."

Again, apart from a psychic sense that they have achieved something, I don't see what benefit there is to plaintiff in getting anything beyond what I believe Mr. Yamin is prepared to stipulate to.

MR. AINSWORTH: The advantage to plaintiff is the knowledge that the city residents will be safer. They will be protected from the City's policies empowering their officers to commit constitutional violations on an everyday basis.

THE COURT: You are making the assumption that a jury verdict on *Monell* liability will change the City's practices.

MR. AINSWORTH: It will do a lot more than this stipulation will. Of that, I am sure.

THE COURT: How do you know?

MR. AINSWORTH: Because once the City is found to be guilty in a public forum, allowing the evidence to be put forth before a jury of eight residents of this metropolitan area to say the City caused this violation -- now, the City

can dispute it, but now we have got an independent fact-finder making that determination.

THE COURT: I am with you on everything you have said so far.

How will that move the City to change?

MR. AINSWORTH: Well, because as in the case of --

THE COURT: You know what I think moves the City to change? Having to pay a whole lot of money. That's what I think will move the City to change.

MR. AINSWORTH: Well, that's been litigating for quite some time in this district, and so far we haven't seen that change. Judgments have been paying out, but it's the policies that are causing it.

THE COURT: And in many of those cases *Monell* liability was established, many of the very cases you are talking about.

MR. AINSWORTH: Not enough, your Honor. Not enough.

THE COURT: The City's motion is granted.

MS. SULLIVAN: Thank you.

MR. YAMIN: Thank you.

THE COURT: Do we have another status?

MR. YAMIN: This is the status, too, your Honor.

THE COURT: Where do we stand on discovery?

MR. AINSWORTH: Both sides have exchanged written

discovery. Plaintiff has noticed up or asked for dates for the defendants' depositions to go forward and offered to have plaintiff appear for his deposition. Then we will move into the third-party witnesses. We are on track to get it done before the fact discovery --

THE COURT: Great. Why don't we set a status in late June.

MS. SULLIVAN: Judge, the only other thing I would ask is -- with regard to my knowledge of the case up to this point, plaintiff as a minor, I don't believe, has any lost wages. I don't have plaintiff's written responses yet. But he suffered a cut on his head.

Given the circumstances of the incident, I think this is a case where before the parties engage in protracted discovery, we should get a demand from the plaintiff. I would ask that the plaintiff be ordered to give me a demand within 21 days.

MR. AINSWORTH: Your Honor, I have no problem presenting a demand. However, I wish counsel would ask for one and then I would be happy to give one without a court order.

THE COURT: All right. Great.

MS. SULLIVAN: Judge, we have discussed it, and I hadn't. So I thought that it would just be better. Sometimes people forget, and I would like to have the order

because sometimes I don't get compliance when I ask repeatedly for demands.

THE COURT: I am going to expect that there will be a settlement demand within 21 days. If that doesn't happen, on June 29th I am sure you will tell me about it.

MS. SULLIVAN: We will.

THE COURT: Is June 29th all right?

MR. YAMIN: Fine, Judge.

MR. AINSWORTH: Thank you.

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

F Frances Ward May 13, 2005.
Official Court Reporter